1  Dan Terzian (SBN 283835)
   dterzian@duanemorris.com
2  **DUANE MORRIS LLP**
   865 S. Figueroa, Suite 3100
3  Los Angeles, CA 90017
   Telephone: +1 213.689.7400
4  Facsimile: +1 213.689.7401

5  Lawrence H. Pockers (admitted *pro hac vice*)
   lhpockers@duanemorris.com
6  Thomas T. Loder (admitted *pro hac vice*)
   ttloder@duanemorris.com
7  **DUANE MORRIS LLP**
   30 South 17th Street
8  Philadelphia, PA 19103
   Telephone: +1 215.979.1000
9  Facsimile: +1 215.979.1020

10 Attorneys for Defendants PAUL
   SCHEMBARI; ACP JET CHARTERS, INC.;
11 PHENIX JET INTERNATIONAL, LLC; and
   COSA DI FAMIGLIA HOLDINGS, LLC

12

13            **UNITED STATES DISTRICT COURT**

14        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

16 WESTERN AIR CHARTER, INC., doing        Case No.: 2:17-cv-000420-JGB-KS
   business as JET EDGE
17 INTERNATIONAL, a California              Hon. Jesus G. Bernal
   corporation,
18                                          **DEFENDANTS PAUL**
              Plaintiff,                    **SCHEMBARI, ACP JET**
19                                          **CHARTERS, PHENIX JET**
        v.                                  **INTERNATIONAL, AND COSA DI**
20                                          **FAMIGLIA HOLDINGS'**
   PAUL SCHEMBARI, an individual *et al.*,  **OPPOSITION TO PLAINTIFF'S**
21                                          **MOTION FOR**
              Defendants.                   **RECONSIDERATION**
22
                                            Hearing:    August 6, 2018
23                                          Time:       9:00 AM
                                            Judge:      Hon. Jesus G. Bernal
24                                                       Courtroom 1
                                                         3470 Twelfth Street
25                                                       Riverside, CA 92501
26

27

28

# Table of Contents

I.   Introduction .................................................................................................. 1

II.  Argument ...................................................................................................... 2

   A.   The standard for reconsideration is not met because the new facts are not
materially different than the prior facts. ...................................................... 2

   B.   The Motion should be denied because Jet Edge delayed four months in
bringing the Motion and because amendment would be futile. .................. 7

     1.   Good cause does not exist because Jet Edge had all evidence supporting the
Motion in its possession by no later than March 5, 2018. ....................... 7

       a.   Every documentary exhibit attached to the Motion was in Jet Edge's
possession by March 5, 2018. .................................................................. 8

       b.   The deposition transcripts attached to the Motion are all cited for
propositions that are identical to the information contained in the documentary
exhibits or in the complaint. ................................................................... 9

       c.   Jet Edge did not alert Defendants of the Motion until June 4 and then was
dilatory in pursuing it. ........................................................................... 12

       d.   Defendants would be prejudiced by amendment because it would require
delaying trial and summary judgment deadlines and reopening discovery ...... 14

     2.   The Motion should be denied because (i) there is no clear error or
substantially different evidence and (ii) Judge Birotte's decision was correct. .... 15

       a.   Overruling Judge Birotte's Order requires clear error or substantially
different evidence.  Neither exists. .................................................... 15

       b.   Judge Birotte's Order was correct because tort claims are preempted
when they share a common nucleus of operative facts with the trade secret
claim. ....................................................................................................... 15

         i.   Intentional Interference with Contracts ............................................. 18

         ii.  Duty of Loyalty ................................................................................... 20

         iii. *Angelica* and *Ikon* ........................................................................... 23

III. Conclusion .................................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3
4
*Amexco Exports, Inc. v. Associated Aircraft Mfg. & Sales, Inc.*, 87 F.
    Supp. 2d 1013 (C.D. Cal. 1997) ................................................................ 6

5
6
*Argo Grp. US, Inc. v. Professional Governmental Underwriters, Inc.*,
    Case No. 13-cv-1787, 2014 WL 12577144 (C.D. Cal. Jan. 6, 2014) .................... 20

7
8
*Cosby v. Autozone, Inc.*, Case No. 2:08-cv-00505, 2016 WL 1626997
    (E.D. Cal. Apr. 25, 2016) ...................................................................... 15

9
*Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001) ........................ 15

10
11
*Dufour v. Allen*, Case No. 14-cv-5616, 2015 WL 8783264 (C.D. Cal.
    Dec. 14, 2015) .......................................................................................5-6

12
*Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082 (9th Cir. 2003) ................................... 22

13
14
*EEOC v. Bakery*, Case No. 13-cv-04507, 2016 WL 1301173 at *3 (N.D.
    Cal. Apr. 4, 2016) ................................................................................. 8

15
16
*Evenfe v. Esalen Inst.*, Case No. 15-cv-05457, 2016 U.S. Dist. LEXIS
    96843, 2016 WL 3965167 (N.D. Cal. July 24, 2016) ............................... 21

17
18
*Experexchange, Inc. v. Doculex, Inc.*, Case No. 08-cv-03875, 2009 WL
    3837275 (N.D. Cal. Nov. 16, 2009) ........................................................ 8

19
20
*Fields v. QSP, Inc.*, Case No. 10-cv-5772, 2011 U.S. Dist. LEXIS 41350,
    2011 WL 1375286 (C.D. Cal. Apr. 8, 2011) ........................................... 22

21
*Fox v. De Long*, Case No. 2:14-cv-02947, 2016 WL 6088371 (E.D. Cal.
    Jan. 8, 2016) ........................................................................................ 15

22
23
*Hamid v. Nike Retail Servs., Inc.*, Case No. 17-cv-0600, 2018 WL
    1684316 (C.D. Cal. Apr. 6, 2018) .......................................................... 6

24
25
*Ikon Office Solutions, Inc. v. Rezente*, Case No. 2:10-cv-1704, 2011 WL
    1402882 (E.D. Cal. Apr. 13, 2011) ...................................................23–24

26
27
*Integral Dev. Corp. v. Tolat*, Case No. 12-cv-06575, 2013 U.S. Dist.
    LEXIS 153705, 2013 WL 5781581 (N.D. Cal. Oct. 25, 2013) ..................... 22

28

*Irise v. Axure Software Solutions, Inc.*, Case No. 08-cv-03601, 2009 WL
    3615973 (C.D. Cal. July 30, 2009)....................................................... 8, 10

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ........................ 7

*Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2010).............. 16, 22

*Mattel, Inc. v. MGA Entm't, Inc.*, Case No. 04-cv-9049, 2011 U.S. Dist.
    LEXIS 55756, 2011 WL 8427611 at *3 (C.D. Cal. Mar. 28, 2011).......... 20–21, 23

*Rovince Int'l Corp. v. Preston*, Case No. 13-cv-3527, 2013 U.S. Dist.
    LEXIS 145624, 2013 WL 5539430 (C.D. Cal. Oct. 7, 2013)................... 16, 18, 20

