1  Dan Terzian (SBN 283835)
   dterzian@duanemorris.com
2  **DUANE MORRIS LLP**
   865 S. Figueroa, Suite 3100
3  Los Angeles, CA 90017
   Telephone: +1 213.689.7400
4  Facsimile: +1 213.689.7401

5  Lawrence H. Pockers (admitted *pro hac vice*)
   lhpockers@duanemorris.com
6  Thomas T. Loder (admitted *pro hac vice*)
   ttloder@duanemorris.com
7  **DUANE MORRIS LLP**
   30 South 17th Street
8  Philadelphia, PA 19103
   Telephone: +1 215.979.1000
9  Facsimile: +1 215.979.1020

10 Attorneys for Defendants PAUL
   SCHEMBARI; ACP JET CHARTERS, INC.;
11 PHENIX JET INTERNATIONAL, LLC; and
   COSA DI FAMIGLIA HOLDINGS, LLC

12

13

# IN THE UNITED STATES DISTRICT COURT

14

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 | WESTERN AIR CHARTER, INC., doing business as JET EDGE INTERNATIONAL, a California corporation,

17                        Plaintiff,

18        v.

19 PAUL SCHEMBARI, an individual *et al.*,

20                        Defendants.

21

22

23

Case No. 2:17-cv-00420-JGB-KS

Hon. Jesus G. Bernal

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Hearing:   September 10, 2018
Time:      9:00 a.m.
Judge:     Hon. Jesus G. Bernal
           Courtroom 1
           3470 Twelfth Street
           Riverside, CA 92501

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   Introduction ...................................................................................................1

II.  Background....................................................................................................2

III. Standard ........................................................................................................5

IV.  Argument .......................................................................................................6

    A.   Summary judgment should be entered in Defendants' favor on the declaratory relief and injunctive relief claims.............................................6

        1.   Summary judgment should be granted in Defendants' favor on Jet Edge's claim for declaratory relief. ...................................6

        2.   Summary judgment should be granted in Defendants' favor on Jet Edge's claim for injunctive relief because a claim for injunctive relief is not a stand-alone cause of action, but rather a remedy tied to a cause of action. ............................................9

    B.   Summary judgment should be entered in Schembari's favor on Jet Edge's breach of contract claim because the entire Employment Agreement is void and, in any event, the only sections of the Employment Agreement at issue have either (i) already been held by this Court to be void, or (ii) are illegal on their face and/or contravene California law as Jet Edge seeks to apply them. ...................10

        1.   The primary "object" of the Employment Agreement is to prevent lawful competition and, therefore, the entire Employment Agreement is void and unenforceable...........................10

    C.   Judgment should be entered in Schembari's favor on his counterclaim for violation of California's unfair competition law. ..........17

V.   Conclusion ...................................................................................................19

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alfino v. Litton Loan Servicing, LP*
  No. 11-cv-01034, 2011 WL 13225023 (C.D. Cal. Aug. 24, 2011) ......................... 9

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ...................................................................................................... 5

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*
  630 F. Supp. 2d 1083 (N.D. Cal. 2009) ............................................................... 12

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*
  630 F. Supp. 2d 1084 (N.D. Cal. May 20, 2009) ................................................. 18

*Bates v. Union Oil Co. of California*
  944 F.2d 647 (9th Cir. 1991) ................................................................................ 15

*Carlson Holdings, Inc. v. NAFCO Ins. Co.*
  205 F. Supp. 2d 1069 (D. Minn. 2001) .................................................................. 7

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ............................................................................................ 5–6

*Comedy Club, Inc. v. Improv West Assocs.*
  553 F.3d 1277 (9th Cir. 2009) .............................................................................. 16

*Couch v. Morgan Stanley & Co., Inc.*, Case No. 14-cv-10, 2015 WL
  4716297 (E.D. Cal. Aug. 7, 2015) ........................................................................ 18

*Fed. Kemper Ins. Co. v. Rauscher*
  807 F.2d 345 (3d Cir. 1986) ................................................................................... 7

*FormFactor, Inc. v. Micro-Probe, Inc.*
  Case No. 10-cv-3095, 2012 U.S. Dist. LEXIS 79359 (N.D. Cal. June 7, 2012) ................................................................................................................... 15

*Freedom Transp., Inc. v. Travelers Companies, Inc.*
  No. 16-cv-213, 2016 WL 7496731 (C.D. Cal. Mar. 24, 2016) .......................... 7, 9

*ITN Flix, LLC v. Hinojosa*
   686 Fed. App'x 441 (2017) ................................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986).............................................................................. 5

*Mills v. Green*
   159 U.S. 651 (1895).............................................................................. 8

*Mintz v. Mark Bartelstein and Assocs., Inc.*
   906 F. Supp. 2d 1017 (C.D. Cal. 2012)...........................................16-17

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
   210 F.3d 1099 (9th Cir. 2000) ............................................................. 5

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*
   No. 16-cv-00253, 2018 WL 2117424 (N.D. Cal. May 8, 2018) ............................. 5

*Skelly Oil Co. v. Phillips Petroleum Co.*
   339 U.S. 667 (1950).............................................................................. 7

