SANFORD L. MICHELMAN, ESQ. (SBN 179702)
smichelman@mrllp.com
ROBERT D. ESTRIN, ESQ. (SBN 260402)
restrin@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone:   (310) 564-2670
Facsimile:   (310) 564-2671

TODD H. STITT, ESQ. (SBN 179694)
tstitt@mrllp.com
**MICHELMAN & ROBINSON, LLP**
17901 Von Karman Avenue, 10th Floor
Irvine, California 92614
Telephone: (714) 557-7990
Facsimile: (714) 557-7991

Attorneys for Plaintiff
WESTERN AIR CHARTER, INC. dba JET EDGE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN AIR CHARTER, INC., doing business as JET EDGE INTERNATIONAL, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PAUL SCHEMBARI, an individual; ACP JET CHARTERS, INC., doing business as PHENIX JET, a Florida corporation; PHENIX JET LLC, a Guam Limited Liability Company, COSA DI FAMIGLIA HOLDINGS, LLC, a Guam Limited Liability Company, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-00420-JGB (KSx)<br>Honorable Jesus G. Bernal<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION TO FILE UNDER SEAL**<br><br>[Filed concurrently with Declaration of Jesse Krompier in Support of Plaintiff's Opposition to Defendants' Application to File Under Seal]<br><br>**Trial Date:  January 15, 2019**<br><br>Date:  September 10, 2018<br>Time:  9:00 a.m.<br>Dept:  Courtroom 1<br>Judge: Hon. Jesus G. Bernal |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION TO FILE UNDER SEAL

## I. INTRODUCTION

As set forth below, the relief requested in Defendants' Application to File Under Seal (ECF No. 168) should be denied because Jet Edge's employment contract contains confidential business information that, if publicly filed, could cause Jet Edge competitive harm.

Importantly, both Plaintiff and Defendants have considered the employment agreement at issue to be confidential throughout this case. As this Court may recall, Paul Schembari has admitted that he took Jet Edge's employment agreement following his resignation from Jet Edge. (*See* Exh. 1 to Krompier Declaration in Support of Opposition to Defendants' Application to Seal ("Krompier Opp. Decl.") at 368:2-8.) The record shows that Schembari used Jet Edge's contractual terms to create the Phenix Jet employment contracts. (*See* Exhs. 11 & 32 to Krompier Decl. (ECF No. 179-5.)) What this Court may not be aware of is that during the course of discovery, Defendants marked every Phenix Jet employment contract they produced confidential, including Schembari's contract. (Exh. 32 to Krompier Decl., starting at Bates no. PHX003279).[1] Stated another way, the exact documents that Defendants have consistently claimed to be confidential, they now wish to share with the public. This inconsistency cannot be reconciled.

The reason why Defendants have consistently stood by their designation of their own employment agreements (which they took from Jet Edge) as confidential is because such information provides a competitive advantage. In this case, the unsealing of Jet Edge employment agreements would necessarily disclose compensation structure, including how much Jet Edge pays its pilots, and other key contractual terms contained in its employment contracts. A public disclosure of these terms would also allow competitors to poach Jet Edge employees by offering more money or better benefits. Further, it would give prospective employees

---

[1] Plaintiff mistakenly filed Exh. 32 to the Krompier Decl. in the public record (ECF No. 178-6). Plaintiff is taking steps to fix this mistake.

1
PLAINTIFF'S OPPOSITION TO DEFENDANTS' APPLICATION TO FILE UNDER SEAL

information that would impact any negotiations with Jet Edge in the future. In short, this is precisely the kind of business information that falls within the ambit of the "compelling reasons" standard to seal documents.

For these reasons, the Court should permit Jet Edge to keep its employment contract with Paul Schembari (Exhs. AH & 71 to Terzian Decl.) under seal.[2]

## II. LEGAL STANDARD

It is well established that "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). In particular, "courts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing . . . ." *Ibid.*

"Compelling reasons" to seal a contract exist when it contains business information such as a company's pricing and payment terms, or other confidential information about the company's services and protocols. *In re Electronic Arts*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) (granting application to seal licensing agreement that contained a party's pricing terms, royalty rates, and guaranteed minimum payment terms). *See also Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 822 n.1 (9th Cir. 2011) (noting successful motion to seal summary judgment evidence that "could reveal . . . confidential business strategies and other commercially sensitive information"); *In re Google Inc. Gmail Litig.*, 2014 WL 10537440, at *5 (N.D. Cal. Aug. 6, 2014) (granting application to seal terms of Google's contracts that could cause competitive harm to Google).

## III. ARGUMENT

### A. The Employment Contract Should Be Sealed.

Jet Edge's employment contract with Paul Schembari should be kept sealed because it contains confidential business information that, if disclosed, would cause Jet Edge competitive harm. In *Xifin, Inc. v. Sunshine Pathways, LLC*, 2016 WL

---

[2] These exhibits are the same as Exh. 11 to Krompier Decl. (ECF No. 179-2) and Exh. 2 to Erich Decl. (ECF No. 179-1), which Jet Edge filed under seal.