*RSPE Audio Solutions, Inc. v. Vintage King Audio, Inc.*, Case No. 12-cv-
    06863, 2013 U.S. Dist. LEXIS 37210, 2013 WL 1120664 (C.D. Cal.
    Mar. 18, 2013) .............................................................................. 16–17

*Sako v. Wells Fargo Bank, Nat'l Ass'n*, Case No. 14-cv-1034, 2015 WL
    5022326 (S.D. Cal. Aug. 24, 2015)..................................................... 1, 8

*School Dist. No. 1 J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255 (9th
    Cir. 1993) .................................................................................... 7

*Schwerdt v. Int'l Fidelity Ins. Co.*, 28 Fed. App'x 715 (9th Cir. 2002) ....................... 8

*Sci. of Skincare, LLC v. Phytoceuticals, Inc.*, Case No. 08-cv-4470, 2009
    U.S. Dist. LEXIS 58241, 2009 WL 2050042 (C.D. Cal. July 8, 2009)................ 21

*Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198 (C.D. Cal. 2001) ............... 18

*SunPower Corp. v. SolarCity Corp.*, Case No. 12-cv-00694, 2012 U.S.
    Dist. LEXIS 176284, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ................... 16

*Thomas Petroleum, LLC v. Lloyd*, Case No. 1:11-cv-00902, 2012 U.S.
    Dist. LEXIS 142729, 2012 WL 4511369 (E.D. Cal. Oct. 2, 2012) ...................... 22

**State Cases**

*Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013) ......................... 23

*Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34 (1987)................................................. 22

*Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400 (2007) ............................................. 22

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939 (2009).............................................................................16, 18

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)..........................................16

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990).............................................................................................................18

*Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010) .................................16

*Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285 (1995)...................................................22

*Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003) .................................................21

**Local Rules**

L.R. 7-18 .......................................................................................................2, 6

**Other Authorities**

Cal. Civ. Jury Instructions § 2201 .............................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiff Western Air Charter ("Jet Edge") seeks reconsideration of an Order (ECF No. 89) issued in October 2017 by the preceding District Judge in this case, the Honorable Andre Birotte, Jr. ("Motion").   Motion, ECF No. 144.   That order dismissed with prejudice the operative complaint's claims for intentional interference with contract and breach of the duty of loyalty on the grounds that those claims were preempted by the California Uniform Trade Secrets Act ("Act").   Order, ECF No. 89 at 5–9.  Jet Edge's Motion should be denied for at least three reasons.

First, granting reconsideration requires materially different evidence.   This requirement is not met.   The new evidence is essentially identical to the information in Jet Edge's operative complaint that Judge Birotte considered.

Second, Jet Edge's Motion is, in reality, a belated attempt to amend its Complaint, long after the deadline for doing so has passed.  Jet Edge cannot meet its heavy burden of demonstrating compliance with both Federal Rules of Civil Procedure 16(b) and 15 where, as is the case here, discovery has long since closed; the summary judgment deadline is imminent; and granting the Motion would require amending the scheduling order.  Jet Edge must demonstrate that it acted "diligently" in bringing the Motion.  All documents supporting the Motion were produced to Jet Edge no later than March 5, 2018, and the cited deposition testimony is identical to these documents.  "Courts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16." *Sako v. Wells Fargo Bank, Nat'l Ass'n*, Case No. 14-cv-1034, 2015 WL 5022326 at *2 (S.D. Cal. Aug. 24, 2015).

Third, an order permitting Jet Edge to re-assert claims that were previously dismissed with prejudice by the Court requires a showing that the Court clearly erred or faced substantially different evidence.   Neither is the case.   In any event, the Court's ruling is correct even when considering the new evidence.  The Act preempts

all claims based on a common nucleus of operative facts.   Here, Jet Edge's intentional interference with contract and duty of loyalty claims are founded on Defendants' alleged theft of customers.   This is the exact same foundation for Jet Edge's claim for misappropriation of trade secrets.

## II.   ARGUMENT

### A.   The standard for reconsideration is not met because the new facts are not materially different than the prior facts.

The Motion should be denied because it does not meet the standard for reconsideration.   Granting reconsideration requires "a material difference in fact or law from that presented to the Court" or "the emergence of new material facts . . . ." L.R. 7-18.   Though the Motion presents new facts, they are not materially different from the factual allegations in the Complaint ruled upon in Judge Birotte's Order.

This chart details how the facts in the Motion all have direct analogs in the complaint:

| MOTION | COMPLAINT (ECF NO. 26) |
|---|---|
| In 2015, Schembari negotiated with Sojitz representatives on creating a new company.   Motion at 13–14 (CMECF numbering). | Para. 17: "SOJITZ broke off the negotiations because it intended to pursue a relationship with a SCHEMBARI-related entity, including CDF and/or ACP." |
| | Para 59: "DEFENDANTS took actions to disrupt the negotiations between JET EDGE and SOJITZ, including but not limited to secretly setting up a competing venture and negotiating with SOJITZ to fund and/or co-venture in that competing business." |
| | Para. 60: "On information and belief, SCHEMBARI used JET EDGE company resources to meet with SOJITZ for the purposes of interfering with the negotiations and business relationship between SOJITZ and JET EDGE." |
| | *See also* Amended Complaint, ECF No. 26 at |

| | |
|---|---|
| | ¶¶ 61, 66. |
| While at Jet Edge, Schembari created a business plan. The business plan identified Schembari's future customers as including aircraft that were currently managed by Jet Edge. The business plan also identified Jet Edge as a competitor. Motion at 13–16 (CMECF numbering). | Para. 18: "In the months following SCHEMBARI's departure from JET EDGE, JET EDGE customers terminated their aircraft charter and management agreements with JET EDGE and entered into agreements with PHENIX JET." Para. 39: "[D]uring and after his employment with JET EDGE, SCHEMBARI acted in violation of the terms of his Employment Agreement by (a) planning, organizing, and operating a competing venture (PHENIX JET) while still employed by JET EDGE and (b) using JET EDGE'S confidential and trade secret information to steal JET EDGE's business. SCHEMBARI's actions resulted in multiple JET EDGE customers terminating their relationships with JET EDGE and making charter and management agreements with DEFENDANTS." *See also* Amended Complaint, ECF No. 26 at ¶¶ 19–24, 40, 45. |
| Jet Edge's customers sent cancellation letters to Jet Edge and moved their business to Schembari. Motion at 17–18 (CMECF numbering). | Para. 21: On March 23, 2016, Pocket Corporation terminated its relationship with JET EDGE. The aircraft owned by Pocket Corporation, U.S. Registration number N810TS, is now listed on the commercial operating Air Carrier Certificate for ACP JET CHARTERS. Para. 24: On December 19, 2016, SOJITZ notified JET EDGE that the aircrafts owned by SAM CAYMAN, FAST RETAILING, and SEGA SAMMY were to be removed from JET EDGE's Air Carrier Certificate and the aircraft records, logbooks and appropriate documents transferred to SOJITZ's new company PHENIX JET, which is owned and operated by DEFENDANTS, including |