*SriCom, Inc. v. Ebis Logic, Inc.*, Case No. 12-cv-904, 2012 WL 4051222
   (N.D. Cal. Sept. 13, 2012) ................................................................... 15

*StreamCast Networks, Inc. v. IBIS LLC*
   Case No. 05-cv-04239, 2006 WL 5720345 (C.D. Cal. May 2, 2006) ..................... 8

*Thomas Weisel Partners LLC v. BNP Paribas*
   Case No. 07-cv-6198, 2010 WL 546497 (N.D. Cal. Feb. 10, 2010)............... 14–15

*Zamora v. Solar*
   Case No. 2:16-cv-01260, 2016 WL 3512439 (C.D. Cal. June 27, 2016) ..........................................................................7-9

**California Cases**

*Allen v. City of Sacramento*
   234 Cal. App. 4th 41 (2015) ................................................................ 9

*Angelica Textile Servs., Inc. v. Park*
   220 Cal. App. 4th 495 (2013) ............................................................. 16

*Belton v. Comcast Cable Holdings, LLC*
   151 Cal. App. 4th 1224 (2007) ........................................................... 18

iv

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT

*City of Huntington Beach v. Bd. of Admin.*
4 Cal. 4th 462 (1992) ...................................................................... 12

*City of S. Pasadena v. Dep't of Transportation*
29 Cal. App. 4th 1280 (1994) ........................................................... 9

*Dowell*, 179 Cal. App. 4th at 575 ........................................................ 18

*Jurcoane v. Superior Court*
93 Cal. App. 4th 886 (2001) .......................................................... 13

*Kashani v. Tsann Kuen China Enterprise Co.*
118 Cal. App. 4th 531 (2004) ......................................................... 12

*Kelton v. Stravinski*
138. Cal. App. 4th 941, 946–49 (2006) ............................................. 16

*Kolani v. Gluska*
64 Cal. App. 4th 402, 408 (1998), *disapproved on other grounds in*
*Bonifield v. County of Nevada*, 94 Cal. App. 4th 298, 303–06 (2001) ................ 12

*Mamou v. Trendwest Resorts, Inc.*
165 Cal. App. 4th 686 (2008) ...................................................... 16-17

*Tiedje v. Aluminum Taper Milling Co.*
46 Cal. 2d 450 (1956) ............................................................... 12

*VL Sys., Inc. v. Unisen, Inc.*
152 Cal. App. 4th 708 (2007) ....................................................... 15

*Wells v. Comstock*
46 Cal. 2d 528 (1956) ............................................................... 12

**Federal Statutes**

28 U.S.C. § 2201 ......................................................................... 8

**State Statutes**

Cal. Bus. & Prof. Code § 16600 ...................................... 6-7, 10–11, 13–17

Cal. Bus. & Prof. Code § 17200. ................................................... 9, 18

Cal. Civ. Code § 1441 ................................................................ 12

Cal. Civ. Code § 1550..............................................................................................12–13

Cal. Civ. Code § 1596..............................................................................................12–13

Cal. Civ. Code § 1598..............................................................................................12–13

Cal. Civ. Code § 1608.................................................................................................12

Cal. Civ. Code § 1667.................................................................................................12

Cal. Civ. Code § 1668.................................................................................................12

Cal. Civ. Code § 3426.4..............................................................................................19

**Rules**

Fed. R. Civ. P. 56........................................................................................................5

## I.   INTRODUCTION

Plaintiff Western Air Charter ("Jet Edge") brought 10 separate causes of action against Defendants Paul Schembari ("Schembari"), ACP Jet Charters, Inc. ("ACP"), Phenix Jet International, LLC ("PJI") and Cosa di Famiglia Holdings, LLC ("CDF"). *See* ECF No. 26.  Of these original 10 causes of action, six have been dismissed by this Court with prejudice.  *See* ECF No. 89.[1]  Jet Edge voluntarily dismissed its claim for misappropriation of trade secrets.  *See* ECF No. 165.  All that remains are Jet Edge's cause of action against Schembari for breach of contract (First Cause of Action), and its claims for declaratory (Ninth Cause of Action) and injunctive (Tenth Cause of Action) relief.

In the first instance, this Court should grant summary judgment in Defendants' favor with respect to Jet Edge's claims for declaratory and injunctive relief for a variety of reasons, including but not limited to the fact that the claim for declaratory relief is derivative of claims that have already been dismissed or should be dismissed, and because injunctive relief is a remedy, not a separate cause of action.

Next, the Court should enter judgment in Schembari's favor on Jet Edge's breach of contract claim against him.  This Court has already found that the contract at issue (Schembari's Employment Agreement with Jet Edge) contains provisions that violate California law.  *See* ECF No. 96 at 6–8.  A contract that has as its "object" an unlawful purpose – as the Employment Agreement does – is void under California law.

---

[1] Though the Court has granted Jet Edge leave to file an amended complaint (ECF No. 166), Jet Edge has not done so by the time of filing this Motion.  As such, this Motion is directed to the operative complaint (Jet Edge's Amended Complaint, ECF No. 26). Defendants anticipate seeking summary judgment on at least one of the two additional claims Jet Edge has been granted to leave to file and will do so within a short time of Defendants' filing of their Second Amended Complaint and/or within the time frame directed by the Court.