5930313, at *3 (S.D. Cal. Oct. 12, 2016), the court granted plaintiff's application to seal a services contract pursuant to the "compelling reasons" standard. The contract contained plaintiff's pricing structure, the nature of services it provided, and service protocols and processes relating to its billing system and other confidential information. *Ibid.* Therefore, the court held that the contract "could expose Plaintiff to a competitive disadvantage if revealed," and sealed the contract. *Ibid.*

Like *Xifin, Inc.*, the Jet Edge employment contract should be kept sealed because it contains Jet Edge's compensation structure, benefits, and other negotiated contractual terms. *See Lathrop v. Uber Techs., Inc.*, 2016 WL 9185002, at *3 (N.D. Cal. June 17, 2016) (granting plaintiff's application to seal documents showing a "negotiated price" between the parties). The contract also sets forth information about Jet Edge's protocols and procedures, which contain highly confidential information. *See Lightning Box Games Pty, Ltd. v. Plaor, Inc.*, 2017 WL 7310782, at *4 (N.D. Cal. Dec. 29, 2017) (granting application to seal records that were "designated as confidential under the License Agreement").

As noted above, and of importance, ***Phenix Jet itself designated*** all of its employment agreements, including its agreement with Paul Schembari as ***confidential***. (*See* Exh. 32 to Krompier Decl.) These are the exact employment agreements that Phenix Jet copied from Jet Edge. Thus, if Phenix Jet believed its employment contract is confidential (which it clearly does), by corollary Jet Edge's employment contracts are confidential as well.

In addition to the foregoing, Jet Edge would suffer harm amongst its competitors if they saw how much Jet Edge pays its pilots. This would permit competitors to poach key employees from Jet Edge by offering them more money or more favorable contract terms. Also, if pilots saw how much Jet Edge paid Paul Schembari this could also impact negotiations. Additionally, Jet Edge sealed the documents to protect Schembari's financial interests as well as its own. This Court

1  will note that while certain provisions were included in the complaint, others such
2  as compensation and benefits were not.
3        Finally, disclosure of Jet Edge's employment contract would cause additional
4  competitive harm to Jet Edge. The contract is an important part of Jet Edge's
5  process and procedures. (*See* Erich Decl. (ECF No. 179-1) at ¶ 24.) It was
6  developed over several years and required payment to attorneys, and employee
7  time, to prepare. (Id.) Thus, disclosing Jet Edge's negotiated contract terms would
8  allow competitors to reap the benefits of Jet Edge's time, money, and efforts to
9  create its employment agreements.
10        For these reasons, as well as the others discussed above, Jet Edge derives
11  economic benefit from its employment contract with Paul Schembari because it
12  contains information that Jet Edge competitors and the public do not have. Jet Edge
13  must not be forced to sacrifice that benefit to litigate its claims against Defendants.
14        **B. Defendants Motion is Without Factual Support.**
15        In support of their application, Defendants distort the deposition testimony
16  of Geoff Makely, who in fact stated that he did not "have the background" to
17  competently testify as to the confidentiality of Jet Edge's employment contract.
18  (*See* Exh. 2 to Krompier Opp. Decl. at 93:8-19.) In any event, Defendants' reliance
19  on Mr. Makely's testimony is inapposite because Mr. Makely is not a Jet Edge
20  employee and does not represent Jet Edge in this case. In fact, Mr. Makely's
21  testimony suggests that his interests are adverse to Jet Edge.
22        Defendants also rely on Bill Papariella's testimony, even though Mr.
23  Papariella corrected this testimony. (*See* Exh. 3 to Krompier Opp. Decl. at 314:15-
24  315:6). Defendants fail to mention this fact. In fact, Mr. Papariella specifically
25  stated, "I don't have – never directed anybody at our company, ever, or HR, ever in
26  writing or verbally, to share this agreement with other competitors." (Id.)
27        Defendants' argument that the employment contract is not the current version
28  of the document is also irrelevant. The fact remains that many of the contractual

terms in the new contract are likely the same if not very similar, and the payment amount to Paul Schembari would still be disclosed.

## IV. CONCLUSION

For the foregoing reasons, Jet Edge respectfully requests that the Court deny the relief requested in Defendants' application and keep Jet Edge's employment contract with Paul Schembari (Exhs. AH & 71 to Terzian Decl.) under seal.

Dated: August 10, 2018          **MICHELMAN & ROBINSON, LLP**

By: */s/ Robert Estrin*
Sanford L. Michelman
Todd H. Stitt
Robert D. Estrin
*Attorneys for*
*WESTERN AIR CHARTER, INC.*
*dba JET EDGE INTERNATIONAL*