| | |
|---|---|
| | SCHEMBARI. |
| | Para. 40: In the months following SCHEMBARI's departure from JET EDGE, multiple JET EDGE customers terminated their Aircraft Charter Management Agreements with JET EDGE. Those customers include POCKET CORPORATION, SEGA SAMMY, SAM CAYMAN, and FAST RETAILING. Further, those former JET EDGE customers have made agreements with DEFENDANTS and are now chartered and managed by PHENIX JET. |
| | *See also* Complaint, ECF No. 26 at ¶¶ 16, 18, 22–23, 39. |
| Schembari devised the Phenix Jet name while employed with Jet Edge. Motion at 13 (CMECF numbering). | Para. 13: "On February 4, 2016, while still employed by JET EDGE, SCHEMBARI registered the domain name 'phenixjet.com'." |
| While still employed with Jet Edge, Schembari competed with Jet Edge by signing a brokerage agreement with Sojitz. Motion at 15 (CMECF numbering). | Para 6: "[W]hile still employed by JET EDGE, SCHEMBARI planned to set up and did set up a competing venture in the form of PHENIX JET. Further, SCHEMBARI competed against JET EDGE using JET EDGE's confidential and trade secret business and customer information." |
| Schembari worked on acquiring an interest in ACP Jet Charters both during his employment with Jet Edge and after his employment with Jet Edge. Motion at 16–17 (CMECF numbering). | Para. 11: "In January 2016, the predecessor to DEFENDANT ACP, ACP Jet Charters, Inc. and JFI Jets merged to form Alerion Aviation ('ALERION'). . . . JET EDGE is informed and believes and on that basis alleges that subsequent to the merger, ALERION has operated under the JFI Jets FAA Air Carrier Certificate, discontinuing use of the PREDECESSOR ACP's Air Carrier Certificate." |
| | Para. 12: "JET EDGE is informed and believes and on that basis alleges that SCHEMBARI, while still employed by JET EDGE, as part of |

his and DEFENDANTS' scheme to unfairly compete against JET EDGE, launched a competing business by, *inter alia*, negotiating the acquisition of the ACP Jet Charters, Inc. corporate entity, name, and FAA Air Carrier Certificate from ALERION for DEFENDANTS to launch their competing business."

Para. 25: "Documents filed with the Florida Secretary of State identify SCHEMBARI as DEFENDANT ACP's President. SCHEMBARI applied for a fictitious business name in Florida for DEFENDANT ACP to do business as PHENIX JET."

Jet Edge may claim that there is no direct analog to the email where Schembari "told Jet Edge customers that '[f]lights dispatched by . . . Jet Edge . . . never go smoothly . . . . .'" Motion, ECF No. 144 at 9–10 (CMECF numbering). But that email cannot be said to be materially different from the Complaint's allegations, for example: "DEFENDANTS took actions to disrupt the negotiations between JET EDGE and SOJITZ"; "SCHEMBARI used JET EDGE company resources to meet with SOJITZ for the purposes of interfering with the negotiations and business relationship between SOJITZ and JET EDGE"; and "SCHEMBARI took intentional actions designed to induce a disruption of the contractual relationships between JET EDGE and its customers." Amended Complaint, ECF No. 26 at ¶¶ 49, 59–60.

In short, the facts Jet Edge learned in discovery are not materially different from the allegations in its Complaint that Judge Birotte ruled upon.

The four cases cited in the Motion (Motion at 19–20[1]) support the conclusion that Jet Edge's new evidence is not materially different. All four are cases where the new facts were material because they ***directly contradicted*** the facts previously considered by the court. *Dufour* involved a prior order where the relevant fact was

---

[1] CMECF numbering.

1  that the contract was oral and not written (which affects the applicable statute of

2  limitations). *Dufour v. Allen*, Case No. 14-cv-5616, 2015 WL 8783264 at *4 (C.D.

3  Cal. Dec. 14, 2015).  The new fact established the opposite: the contract was actually

4  written. *Id.*

5      *Amesco* involved a prior order that entered judgment for the defendants

6  because the plaintiff "lacked capacity to sue because its corporate status was

7  suspended . . . ." *Amexco Exports, Inc. v. Associated Aircraft Mfg. & Sales, Inc.*, 87

8  F. Supp. 2d 1013,  1014 (C.D. Cal. 1997).  The new fact established the opposite: the

9  corporation's status was reinstated and effective retroactively, so the corporation

10 always had capacity to sue. *Id.* at 1014–15.

11      *Hamid* involved a prior order on the Class Action Fairness Act's local

12 controversy exception, which holds that localized class actions should not be

13 removed to federal court. *Hamid v. Nike Retail Servs., Inc.*, Case No. 17-cv-0600,

14 2018 WL 1684316 at *6 (C.D. Cal. Apr. 6, 2018).  The prior order found the

15 exception did not apply, partly based on the fact that a defendant (a California

16 manager) employed "2% or less" of the putative class. *Id.* at *4.  The new fact

17 established virtually the opposite: more than 20% of the putative class (a ten-fold

18 increase) was employed by that defendant. *Id.*

19      Yet even that new fact was not material by itself.  In addition, the prior order

20 partly relied on a district court decision that was since reversed. *Id.*   And

21 reconsideration was granted "[b]ecause Plaintiff has pointed to newly discovered

22 evidence and a change in the law . . . ." *Id.* at *5.  Additionally, the decision

23 contains language that the change of law was independently sufficient to satisfy the

24 standard. *Id.* at *4 ("Because the Ninth Circuit reversed the district court decision in

25 Christmas, Plaintiff has met his burden of showing a 'change in law' under Local

26 Rule 7–18(b).").  The court did not hold that the new fact was independently

27 sufficient to satisfy the standard.  Stated otherwise, this new fact—learning in

28

discovery that the defendant actually employed more than 20% of the class, instead of less than 2% of the class —was not enough on its own to warrant reconsideration.

*School District No. 1J* was venued in Oregon, *School Dist. No. 1 J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1258 (9th Cir. 1993), so it was not governed by the Central District's materiality standard.  And, in any event, the court affirmed the denial of reconsideration.  *Id.* at 1262–63.

### B.   The Motion should be denied because Jet Edge delayed four months in bringing the Motion and because amendment would be futile.

Although the Motion is fashioned as seeking reconsideration of the Court's October 2017 Order dismissing its tort claims, the relief Jet Edge seeks is the right to file an amended complaint.  The Motion should additionally be denied because Jet Edge does not satisfy the standard for amending the complaint.

Because the Motion was filed after the scheduling order's deadline for amending the pleadings (ECF No. 65 at 2), Jet Edge "must first show 'good cause' for amendment under Rule 16(b) . . . ."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).  "[T]hen, if 'good cause' be shown, the party must demonstrate that amendment was proper under Rule 15."  *Id.*

Here, Jet Edge cannot satisfy either requirement.

### 1.   Good cause does not exist because Jet Edge had all evidence supporting the Motion in its possession by no later than March 5, 2018.