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT

Finally, the Court should grant summary judgment in Schembari's favor on his counterclaim for unfair competition, and enter an order scheduling an assessment of damages hearing on the portion of the damages Schembari seeks on that claim relating to his costs, including his reasonable attorneys' fees. This Court has already found that Jet Edge violated California's unfair competition law by inserting illegal non-competition provisions into Schembari's Employment Agreement. In addition, as the Court noted in its order denying Jet Edge's motion to dismiss Schembari's counterclaims, Schembari has suffered damages at the very least on account of the legal fees he has incurred defending against Jet Edge's attempts to enforce an illegal contract, and therefore there is no dispute of material fact that liability has been established on each and every element of this claim. *See* ECF No. 96 at 6–8.

## II.  BACKGROUND

Schembari has worked in the aviation industry since 2001. Defendants' Statement of Undisputed Facts Nos. 12–17, 137–38, 141 ("SUF"). In 2010, Schembari became an employee of Aviation Concepts, Inc. ("ACI"), where he served as the Director of Operations and as a pilot. SUF Nos. 16, 20–22.

ACI partnered with the Japanese company Sojitz. SUF Nos. 25–28. This business partnership began in 2008. SUF Nos. 25–28.

Sojitz is a Japanese company with an exceptional reputation in the Asian aviation industry. SUF Nos. 8–9. Sojitz's business includes representing private jet owners. SUF Nos. 25–27, 32, 36–39, 46, 52, 56, 57–58, 73–86. As part of this representation, Sojitz partners with a U.S. aircraft operator to manage and fly the Sojitz clients' aircrafts. SUF Nos. 25–27, 32, 36–39, 46, 50–53, 56, 57–58, 73–86, 228.

From 2008 to 2013, ACI was the aircraft operator that Sojitz partnered with for the purposes of managing and flying the Sojitz clients' aircraft. SUF Nos at 25–26, 39, 53, 57–64, 73–75, 80, 89–91, 100, 118, 222. At this time, Sojitz's clients included Sega Sammy, SAM Cayman, Pocket Corporation, and Hideyuki Busujima. SUF Nos at 25–26, 39, 53, 57–64, 73–75, 80, 89–91, 100, 118, 222. ACI managed and pi-

loted the aircraft for these Sojitz clients at this time.  SUF Nos at 25–26, 39, 53, 57–64, 73–75, 80, 89–91, 100, 118, 222.

While working together at ACI, Schembari and Sojitz developed a close business and personal relationship with Sojitz and Sojitz employees (such as Yohei Sakurai).  SUF Nos. 29–39, 42.  Schembari and Sojitz employees collaborated on resolving strategic issues affecting the aircraft.  SUF No. 37–39.  Schembari talked with Sakurai approximately once or twice a week.  SUF No. 31.  Schembari and Sojitz employees golfed together.  SUF No. 35.  Schembari also flew certain Sojitz clients' aircraft.  SUF No. 22.

In 2013, Sojitz decided to end its partnership with ACI because the Sojitz-ACI business relationship soured.  SUF No. 40.  Sojitz began looking for new aircraft operators with which to partner.  SUF Nos. 49–53.  Sojitz consulted Schembari in an advisory capacity to assist with this effort.  SUF No. 111.  Ultimately, Sojitz initiated discussions with Jet Edge about managing the Sojitz clients' aircraft.  SUF Nos. 48–56.

Sojitz had a degree of unease about Jet Edge's operations.  SUF No. 101.  To alleviate this unease, Sojitz introduced Jet Edge to Schembari and suggested that Jet Edge speak with Schembari about employment.  SUF Nos. 102–110.  Sojitz believed Schembari's skill set was rare and valuable because Schembari understood the Japanese market, the Japanese customer, and U.S. flight operations.  SUF Nos. 103, 106–10.  Sojitz believed Schembari's employment would make Jet Edge's operations more dependable.  SUF No. 103.

Ultimately, Sojitz and Jet Edge entered into a memorandum of understanding for pursuing a possible business partnership.  SUF No. 87.

Around late 2013, Sojitz's clients, Sega Sammy, SAM Cayman, and Pocket Corporation, decided to transfer their aircraft management from ACI to Jet Edge.  SUF Nos.  52–53, 56, 48–73, 80, 88, 118.  Before this time, no one at Jet Edge had a relationship with any of these three customers.  SUF Nos. 60–63, 68–69.  As part of

3

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT

1  the transfer, they entered aircraft management agreements with Jet Edge that could be

2  terminated with 90 days' notice for any reason.  SUF Nos. 76, 181.

3      In December 2013, Sojitz developed a relationship with Fast Retailing.  SUF

4  Nos. 83–86.  Sojitz brought Fast Retailing's aircraft to Jet Edge for management.

5  SUF No. 86.  Jet Edge did not have a relationship with Fast Retailing before being

6  connected by Sojitz.  SUF Nos. 57, 61.