Good cause does not exist because Jet Edge possessed the evidence supporting the Motion by March 5, 2018.  Yet, Jet Edge delayed filing the Motion four months.

Good cause "primarily considers the diligence of the party seeking the amendment."  *Id.* at 609.  The district court may modify the schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."  *Id.*

Good cause to amend the complaint does not exist when the plaintiff (i) "wait[s] one month" from the date he "knew of the basis for seeking to amend his complaint" to "inform [the defendant] of his intention to seek leave to amend" and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(ii) waits three months from the date he learned the basis for amendment to file the motion. *Schwerdt v. Int'l Fidelity Ins. Co.*, 28 Fed. App'x 715, 719 (9th Cir. 2002) (mem.). Indeed, "[c]ourts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16." *Sako*, 2015 WL 5022326 at *2; *EEOC v. Bakery*, Case No. 13-cv-04507, 2016 WL 1301173 at *3 (N.D. Cal. Apr. 4, 2016) (denying motion for leave to amend the complaint where (i) plaintiff learned of the relevant acts in December 2015, (ii) plaintiff filed the motion "seven weeks after those acts occurred," and (iii) the dispositive motions hearing was set for April 14, 2016); *Irise v. Axure Software Solutions, Inc.*, Case No. 08-cv-03601, 2009 WL 3615973 at *1, *3, *6 (C.D. Cal. July 30, 2009) (denying leave to amend the complaint when the plaintiff received documents relating to the amendment on March 20, 2009, but the plaintiff waited to file the motion for leave to amend until June 29, 2009); *Experexchange, Inc. v. Doculex, Inc.*, Case No. 08-cv-03875, 2009 WL 3837275 at *29 (N.D. Cal. Nov. 16, 2009) (denying motion for leave to amend the complaint where the plaintiff "waited two months after discovering its allegedly 'new' facts to bring its motion to amend").

Here, Jet Edge delayed four months in filing the Motion, and the dispositive motion filing deadline is imminent (August 6, 2018, under ECF No. 159). Every documentary exhibit attached to the Motion was in Jet Edge's possession no later than March 5, 2018. And the deposition testimony is duplicative of the exhibits.

### a. Every documentary exhibit attached to the Motion was in Jet Edge's possession by March 5, 2018.

The new evidence filed with the Motion comprises 19 exhibits. Of these, 15 are documents, and four are excerpts of deposition transcripts.

Jet Edge had every document in its possession by March 5, 2018:

- Exhibits 1–2, 4–7, and 10–16: Defendants produced these documents to Jet Edge on March 5, 2018. Declaration of Dan Terzian in support of Opposition at ¶ 4 ("Terzian Dec.").

- Exhibit 18: Jet Edge produced this document, which is correspondence to Jet Edge dated March 2016. *Id.* at ¶ 5. Presumably Jet Edge had this document in its possession before filing this case.

- Exhibit 19: Defendants produced this document to Jet Edge on approximately November 22, 2017. *Id.* at ¶ 6.

The Motion also argues that Defendants produced documents in May 2018. Motion at 25 (CMECF numbering). This is irrelevant because the Motion does not rely on any documents produced in May 2018.[2]  *See* Terzian Dec. at ¶¶ 4–6.

> **b.    The deposition transcripts attached to the Motion are all cited for propositions that are identical to the information contained in the documentary exhibits or in the complaint.**

The deposition transcripts attached to the Motion are for two depositions taken in April 2018 (Seidel and Schembari) and two depositions taken on May 3 and 4, 2018 (Quenga and Webb). If timeliness were assessed from the deposition dates, the Motion would be untimely because Jet Edge waited two months to bring this Motion. Diligence would have required ordering expedited transcripts, and Jet Edge does not provide any evidence on that (or on when it received the transcripts). Moreover,

---

[2] To the extent the Court desires further context, both sides initially faced difficulties in collecting documents. For instance, Jet Edge agreed to produce all documents relating to its trade secrets claim on August 7, 2017. Terzian Dec. at ¶ 7, Exhibit J at EX046–050. Yet Jet Edge waited until the week of April 17, 2018, to produce over 11,800 pages responsive to the request for documents relating to its trade secrets claim. *Id.* at ¶ 9. Before April 17, 2018, Jet Edge's total production was only 1,486 pages, and few of those pages related to Jet Edge's trade secret claim. *Id.* at ¶ 8. By contrast, Defendants had produced over 15,000 pages at that time. *Id.* The allegation that Defendants "withheld" documents is simply not true. This March 2018 production comprised mostly emails from Schembari's personal Gmail account, and Defendants produced the responsive emails reasonably promptly after counsel obtained access to those accounts. *Id.* at ¶ 10. The Motion's rhetoric appears to be a transparent, after-the-fact attempt to explain away Jet Edge's delay in seeking reconsideration.

9

diligence would have required noticing the depositions earlier.[3] *Irise*, 2009 WL 3615973 at *3 (holding that the plaintiff was not diligent where we had the "information on March 20, 2009" but "waited until early May 2009 to seek the depositions"). Jet Edge originally noticed Quenga for a deposition on February 16, 2018, but did not proceed with the deposition on that date. Terzian Dec. at ¶ 11, Exhibit K. Webb was identified in 38 documents in the March 5, 2018 production, and Jet Edge's lawyers were aware of him and his role in this case by March 16. *Id.* at ¶¶ 13–14.

In any event, the deposition testimony does not materially differ from the exhibits or the Complaint's allegations. Therefore, Jet Edge's diligence should be assessed from the date the documents were produced—not the dates the depositions occurred.

This chart details (i) the deposition testimony the Motion relies upon and (ii) the exhibits and Complaint allegations it duplicates:

| DEPOSITION | EXHIBIT/COMPLAINT |
|---|---|
| Quenga deposition: Jet Edge and Defendants are competitors. Motion at 14 (CMCECF numbering). | Exhibit 5 at PHX006769–0067670: Identifies Jet Edge as a competitor. Amended Complaint, ECF No. 26 at ¶ 40: "In the months following SCHEMBARI's departure from JET EDGE, multiple JET EDGE customers terminated their Aircraft Charter Management Agreements with JET EDGE. Those customers include POCKET CORPORATION, SEGA SAMMY, SAM CAYMAN, and FAST RETAILING. Further, |

---

[3] The first depositions were supposed to commence in March 2018, but Plaintiffs unilaterally cancelled them on the basis that 100 documents were improperly designated highly confidential. ECF No. 118 at 1. Magistrate Judge Stevenson was "unpersuaded that the depositions of Mr. Frank and Mr. Eric, either individually or on Rule 30(b)(6) topics relating to information in *Jet Edge*'s knowledge, possession, and control, cannot proceed without resolving the dispute concerning Defendant's document designation." *Id.* at 2.