7      In early 2014, Schembari became a Jet Edge employee.  SUF No. 189.  Initial-

8  ly, Schembari was employed as a pilot, but he eventually held the title of Assistant

9  Director of Operations.  SUF Nos. 94–95.  Schembari signed an employment agree-

10  ment ("Employment Agreement") that contained restrictions on competition.  SUF

11  Nos. 195–214.  Jet Edge's employment contracts with all its employees—of which

12  there are 225 in California and 450 total—all contained the same restrictions on com-

13  petition. SUF Nos. 195–214.

14      Ultimately, Sojitz concluded that its venture with Jet Edge was not going well

15  because it was experiencing problems with Jet Edge.  SUF Nos. 115–116, 119–24.

16  Sojitz's customers were complaining, and Sojitz was seeing issues on a daily basis

17  with Jet Edge's operations.  SUF Nos. 119–24.  From Sojitz's perspective, it was very

18  clear that Jet Edge's operations were far lower quality than the standards Sojitz had

19  maintained.  SUF No. 124.  Sojitz concluded it needed to find a new business partner.

20  SUF Nos. 115–116, 119–24, 125–26.

21      In March 2016, Schembari resigned from Jet Edge.  SUF No. 221.  Sojitz's cli-

22  ents – Sega Sammy, SAM Cayman, Pocket Corporation, and Fast Retailing – opted to

23  move their aircraft management from Jet Edge to ACP Jet and Phenix Jet.  SUF No.

24  24, 100.

25      In December 2016, Jet Edge filed this action.  Complaint, ECF No. 1-1 at 2

26  (CMECF numbering).  Jet Edge initially brought 10 causes of action against Defend-

27  ants.  Amended Complaint, ECF No. 26 at 1.  The Court dismissed six of these causes

28  of action with prejudice.  Order Granting in Part and Denying in Part Defendants'

Partial Motion to Dismiss, ECF No. 89.  Four days before the deadline for filing summary judgment motions, Jet Edge dismissed its claim for misappropriation of trade secrets.  ECF No. 165.  Thus, at present, Jet Edge's operative complaint contains just three causes of action: a claim against Schembari only for breach of written contract; a claim for declaratory relief; and a claim for injunctive relief.  Amended Complaint, ECF No. 26 at ¶¶ 33–43, 91–96; 97–102; SUF No. 223.

On August 3, 2018, the Court granted Jet Edge leave to amend its complaint to add two causes of action.  Order, ECF No. 166.  However, Jet Edge has not filed an amended complaint (and thus has not added the causes of action) at the time of filing this Motion.

## III.   STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute regarding a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp.*, 477 U.S. at 322–33; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105–06 (9th Cir. 2000).  If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading"; it must set forth "specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250.  "[C]onclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment."  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253, 2018 WL

1 | 2117424 at *3 (N.D. Cal. May 8, 2018).  If the nonmoving party fails to show that
2 | there is a genuine issue for trial, "the moving party is entitled to judgment as a matter
3 | of law."  *Celotex Corp.*, 477 U.S. at 323.

## IV.  ARGUMENT

### A.  Summary judgment should be entered in Defendants' favor on the declaratory relief and injunctive relief claims.

#### 1.  Summary judgment should be granted in Defendants' favor on Jet Edge's claim for declaratory relief.

Jet Edge asserts two bases for its claim for declaratory relief:  (a) the contention that Schembari is prohibited under the Employment Agreement from "using information he obtained while employed at JET EDGE, including but not limited to confidential information . . . to solicit business from those clients," *see* ECF No. 26 at ¶ 93; and (b) an alleged past theft of confidential information and clients, *see* ECF No. 26 at ¶ 94.  For the following reasons, Jet Edge's cause of action fails as a matter of law.

##### a.  To the extent Jet Edge's request for declaratory relief is based on the Employment Agreement's prohibition on using "information . . . including but not limited to confidential information," the claim fails because this Court has already held this provision to be illegal and unenforceable.

Jet Edge seeks declaratory relief in part based on the allegation that Schembari is prohibited under the Employment Agreement from "using information he obtained while employed at JET EDGE, including but not limited to confidential information . . . to solicit business from those clients."  *See* ECF No. 26 at ¶ 93

As set forth, *infra*, section IV.B., this Court has already held that the sections of Schembari's Employment Agreement which purport to prohibit Schembari's post-employment use of confidential information violate section 16600 of the California Business and Professions Code.  *See* ECF No. 96 at 6–8.  As such, Jet Edge is not entitled to declaratory relief enforcing these sections of the Employment Agreement.

**b.    To the extent Jet Edge's request for declaratory relief is based on an alleged past theft of confidential information and clients, the claim fails because past wrongs cannot form the basis for a claim for declaratory relief.**

The other basis for Jet Edge's claim for declatory relief is the allegation that "SCHEMBARI and PHENIX JET [defined in ¶ 5 to include the Corporate Defendants] have interfered with and obstructed JET EDGE's rights to protection of its confidential information and trade secrets under the Employment Agreement by soliciting business from JET EDGE clients, thereby causing those clients to terminate valuable contracts with JET EDGE."  *See* ECF No. 26 at ¶ 94.