| | |
|---|---|
| | those former JET EDGE customers have made agreements with DEFENDANTS and are now chartered and managed by PHENIX JET." |
| Schembari deposition: Schembari came up with the name Phenix Jet while at Jet Edge.  Motion at 13 (CMECF numbering). | Amended Complaint, ECF No. 26 at ¶ 13: "On February 4, 2016, while still employed by JET EDGE, SCHEMBARI registered the domain name 'phenixjet.com'." |
| Seidel deposition: Schembari advised Seidel that Schembari was bringing aircraft to the new company.  Motion at 17 (CMECF numbering).<br><br>Quenga deposition: The aircraft transferred to Defendants were under Jet Edge management at the time.  Motion at 15 (CMECF numbering). | Exhibit 16: March 2016 email from Schembari to Seidel, Naito (Sojitz), and Sakurai (Sojitz) regarding ACP deal and moving aircraft from a prior management company to the new company.<br><br>Amended Complaint, ECF No. 26 at ¶ 40: "In the months following SCHEMBARI's departure from JET EDGE, multiple JET EDGE customers terminated their Aircraft Charter Management Agreements with JET EDGE. Those customers include POCKET CORPORATION, SEGA SAMMY, SAM CAYMAN, and FAST RETAILING. Further, those former JET EDGE customers have made agreements with DEFENDANTS and are now chartered and managed by PHENIX JET." |
| Webb deposition: Sojitz provided the financial information for the business plan's projections. Motion at 14 (CMECF numbering).<br><br>Schembari deposition: The financial plan identified Jet Edge's aircraft as Defendants' customers. Motion at 13 (CMECF numbering). | Exhibits 6–7: February 2016 email from Rodney Webb to Paul Schembari and Elsie Quenga regarding financial forecast for Defendants and a spreadsheet of the financial forecast.  The financial plan identifies the specific registration numbers of each aircraft.<br><br>Amended Complaint, ECF No. 26 at ¶ 59: "DEFENDANTS took actions to disrupt the negotiations between JET EDGE and SOJITZ, including but not limited to secretly setting up a competing venture and negotiating with SOJITZ to fund and/or co-venture in that competing business." |
| Schembari deposition: Schembari | Exhibit 14: February 2016 email from |

11

| | |
|---|---|
| did not resign until the he was sure the aircraft management agreement (AMA) for the aircraft bearing registration number N2020 was signed. Motion at 16 (CMECF numbering). | Schembari to Sakurai (Sojitz) regarding the plan for getting AMA signed this week" and notifying Jet Edge of his resignation. |
| Schembari deposition: While at Jet Edge, Schembari worked with Sojitz to create a new company. Motion at 13 (CMECF numbering). | Exhibit 15: January 2016 email from Sakurai (Sojitz) to Schembari regarding a potential brokerage agreement and moving aircraft from Jet Edge to a new entity. <br><br> Amended Complaint, ECF No. 26 at ¶ 59: "DEFENDANTS took actions to disrupt the negotiations between JET EDGE and SOJITZ, including but not limited to secretly setting up a competing venture and negotiating with SOJITZ to fund and/or co-venture in that competing business." |

### c. Jet Edge did not alert Defendants of the Motion until June 4 and then was dilatory in pursuing it.

Jet Edge did not alert Defendants of the prospective Motion until June 4, 2018. Terzian Dec. at ¶ 15, Exhibit A at EX004. Defendants met and conferred with Jet Edge the next day, June 5. *Id.*

It was then a week later, on June 11, that Jet Edge raised the issue "regarding de-designating confidential information." *Id.* at ¶ 16, Exhibit B at EX007. After initially providing no information on what it wanted de-designated (*id.* at ¶ 16, Exhibit B at EX007), Jet Edge provided a letter relating to what it sought to de-designate. *Id.* at ¶ 17, Exhibits C–D.

This letter did not directly address what information Jet Edge wanted de-designated. *See id.*, Exhibit D at EX015–EX017. Instead, the letter appeared to be essentially an excerpt of the argument in Jet Edge's Motion. *See id.*

On June 13, Defendants sought clarification on what, exactly, Jet Edge wanted Defendants to de-designate:

> Please confirm that Jet Edge is seeking to de-designate only the specific deposition page and line numbers that are contained in either the draft complaint previously sent us or in the June 11 letter.

*Id.* at ¶¶ 18–19, Exhibit E at EX019.

This same day, Defendants also advised Jet Edge that they needed more information because the June 11 letter contained vague references to exhibits without an explanation of what those exhibits are.   *Id.* at ¶ 20, Exhibit F.   Specifically, Defendants advised:

> [T]his June 11 letter is somewhat difficult because it refers to exhibits to your declaration (e.g., 'Exh. 5 to Exh. A of Estrin Declaration'), and we don't have the key for what that means.   The letter also doesn't say whether it is seeking to de-designate those exhibits.
>
> Could you please advise on the full scope of information that Jet Edge is seeking to de-designate?

*Id.* at ¶ 20, Exhibit F at EX024.   After this email, Jet Edge then sent Defendants "the exhibits [they] are going to use in [their] motion" and asked Defendants to de-designate all except one.   *Id.* at ¶ 22, Exhibit G at EX029.

The discussed aim of the parties was for Defendants to get their final position to Jet Edge sufficiently in advance of Friday (when Judge Birotte hears motions) so that Jet Edge could file the motion on Friday, June 22 and have it heard 28 days later. *Id.* at ¶ 23, Exhibit H (Terzian: "We'd appreciate a couple days for us to resolve this and get a final decision.   We don't think this should affect Jet Edge's deadline because it will get the same hearing date whether it files the motion today or Friday evening"; Estrin: "I know we have until Friday to file the motion, but depending on what you want redacted it will likely change our application to file under seal and other documents.   Can you please let us know what we need to redact in regards to these two filings by Wednesday morning?").   Defendants then provided their proposed redactions of exhibits on Wednesday, June 20 at 2:07 PM.   *Id.* at ¶ 24, Exhibit I.

1    Yet Jet Edge did not file the Motion on June 22 as discussed.  It waited until

2  July 2 to file the Motion.

3           **d.     Defendants would be prejudiced by amendment because it would require delaying trial and summary judgment deadlines and reopening discovery.**

4

5    Defendants would be prejudiced if the Motion is granted.  Defendants did not

6  target any discovery to intentional interference of contract claims or the duty of

7  loyalty claims because the Court dismissed them.  Terzian Dec. at ¶ 25.  So granting

8  the Motion would require postponing trial and summary judgment deadlines and

9  reopening discovery.

10   The discovery issue is recognized in a prior stipulation that the parties filed,

11  which sought an extension of discovery deadlines while Defendants' motion to

12  dismiss was pending before Judge Birotte.  Stipulation to Modify Scheduling Order,

13  ECF No. 84.  The stipulation expressly agreed that "if Defendants prevail on their

14  motion to dismiss Jet Edge's tortious interference with contract claims, Defendants

15  will not need to depose witnesses on any issues related to tortious interference of

16  contracts."  *Id.* at 3.  It also agreed that "Defendants' written discovery has been

17  targeted at the claims not subject to its motion to dismiss, and they would likely need

18  to conduct further written discovery on the tortious interference claims if those

19  remain part of this action."  *Id.*  Because Defendants prevailed on the dismissal of

20  the claims for interference of contract and duty of loyalty, they never conducted

21  discovery targeting them.  Terzian Dec. at ¶ 25.