This basis for Jet Edge's cause of action fails for the same reason – because the Court has already held that the sections of Schembari's Employment Agreement which purport to prohibit Schembari's post-employment use of confidential information violate section 16600 of the California Business and Professions Code.  *See* ECF No. 96 at 6–8.

Moreover, declaratory relief "operates prospectively and is not intended to redress past wrongs."  *Freedom Transp., Inc. v. Travelers Companies, Inc.*, No. 16-cv-213, 2016 WL 7496731 at *8 (C.D. Cal. Mar. 24, 2016); *Zamora v. Solar*, No. 2:16-cv-01260, 2016 WL 3512439 at *4 (C.D. Cal. June 27, 2016).[2]  Schembari resigned from Jet Edge effective March 14, 2016, nearly two and a half years ago.  *See* ECF No. 26 at ¶ 15.  As such, Jet Edge is not entitled to declaratory relief on this basis.

---

[2] Federal law governs the scope of declaratory relief claims in all federal court cases. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only." (internal parentheses omitted); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases."); *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1074 (D. Minn. 2001) ("[D]eclaratory judgment acts are procedural rules and, thus, in a diversity case the Federal Declaratory Judgment Act should apply.").

c.     **At a bare minimum, the claim for declaratory relief must be dismissed against the corporate defendants, ACP, PJI and CDF.**

Declaratory relief requires an "actual controversy."  28 U.S.C. § 2201.  There is no dispute that Jet Edge's claims against Defendants ACP, PJI and CDF (hereinafter the "Corporate Defendants") for interference with contract (Second, Fourth and Fifth Causes of Action), its claim for trade secret misappropriation (Sixth Cause of Action) and its claim for Unfair Competition (Eighth Cause of Action) against the Corporate Defendants have all been dismissed.  *See* ECF No. 26, 89 and 165; SUF No. 223.[3]  The dismissal of these claims—whether by the Court or by Jet Edge—are "intervening events" showing that there is no actual controversy because (i) Jet Edge's admitted there is no merit by dismissing the trade secret claim and (ii) the Court concluded there is no merit by dismissing the other claims.  *See Mills v. Green*, 159 U.S. 651, 654 (1895).

Accordingly, there is no "actual controversy" relating to the legal rights and duties of Jet Edge vis-à-vis the Corporate Defendants concerning any "interfere[nce] and obstruct[ion]" of Jet Edge's "rights to protection of its confidential information and trade secrets under the Employment Agreement."  ECF No. 26 at ¶ 94.

Even if the substantive claims against the Corporate Defendants had not been dismissed, however, declaratory relief against the Corporate Defendants would still be inappropriate.  "The availability of other adequate remedies may make declaratory relief 'inappropriate[]' . . . ."  S*treamCast Networks, Inc. v. IBIS LLC*, No. 05-cv-04239, 2006 WL 5720345 at *4 (C.D. Cal. May 2, 2006); *Zamora v. Solar*, No. 2:16-cv-01260, 2016 WL 3512439 at *4 (C.D. Cal. June 27, 2016).  "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of

---

[3] To the extent Jet Edge lodges an amended complaint asserting a claim for intentional interference with contractual relations, as they have been granted leave to do, Defendants will address this issue in further briefing, to the extent necessary.

action." *Freedom Transp., Inc. v. Travelers Companies, Inc.*, Case No. 16-cv-213, 2016 WL 7496731 at *8 (C.D. Cal. Mar. 24, 2016). For this reason, courts have dismissed declaratory relief claims when other claims provide an adequate remedy. *E.g.*, *Zamora*, 2016 WL 3512439 at *4–5; *Freedom Transp., Inc.*, 2016 WL 7496731 at *8.

Finally, to the extent there is any "forward-looking" aspect of Jet Edge's claim for declaratory relief for which there is no other appropriate remedy, that aspect could only relate to any ongoing obligations under the Employment Agreement. For the reasons set forth *supra*, any such ongoing obligations have been found illegal and void by this Court. *See* ECF No. 26 at ¶ 94.

> **2.    Summary judgment should be granted in Defendants' favor on Jet Edge's claim for injunctive relief because a claim for injunctive relief is not a stand-alone cause of action, but rather a remedy tied to a cause of action.**

In its Tenth Cause of Action, labeled "Injunctive Relief," Jet Edge seeks injunctive relief to enjoin, among other things, Defendants' alleged misappropriation of confidential information and trade secrets, interference with Jet Edge's contracts and business relationships, and violations of "the laws of the State of California, including California Bus. & Prof. Code § 17200, *et seq.* [unfair competition]." *See* ECF No. 26 at ¶ 98.

California law is clear that a prayer for injunctive relief is not a stand-alone cause of action, but a remedy tied to a cause of action. *E.g.*, *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 65 (2015) ("Injunctive relief is a remedy, not a cause of action. . . . A cause of action must exist before a court may grant a request for injunctive relief."); *City of S. Pasadena v. Dep't of Transportation,* 29 Cal. App. 4th 1280, 1293 (1994); *Alfino v. Litton Loan Servicing, LP*, No. 11-cv-01034, 2011 WL 13225023 at *11 (C.D. Cal. Aug. 24, 2011) ("[U]nder both California and federal law, injunctive relief is a remedy and not a separate cause of action or claim. . . . Thus, a court may only grant injunctive relief if it determines that a plaintiff prevails

1    on some independent cause of action and that equitable relief is appropriate."). As

2    such, Jet Edge's cause of action for injunctive relief must also be dismissed as a mat-

3    ter of law. Summary judgment should be entered in Schembari's favor on the breach

4    of contract claim.