22   If these new claims are allowed, Defendants would need to undertake this

23  discovery.  As explained below, these new claims would be allowed only if they do

24  not arise out of a common nucleus of operative facts as the trade secret claim.  *See*

25  Part II.B.2.b (beginning on page 15).  This necessarily means that Defendants would

26  have to conduct discovery on a set of facts that they did not previously explore.

27

28

1

**2.  The Motion should be denied because (i) there is no clear error or substantially different evidence and (ii) Judge Birotte's decision was correct.**

2

3        Even if Jet Edge presented new facts and could demonstrate good cause and

4   that its amendment is proper (it cannot), the Motion should still be denied because (i)

5   there is no clear error or substantially different evidence and (ii) Judge Birotte's

6   Order was correct.

7        **a.  Overruling Judge Birotte's Order requires clear error or substantially different evidence.  Neither exists.**

8

9        This case faces an even higher bar than typical motions to reconsider because

10  Jet Edge is seeking reconsideration of a ruling entered by a different judge than the

11  one who ruled on the original motion.

12       For a district judge to overrule another judge's earlier decision in the case, the

13  prior decision must have been either (a) "clearly erroneous and its enforcement

14  would work a manifest injustice" or (b) based on "substantially different evidence . .

15  . ."  *Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001); *Cosby v.*

16  *Autozone, Inc.*, Case No. 2:08-cv-00505, 2016 WL 1626997 at *3 (E.D. Cal. Apr. 25,

17  2016); *Fox v. De Long*, Case No. 2:14-cv-02947, 2016 WL 6088371 at *8 (E.D. Cal.

18  Jan. 8, 2016).

19       There is no substantially different evidence for the reasons explained in Part

20  II.A, beginning on page 2.

21       Nor is there clear error.  Judge Birotte's ruling was correct, for the reasons

22  discussed below.  And even if his ruling was wrong, it is not clear error because it is

23  supported by substantial authority.

24       **b.  Judge Birotte's Order was correct because tort claims are preempted when they share a common nucleus of operative facts with the trade secret claim.**

25

26       Judge Birotte's Order was correct because the claims for intentional inference

27  with contract and duty of loyalty are preempted.

28

The Act preempts all claims—both common law and statutory—when those "claims . . . are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958, 962 (2009); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 986 (C.D. Cal. 2010) (The Act "supersedes any claim 'based on the same nucleus of facts as the misappropriation of trade secrets claim,' even though the superseded claim may seek 'something more.'"); Order re: Motion to Dismiss, ECF No. 89 at 4.[4]   A claim is preempted whenever a plaintiff bases any of its elements on trade secret misappropriation. *E.g.*, *Rovince Int'l Corp. v. Preston*, Case No. 13-cv-3527, 2013 U.S. Dist. LEXIS 145624, 2013 WL 5539430 at *5, 7 (C.D. Cal. Oct. 7, 2013) (concluding that a claim was not preempted because "none of the elements . . . will turn on [plaintiff's] alleged misuse of confidential information").

Additionally, the Act preempts claims based on "proprietary information that does not constitute a trade secret . . . where the basis of the property interest is rooted in the information's private nature." *E.g.*, *RSPE Audio Solutions, Inc. v. Vintage King Audio, Inc.*, Case No. 12-cv-06863, 2013 U.S. Dist. LEXIS 37210, 2013 WL 1120664 at *3 (C.D. Cal. Mar. 18, 2013); *Mattel, Inc.*, 782 F. Supp. 2d at 987 (The Act "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); *SunPower Corp. v. SolarCity Corp.*, Case No. 12-cv-00694, 2012 U.S. Dist. LEXIS 176284, 2012 WL 6160472 at *5–7 (N.D. Cal. Dec. 11, 2012) ("holding that CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of trade secret"); *see also K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 957–58 (rejecting the argument for a

---

[4] *See also Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 232, 241 (2010) (internal brackets omitted), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).

"narrow interpretation of preemption" and rejecting argument that "common law claims . . . go forward whenever they seek 'something more' than trade secret relief"); Order re: Motion to Dismiss, ECF No. 89 at 5.

Here, Jet Edge has claimed that a vast range of information is of a private nature and also a trade secret.  Amended Complaint, ECF No. 26 at ¶¶ 71–77; Exhibit 21 to Krompier Declaration, ECF No. 147, Proposed Second Amended Complaint at 68–69 (¶¶ 62–66).  This includes: "client information," "agreements between Jet Edge and its customers," "information regarding business operations," "information related to JET EDGE's Asian fleet," and vendor agreements.  Amended Complaint, ECF No. 26 at ¶¶ 71–77; Exhibit 21 to Krompier Declaration, ECF No. 147, Proposed Second Amended Complaint at 68–69 (¶¶ 62–66).

At least one Central District decision has facts almost identical to here, and that court dismissed the tort claims with prejudice.  *See RSPE Audio Solutions*, 2013 WL 1120664 at *4.  That case involved former employees (defendants) who had access to their former employer's (the plaintiff's) "confidential information, such as customer lists . . . [and] deal proposals . . . ."  *Id.* at *1. While employed with the plaintiff, defendants used that confidential information "to contact and solicit [plaintiff's] customers for the benefit of [plaintiff's] competitor . . . ."  *Id.*  Among other things, defendants used plaintiff's "proposed offer terms to draft bid sheets for [plaintiff's competitor]" and undertook efforts to "divert [plaintiff's] customers to [plaintiff's competitor]."  *Id.* Defendants then resigned from plaintiff and joined the competitor.  *Id.*

The complaint in that action pleaded claims of misappropriation of trade secrets under the Act, "intentional interference with prospective economic advantage, unfair business practices, and aiding and abetting misappropriation of trade secret" against the former employees and plaintiff's competitor.  *Id.*  The court held that the misappropriation claim under the Act preempted the other three claims. *Id.* at *4.  The court's rationale was simple: "The allegations in the[se three claims],

such as that Defendants 'interfered with deal proposals' and 'over-bid price quotes' are bound up with, if not directly premised upon, Defendants' use of the trade secrets identified in Plaintiff's . . . claim [under the Act]."  *Id.* (stating that "[t]he information and conduct described in the [non-Act claims] appear to be closely related, if not identical, to that listed in the First Cause of Action under [the Act]").

This Opposition now further details how this law applies to claims for the intentional interference with contract and the duty of loyalty.

### i.    Intentional Interference with Contracts

Intentional interference with contractual relations requires, among other things: (1) a contract with a third party; (2) the defendant knew of the contact; (3) the defendant acted to breach or disrupt the contractual relationship; and (4) actual breach or disruption. *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001); *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); Order re: Motion to Dismiss, ECF No. 89 at 5; *see also* Cal. Civ. Jury Instructions § 2201.