**B.    Summary judgment should be entered in Schembari's favor on Jet
       Edge's breach of contract claim because the entire Employment
       Agreement is void and, in any event, the only sections of the Em-
       ployment Agreement at issue have either (i)  already been held by
       this Court to be void, or (ii) are illegal on their face and/or contra-
       vene California law as Jet Edge seeks to apply them.**

This Court (per Judge Birotte) has already held that two of the key provisions

of the Employment Agreement between Schembari and Jet Edge (sections 6.1 and

7.1) violate section 16600 of the California Business and Professions Code. *See* ECF

No. 96 at 6–8.  As set forth below, because the primary "object" of the Employment

Agreement is to further an unlawful purpose, the entire Employment Agreement

should be voided as a matter of law.

In any event, the only other sections of the Employment Agreement that are

potentially relevant are illegal and/or contravene well-established California law, as

Jet Edge seeks to apply those sections in this case.

**1.    The primary "object" of the Employment Agreement is to
       prevent lawful competition and, therefore, the entire Em-
       ployment Agreement is void and unenforceable.**

In its Order denying Jet Edge's Motion to Dismiss Schembari's Counterclaims,

this Court (per Judge Birotte) held, among other things, as follows with respect to the

sections 6.1 and 7.1 of the Employment Agreement:

> Section 7.1 of the Employment Agreement restrains Schembari from
> "engaging in a lawful profession, trade, or business . . . ." Cal. Bus. &
> Prof. Code § 16600. The provision is titled "Restrictions on Competition"
> and prohibits Schembari from using "Confidential Information to com-
> pete with [Plaintiff] both during and after [Schembari's] employment, in
> perpetuity." SACC, ¶ 143. This restriction on competition certainly cur-
> tails Schembari's ability to engage in his own jet chartering business.

> Although the Employment Agreement restrains competition, Plaintiff contends that sections 6.1 and 7.1 fall within an exception to Section 16600 for restrictions that protect an employer's trade secrets. . . . To qualify for the trade secret exception, a restriction must be "carefully limited" and "narrowly tailored" to the protection of trade secrets. . . .
>
> The Employment Agreement's restrictions are not narrowly tailored to the protection of trade secrets. Section 7.1 prohibits Schembari from ever using "Confidential Information" to compete with Plaintiff, "in perpetuity." SACC, ¶ 143. *Id.* Section 6.1 "broadly define[s]" "Confidential Information" as "all information that has or could have commercial value or other utility in the business of [Plaintiff]." SACC, ¶ 144. . . . In essence, the Employment Agreement prevents Schembari from using any helpful information not generally known to the public. . . .
>
> By prohibiting the use of both "Confidential Information" and trade secrets, the Employment Agreement makes clear that it applies to Schembari's use of information even when that information does not constitute a trade secret. Because the Employment Agreement is not narrowly tailored to the protection of trade secrets, it violates Section 16600. Schembari therefore properly alleges that Plaintiff engaged in an unlawful business practice.

*See* ECF No. 96 at 6–8.

The Court having already found that two sections of the Employment Agreement violate section 16600 of the Business and Professions Code, the issue is whether those violations render the entire Employment Agreement void. There is conflicting authority on this point. On the one hand, the language of section 16600 states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is *to that extent* void." (emphasis added).[4] On the other

---

[4] In its Order granting in part and denying in part Defendants' motion to dismiss Jet Edge's claims, including its breach of contract claim, the Court (per Judge Birotte) noted that Jet Edge had pled a violation of section 7.4 of the Employment Agreement and, citing *Sevigny v. DG Fastchannel, Inc.,* No. CV 11-9197 CAS (JEMx), 2011 U.S. Dist. LEXIS 142461, at *13 (C.D. Cal. Dec. 12, 2011), found that section 7.4 of the Employment Agreement was enforceable despite section 16600. *See* ECF No. 89 at 13–14. The Court noted, however, that Defendants at that point "ha[d] not argued that section 7.4, which prohibits competition during ones employment, is void." *Id.* at ¶ 13. As set forth, *infra*, Defendants make that argument in this Motion and, in any event,