Courts have expressly recognized that claims for intentional interference with contractual relations or business advantage are preempted when they are based on the same nucleus of facts as the claim under the Act.  *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 960–61 ("[A]ppellant's fifth cause of action for tortious interference with contract rests on the same legal and factual basis as its trade secret misappropriation claim. . . .  [I]t is therefore preempted."); *Rovince Int'l Corp.*, 2013 WL 5539430 at *5 ("The only 'wrongful conduct' proffered by the FAC is [defendant's] alleged misappropriation of [plaintiff's] trade secrets.  [Plaintiff's] fifth claim thus 'arise[s] out of [defendant's] purported misappropriation of trade secrets.' As such, it is superceded by the [Act] and must be dismissed.").

The proposed second amended complaint is founded on alleged confidential information and alleged trade secrets.  The contracts allegedly disrupted are the "contracts . . . between Jet Edge and its customers . . . ."  Exhibit 21 to Krompier

1    Declaration, Proposed Second Amended Complaint, ECF No. 147 at 67–68 (¶¶ 49–

2    51).   This is the same information that forms the basis of Jet Edge's trade secret

3    claim: Schembari allegedly stole these customers.   Amended Complaint, ECF No. 26

4    at ¶¶ 71–77; Exhibit 21 to Krompier Declaration, ECF No. 147, Proposed Second

5    Amended Complaint at 68–69 (¶¶ 63–65).

6        Judge Birotte's   Order   explained   why   a   trade   secret   claim   for   theft   of

7    customers preempts an intentional interference with contract claim based on the

8    same theft of customers:

9        Schembari's acts of setting up a competing business are not in and of
10       themselves intentional acts designed to induce a breach or disrupt
         contractual relationships.   Instead, it is the affirmative act of using Jet
11       Edge's client information to solicit business that satisfies this element.   In
         support of its misappropriation claim, Plaintiff alleges that "Defendant
12       misappropriated Plaintiff's trade secret information, through his wrongful
13       use of that information to compete against Plaintiffs before and after the
         termination of his employment."   (FAC at ¶ 78).   Without this necessary
14       allegation Plaintiff fails to establish the third element of a claim for
         intentional interference with contractual relations.
15
16       . . . .

17       Schembari could not have disrupted the relationship, without taking some
         affirmative action directed at or involving Sojitz.   Thus, Plaintiff's
18       allegation that Schembari utilized confidential information to negotiate
         his own partnership with Sojitz provides the affirmative act necessary to
19       establish these claims.   However, this allegation is also integral to the
20       trade secret misappropriation claim, thus, both of the aforementioned
         claims are preempted by CUTSA.
21
     Order re: Motion to Dismiss, ECF No. 89 at 6–8 (internal brackets omitted).
22
23       This analysis applies equally to the new evidence.   For instance, Jet Edge cites

24   an email where "Schembari told one of the Jet Edge Customers that '[f]lights

25   dispatched by Jet Edge . . . never go smoothly . . . .'"   Motion, ECF No. 144 at 23

26   (CMECF numbering).   This is the same allegedly stolen customer that forms the

27   basis of Jet Edge's trade secret claim, and Jet Edge will be using this evidence in

28

1    support of its misappropriation claim.  Exhibit 21 to Krompier Declaration, Proposed

2    Second Amended Complaint, ECF No. 147 at 67–68 (¶¶ 49–51).

3          Jet Edge also cites evidence that Schembari "assured the Jet Edge Customers

4    that they could separate from Jet Edge without a problem. . . .  Ultimately, his

5    interference with Jet Edge's relationships succeeded as Schembari stole the Jet Edge

6    Customers bringing them to Phenix Jet."  Motion, ECF No. 144 at 23 (CMECF

7    numbering).  Again, this is the same common nucleus of facts as Jet Edge's trade

8    secret claim that Schembari allegedly "stole" these customers.

9                          ii.    **Duty of Loyalty**

10          Courts have also expressly recognized that a claim for breach of the duty of

11   loyalty is preempted when it is based on the same nucleus of facts as a claim under

12   the Act.  *Mattel, Inc. v. MGA Entm't, Inc.*, Case No. 04-cv-9049, 2011 U.S. Dist.

13   LEXIS 55756, 2011 WL 8427611 at *3 (C.D. Cal. Mar. 28, 2011) ("Any claim

14   based upon a breach of that obligation [of loyalty] is superseded by the California

15   Uniform Trade Secrets Act."); *Argo Grp. US, Inc. v. Professional Governmental*

16   *Underwriters, Inc.*, Case No. 13-cv-1787, 2014 WL 12577144 at *3–4 (C.D. Cal.

17   Jan. 6, 2014) (holding that the breach of confidence and breach of fiduciary duty

18   claims were preempted because "are based upon 'the same nucleus of facts,' namely

19   Seymour's disclosure of confidential information in violation of his obligations to

20   refrain from disclosing that information"); *see also Rovince Int'l Corp.*, 2013 WL

21   5539430 at *4 (dismissing breach of fiduciary duty claim because it was preempted

22   by the Act).

23          Judge Birotte's Order followed these cases and held that "Plaintiff either fails

24   to state a claim for breach of the duty of loyalty, or to the extent that such a claim is

25   based on trade misappropriation, it is preempted by CUTSA."  Order re: Motion to

26   Dismiss, ECF No. 89 at 8–9.

27          Jet Edge asserts that new evidence shows that Schembari actually competed

28   with Jet Edge by (i) creating a business plan that identified "the *same* planes under

1   management by Jet Edge" as customers of Schembari and (ii) entering a deal with

2   "Sojitz . . . that would result in the Jet Edge Customers leaving Jet Edge for his new

3   company."  Motion, ECF No. 144 at 24 (CMECF numbering).  The alleged theft of

4   these customers is the same basis of Jet Edge's misappropriation of trade secrets

5   claim.  Exhibit 21 to Krompier Declaration, Proposed Second Amended Complaint,

6   ECF No. 147 at 67–68 (¶¶ 49–51).  Therefore, it is preempted.

7       There is an additional argument why the duty of loyalty claim is futile:  "In

8   California, there is no tort for 'breach of duty of loyalty' that is distinct from the

9   recognized tort of 'breach of fiduciary duty.'  The fiduciary relationship is a

10  prerequisite to the existence of a duty of loyalty."  *Mattel, Inc.*, 2011 WL 8427611 at

11  \*3.  "[N]on-fiduciary employees owe no duty of loyalty to their employers."  *Id.* at

12  \*1.  Therefore, as a matter of law, an employer cannot assert a cause of action for

13  breach of loyalty when the employee was not a fiduciary.  *Id.* at \*3–4 (granting

14  motion for judgment as a matter of law in favor of defendant-employees on plaintiff-

15  employer's claim for breach of the duty of loyalty).