hand, California statutes require that a contract have "a lawful object." *See* Cal. Civ. Code, § 1550, subd. (3); *id.* § 1596. Otherwise the contract is void. *See id.*, § 1598. Civil Code section 1668 provides that a contract that has as its object a viola-tion of law is "against the policy of the law." Civil Code § 1667 states that "unlaw-ful" means "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good mor-als." *See also id.*, § 1441 ("A condition in a contract, the fulfillment of which is . unlawful . is void"); *id.*, § 1608 ("If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, <u>the entire con-tract is void</u>." (emphasis added). California courts have stated that an illegal contract "may not serve as the foundation of any action, either in law or in equity" (*Tiedje v. Aluminum Taper Milling Co.*, 46 Cal. 2d 450, 453–54 (1956)), and that when the ille-gality of the contract renders the bargain unenforceable, "'[t]he court will leave them [the parties] where they were when the action was begun.'" *Wells v. Comstock*, 46 Cal. 2d 528, 532 (1956); *see also Kolani v. Gluska*, 64 Cal. App. 4th 402, 408 (1998) ("Illegal contracts are void."), *disapproved on other grounds in Bonifield v. County of Nevada*, 94 Cal. App. 4th 298, 303–06 (2001); *see also Kashani v. Tsann Kuen China Enterprise Co.*, 118 Cal. App. 4th 531, 541 (2004) ("[W]hen the illegality of the con-tract renders the bargain unenforceable, the court will leave . . . the parties where they were when the action was begun." (internal quotation marks and brackets omitted)). These contracts "cannot be saved from illegality by narrowed construction." *Kolani*, 64 Cal. App. 4th at 405; *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1083, 1091 (N.D. Cal. 2009).

A fundamental canon of statutory construction is that statutes must be read consistently, as opposed to in conflict, to give effect to those statutes. *City of Hun-*

---

the weight of authority suggests that the entire Employment Agreement is void in these circumstances.

*tington Beach v. Bd. of Admin.*, 4 Cal. 4th 462, 468 (1992) ("[A]ll parts of a statute should be read together and construed in a manner that gives effect to each, yet does not lead to disharmony with the others."); *Jurcoane v. Superior Court*, 93 Cal. App. 4th 886, 893 (2001) ("Courts "must read statutes as a whole, giving effect to all their provisions, neither reading one section to contradict others or its overall purpose, nor reading the whole scheme to nullify one section."). Harmonizing the above-referenced statutes, under California law provisions in an employment agreement that violate section 16600 of the Business and Professions Code do not necessarily render the entire agreement void, but will be held to do so where the primary "object" of the agreement is to prevent lawful competition.

Applying this principle to this case, here the primary "object" of the Employment Agreement is to restrict lawful competition in violation of section 16600 of the California Business and Professions Code. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, it is difficult to discern from the Employment Agreement any "object" other than to place restrictions on his activities which this Court has already found to be illegal and/or which are illegal and/or contravene California law as Jet Edge seeks to enforce them in this case. Because the Employment Agreement does not have "a lawful object," the entire Employment Agreement is void. *See* Civ. Code, § 1550, subd. (3); Civ. Code, § 1596; Civ. Code, § 1598.

**a.    In any event, the only sections of the Employment Agreement at issue have either (i) already been held by this Court to be void, or (ii) are illegal on their face and/or contravene California law as Jet Edge seeks to apply them.**

In the Amended Complaint, Jet Edge cites four specific provisions of the Employment Agreement – sections 6.1, 7.1, 7.2 and 7.4.  *See* ECF No. 26 at ¶¶ 34–37.  As set forth above, this Court has already held that sections 6.1 and 7.1 of the Employment Agreement are illegal and unenforceable.  For the reasons that follow, sections 7.2 and 7.4 are also illegal and/or contravene California law as Jet Edge seeks to apply them in this case.

**i.    Section 7.2 of the Employment Agreement is illegal under section 16600 of the California Business & Professions Code.**



.  This provision is illegal and unenforceable.

Section 7.2 of the Employment Agreement

.  SUF No. 212.

.  SUF No. 213.

California Business and Professions Code Section 16600 invalidates "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind . . . ."  Cal. Bus. & Prof. Code § 16600.

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT



This Court should do the same.

        **ii.**    **Section 7.4 of the Employment Agreement contravenes California law as Jet Edge seeks to apply it in this case.**

5              This vacating-by-stipulation does not affect the persuasiveness of the rationale, and vacated decisions can still have preclusive effect. *Bates v. Union Oil Co. of California*, 944 F.2d 647, 650–51 (9th Cir. 1991).

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT



SUF No. 214.

"California law . . . permit[s] an employee to seek other employment and even to make some 'preparations to compete' before resigning . . . ." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 509 (2013); *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008); *Mintz v. Mark Bartelstein and Assocs., Inc.*, 906 F. Supp. 2d 1017, 1037–38 (C.D. Cal. 2012). "Employees whose contracts are terminable at will have . . . and may plan and prepare to create a competitive enterprise prior to their termination, without revealing their plans to their employer, so long as they do

---

[6] As set forth above, in its Order granting in part and denying in part Defendants' motion to dismiss Jet Edge's claims, including its breach of contract claim, the Court (per Judge Birotte) noted that Jet Edge had pled a violation of section 7.4 of the Employment Agreement and, citing *Sevigny v. DG Fastchannel, Inc.,* No. CV 11-9197 CAS (JEMx), 2011 U.S. Dist. LEXIS 142461, at *13 (C.D. Cal. Dec. 12, 2011), found that section 7.4 of the Employment Agreement was enforceable despite section 16600. *See* ECF No. 89 at 13–14. The Court noted, however, that Defendants at that point "ha[d] not argued that section 7.4, which prohibits competition during ones employment, is void." *Id*. at ¶ 13. Schembari respectfully suggests that, given the authority cited herein, section 7.4 is unenforceable as Jet Edge seeks to apply that section in this case.