16      A fiduciary duty requires a relationship where "one of the parties is in duty

17  bound to act with the utmost good faith for the benefit of the other party."  *Wolf v.*

18  *Superior Court*, 107 Cal. App. 4th 25, 29 (2003).  "Traditional examples" include

19  trustees, business partners, joint venturers, majority shareholders, and members of

20  the board of directors.  *Id.* at 30.  By contrast, "[a]n employer-employee relationship

21  without more, is not a fiduciary relationship."  *Sci. of Skincare, LLC v.*

22  *Phytoceuticals, Inc.*, Case No. 08-cv-4470, 2009 U.S. Dist. LEXIS 58241, 2009 WL

23  2050042 at \*3 (C.D. Cal. July 8, 2009); *Evenfe v. Esalen Inst.*, Case No. 15-cv-

24  05457, 2016 U.S. Dist. LEXIS 96843, 2016 WL 3965167 at \*7 (N.D. Cal. July 24,

25  2016) ("[T]he fact of an employer-employee relationship alone is insufficient to

26  create a fiduciary relationship.").

27      The proposed complaint does not allege that Schembari falls into any of these

28  traditional examples.  Nor is there any evidence that he fits within these categories.

1    Jet Edge may dispute this argument by citing the same cases it did in its prior

2    opposition.  Those cases do not compel a different result.

3    *Huong Que* involved employees who were fiduciaries because they were

4    managing agents" for their employer's "business dealings." *Huong Que, Inc. v. Luu*,

5    150 Cal. App. 4th 400, 414 (2007).  *Thomas Petroleum* involved an employee who

6    was a fiduciary; he was "the highest-ranking employee" in the office. *Thomas*

7    *Petroleum, LLC v. Lloyd*, Case No. 1:11-cv-00902, 2012 U.S. Dist. LEXIS 142729,

8    2012 WL 4511369 at *1 (E.D. Cal. Oct. 2, 2012).  Moreover, the quotation cited in

9    the Opposition was a passing comment in a footnote discussing fiduciaries.  *Id.* at

10   *18 n.8 ("This is despite the fact that [defendant] claims '[n]o one from [plaintiff]

11   ever told [him] that [he] was a fiduciary of the company.' . . .  The law does not

12   require such specific notice. The duty arises from the employer-employee

13   relationship.").

14   *Fowler* discusses the loyalty issue only in passing because it was not material

15   to the case, which regarded the former employee's claims against his former

16   employer "for wrongful termination, breach of contract, and intentional infliction of

17   emotional distress." *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 36 (1987).

18   *Stokes* is the same: it involved a former employees' "action for wrongful

19   termination." *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 287 (1995).  *Stokes* even

20   explicitly recognizes the "most significant[]" distinction between using the duty of

21   loyalty as a basis for termination versus using the duty as a basis for an affirmative

22   tort claim of breach of the duty.  *Id.* at 294.

23   *Eckard Brandes* involved Hawaii law.  *Eckard Brandes, Inc. v. Riley*, 338 F.3d

24   1082, 1085 (9th Cir. 2003).  *Integral Development Corp.* and *Fields'* analyses of the

25   breach of loyalty issue were limited to three or four sentences, whereas the leading

26   Central District decision on this issue (*Mattel*) canvassed the issue at length.

27   *Compare*  *Integral Dev. Corp. v. Tolat*, Case No. 12-cv-06575, 2013 U.S. Dist.

28   LEXIS 153705, 2013 WL 5781581 at *3 (N.D. Cal. Oct. 25, 2013); *Fields v. QSP*,

*Inc.*, Case No. 10-cv-5772, 2011 U.S. Dist. LEXIS 41350, 2011 WL 1375286 at *3–4 (C.D. Cal. Apr. 8, 2011) *with Mattel, Inc.*, 2011 WL 8427611 at *1–4.

### iii.   *Angelica* and *Ikon*

The Motion relies primarily on *Angelica*, and secondarily on *Ikon*, for the proposition that Jet Edge's intentional interference with contract and breach of the duty of loyalty claims are not preempted by the Act.  Motion, ECF No. 144 at 21–23 (CMECF numbering).  Neither case supports the relief sought in the Motion.

In the first instance, the Court was well aware of *Angelica* when it granted Defendants' Motion to Dismiss.  The Court's Order dismissing the causes of action Jet Edge now seeks leave to reassert specifically cited *Angelica* for the proposition that "[a] common law tort claim is not displaced by CUTSA where the allegations underlying the claim 'are not based on the existence of a trade secret.'"  Order re: Motion to Dismiss, ECF No. 89 at 5 (internal brackets omitted).  The Court applied *Angelica* and found that Jet Edge's tort claims were preempted.  That interpretation is not clearly erroneous given the many cases on this issue (and the application of those cases) detailed above.

In any event, the decision in *Angelica* is materially distinguishable.  The court in *Angelica* did not identify the trade secrets that were alleged to have been misappropriated.  *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 498, 502 (2013) (stating only that the plaintiff brought "a claim under the Uniform Trade Secrets Act" or "claims for misappropriation of trade secrets," but never explaining what those claims entailed).  Thus, it is impossible to determine whether the claim for trade secret misappropriation overlapped with the tort claims at issue.

*Ikon* involved a narrow claim of stolen trade secrets, so the preemptive bar was narrow (because the trade secret claim's nucleus of operative facts was small).

The trade secret claim was founded solely on stolen customer lists.[5]  *Ikon Office Solutions, Inc. v. Rezente*, Case No. 2:10-cv-1704, 2011 WL 1402882 at *3 (E.D. Cal. Apr. 13, 2011).   By contrast, the duty of loyalty and interference with prospective economic relations claims were based on sabotaging "potential deals" and "encouraging potential Ikon customers to delay or reject concluding any deal with Ikon."  *Id.* at *2–4.   Thus, the factual bases for the claims had little to no overlap.  *See Ikon Office Solutions, Inc.*, 2011 WL 1402882 at *3 ("CUTSA preempts all common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'").

This case is not like *Ikon*.   Jet Edge is claiming that Defendants misappropriated trade secrets in the form of the Sojitz relationship and its customers. Amended Complaint, ECF No. 26 at ¶¶ 17, 49, 59–61, 66, 71–74; Exhibit 21 to Krompier Declaration, ECF No. 147, Proposed Second Amended Complaint at 58– 60, 68–69 (¶¶ 16–18, 22–23, 62–66).  The proposed claims of duty of loyalty and interference with contract are founded on the same the thing: theft of those customers.  Exhibit 21 to Krompier Declaration, ECF No. 147, Proposed Second Amended Complaint at 66–67 (CMECF numbering) (¶¶ 49–53, 56–57).

## III.   CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: July 16, 2018                    **DUANE MORRIS LLP**


                                        By: *s/ Dan Terzian*
                                            Dan Terzian

                                        Attorneys for Defendants
                                        Paul Schembari; ACP Jet Charters, Inc.;
                                        Phenix Jet International, LLC; and Cosa Di
                                        Famiglia Holdings, LLC

---

[5] The court referenced "other alleged trade secrets" but did not explain what they were. *Ikon Office Solutions, Inc.*, 2011 WL 1402882 at *3.