1    so on their own time and with their own resources." *Mamou*, 165 Cal. App. 4th at

2    719.  For this reason, "an employee's mere formation of a potentially competing cor-

3    poration does not breach a duty to his employer."  *Id.*; *Mintz*, 906 F. Supp. 2d at

4    1038.

5         Jet Edge has adduced no evidence during discovery in this case that Schembari

6    used Jet Edge's "time" and/or "resources" in preparing to compete with Jet Edge.

7    Accordingly, summary judgment should be granted in Schembari's favor on this basis

8    as well.

9    **C.    Judgment should be entered in Schembari's favor on his counter-
         claim for violation of California's unfair competition law.**

10

11        As set forth above, this Court (per Judge Birotte) has already found that Jet

12   Edge's Employment Agreement with Schembari violates section 16600 and that,

13   therefore, therefore Schembari "properly alleges that Plaintiff engaged in an unlawful

14   business practice" under the California unfair competition law ("UCL").  *See* ECF

15   No. 96 at pp. 6–8.  In that same Order, this Court found that Schembari has standing

16   to assert his UCL claim, having properly plead the elements of a claim, which re-

17   quires that Schembari "(1) establish a loss or deprivation of money or property suffi-

18   cient to qualify as injury in fact . . . and (2) show that that economic injury was the

19   result of . . . the unfair business practice . . . ."  *See* ECF No. 96 at p. 8 (citing *Kwikset

20   v. Superior Court*, 51 Cal. 4th 310, 322 (2011)).  The Court noted:

21       > a party has standing to challenge a void restriction on trade where it in-
         > curred costs and fees responding to an attempt to enforce the restriction.
22       > *Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 318 (2016) ("We
         > agree with [plaintiff] that he has standing in this action because he was
23       > sued by [defendant] . . . to enforce the covenant not to compete and in-
         > curred attorney's fees and costs as a result.")
24

25   *Id*.

26        Turning to the question of whether Schembari had suffered injury, the Court

27   held:

28

> Here, Schembari alleges that he incurred "the loss of money, property, reputation, good will, and/or potential business, stemming from [Plaintiff's] actions of illegally restricting competition in the charter jet industry to Schembari and its other employees." SACC, ¶ 181. While Plaintiff argues that these allegations of harm are implausible, it has actually sued Schembari in an attempt to enforce section 7.1 of the Employment Agreement. *See* Dkt. No. 1-2. Like in *Robinson*, Schembari at least has incurred some costs as a result of Plaintiff's attempt to enforce section 7.1. This, in combination with Schembari's allegations that he lost business as a result of Plaintiff's conduct, suffices to establish injury in fact.

*Id*. at pp. 8–9.

There is no genuine issue of material fact that Schembari has established Jet Edge's liability on the UCL claim. The UCL "borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1233 (2007); Order Denying Plaintiff's Motion to Dismiss Counterclaims, ECF No. 96 at 6.

As set forth *supra*, the Employment Agreement violates California Law. *See* Part IV.A (beginning on page 6). Courts (including this Court) have expressly recognized that "[a]n employer's use of an illegal noncompete agreement . . . violates the UCL . . . ." *Dowell*, 179 Cal. App. 4th at 575; *Couch v. Morgan Stanley & Co., Inc.*, Case No. 14-cv-10, 2015 WL 4716297 at *21 (E.D. Cal. Aug. 7, 2015) ("[S]imply placing the non-compete clauses in the subject contracts was unfair competition that violated section 17200."); *see also Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1092 (N.D. Cal. May 20, 2009); Order Denying Plaintiff's Motion to Dismiss Counterclaims, ECF No. 96 at 8. Among other injuries, Schembari has incurred costs and legal fees in this action responding to Jet Edge's attempt to enforce the illegal Employment Agreement. SUF Nos. 149–50; Order Denying Plaintiff's Motion to Dismiss Counterclaims, ECF No. 96 at 8. As such, all elements of the cause of action are established and the Court should enter summary judgment on Schembari's UCL claim against Jet Edge, and

DM1\8879698.8

1  schedule an assessment of damages hearing on the portion of the damages Schembari

2  seeks on that claim relating to his costs, including his reasonable attorneys' fees.[7]

3  **V.    CONCLUSION**

4  For the foregoing reasons, the Court should grant the Motion.   The Court

5  should enter judgment in favor of Defendants on Jet Edge's operative complaint.

6

7  Dated: August 6, 2018                              **DUANE MORRIS LLP**

8

9                                                     s/ Dan Terzian
                                                      Dan Terzian
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

[7] Defendants request that the Court schedule a hearing to ascertain the appropriate
25  amount of attorneys' fees and other costs to assess against Jet Edge, in part, because
    Defendants will also be moving for attorneys' fees and costs pursuant to California
26  Civil Code section 3426.4, the provision of CUTSA that permits a prevailing party to
    recover its attorneys' fees and costs when a claim for misappropriation of trade se-
27  crets is made in bad faith.

28

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT