1  Dan Terzian (SBN 283835)
   dterzian@duanemorris.com
2  **DUANE MORRIS LLP**
   865 S. Figueroa, Suite 3100
3  Los Angeles, CA 90017
   Telephone: +1 213.689.7400
4  Facsimile: +1 213.689.7401

5  Lawrence H. Pockers (admitted *pro hac vice*)
   lhpockers@duanemorris.com
6  Thomas T. Loder (admitted *pro hac vice*)
   ttloder@duanemorris.com
7  **DUANE MORRIS LLP**
   30 South 17ᵗʰ Street
8  Philadelphia, PA 19103
   Telephone: +1 215.979.1000
9  Facsimile: +1 215.979.1020

10 Attorneys for Defendants PAUL
   SCHEMBARI; ACP JET CHARTERS, INC.;
11 PHENIX JET INTERNATIONAL, LLC; and
   COSA DI FAMIGLIA HOLDINGS, LLC

12

13            **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16 WESTERN AIR CHARTER, INC., doing business as JET EDGE INTERNATIONAL, a California corporation, | Case No. 2:17-cv-00420-JGB-KS |
| 17 | Hon. Jesus G. Bernal |
| 18 Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF WESTERN AIR CHARTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 19 v. | |
| 20 PAUL SCHEMBARI, an individual *et al.*, | |
| 21 Defendants. | Hearing: September 10, 2018 |
| 22 | Time: 9:00 a.m. |
| 23 | Judge: Hon. Jesus G. Bernal |

17  Plaintiff,

18  v.

19  PAUL SCHEMBARI, an individual *et al.*,

20  Defendants.

Hearing:   September 10, 2018
Time:      9:00 a.m.
Judge:     Hon. Jesus G. Bernal
           Courtroom 1
           3470 Twelfth Street
           Riverside, CA 92501

1

# TABLE OF CONTENTS

I.    Introduction ..................................................................................1

II.   Jet Edge's breach of Contract Claim..........................................2

A.   The entire employment agreement is void. ...........................2

B.   To the extent certain sections of the employment agreement survive, there are individual legal issues and/or genuine issues of material fact which preclude summary judgment on Jet Edge's claim for breach of contract. ....3

  1.   If section 3 of the employment agreement (exclusivity provision) is enforceable, there are genuine issues of material fact which preclude summary judgment. ...............................................................4

    a.   Section 3 is void because it violates Business & Professions Code § 16600...........................................................................4

    b.   If section 3 is enforceable, there are genuine issues of material fact which preclude summary judgment...................................5

  2.   Even if enforceable, there are genuine issues of material fact regarding whether section 6.2 of the employment agreement (restrictions on Confidential Information) was breached. .........................................7

    a.   Section 6.2 is void under section 16600 of the Business & Professions Code...............................................................7

    b.   Even if section 6.2 is not void in its entirety, Jet Edge is still not entitled to summary judgment................................................8

  3.   If section 6.4 (return of Confidential Information) of the employment agreement is enforceable, there are genuine issues of material fact which preclude summary judgment..............................................13

  4.   If section 7.3 (non-disparagement) of the employment agreement is enforceable, there are genuine issues of material fact which preclude summary judgment. ...............................................................14

    a.   Section 7.3 is illegal and void under federal law. ...................14

    b.   There are genuine issues of material fact regarding whether Schembari violated section 7.3. ............................................16

  5.   If section 7.4 (prohibition on planning) of the employment agreement is enforceable, there are genuine issues of material fact which preclude summary judgment. ...............................................................17

C.   Even if Schembari breached the employment agreement, the breach did not cause harm to Jet Edge. ........................................................18

DEFENDANTS' OPPOSITION TO PLAINTIFF'S ISO MOTION FOR SUMMARY JUDGMENT

III.    Schembari's Second Amended Counterclaims .....................................20

    A.    Jet Edge's procedural arguments fail. ................................................20

        1.    Schembari has standing because the claims are based on harms unique to him and not typical of shareholders generally.............................20

        2.    The *Noerr-Pennington* doctrine and litigation privilege do not apply here because the counterclaims are not based on litigation activity. ..22

            a.    Even if the counterclaims are based on litigation activity, the *Noerr-Pennington* doctrine and litigation privilege do not apply because Jet Edge's litigation activity is baseless. ...................23

        3.    Schembari's shift in his theory was substantially justified because it was not learned until the deposition of Bill Papariella, and it was disclosed immediately thereafter.................................................23

            a.    Schembari seeks leave to add counterclaims for defamation and breach of contract against Jet Edge and to bring a third-party claim against Jet Edge CEO Bill Papariella for defamation. ......25

    B.    Jet Edge's substantive arguments fail................................................25

        1.    There is a material factual dispute as to whether Jet Edge knew of the relationships with the potential customers. ...................................25

        2.    Jet Edge committed an independently wrongful act. ......................27

        3.    The Section 17200 claim is based on Jet Edge's unlawful act of using an illegal employment agreement.................................................28

        4.    Jet Edge's conduct harmed Schembari.........................................29

IV.    Conclusion..............................................................................30

DEFENDANTS' OPPOSITION TO PLAINTIFF'S ISO MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Federal Cases**

*Albino v. Baca*, 747 F.3d 1162,1176–77 (9th Cir. 2014) (en banc) ....................... 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................ 7

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084 (N.D. Cal. May 20, 2009) .................... 21

*Bakst*, 2011 WL 13214315 ...................................................................... 15

*Benefiel v. Exxon Corp.*, 959 F.2d 805 (9th Cir. 1992)........................................ 20

*CBS, Inc. v. Merrick*, 716 F.2d 1292 (9th Cir. 1983) ............................................ 9

*Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807 (907)................................... 28

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999)........................... 26-27

*Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009)............. 5

*Contech Constr. Prods. v. Blumenstein*, Case No. 1:11-cv-878, 2012 U.S. Dist. LEXIS 97050, 2012 WL 2871425 (S.D. Ohio July 12, 2012)............... 2, 8

*Couch v. Morgan Stanley & Co., Inc.*, Case No. 14-cv-10, 2015 WL 4716297 (E.D. Cal. Aug. 7, 2015)................................................................. 21

*Fields v. QSP, Inc.*, Case No. 12-cv-1238, 2012 WL 2049528 (C.D. Cal. June 4, 2012) ...................................................................................... 3

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-cv-00845-SKO, 2013 WL 3803911 (E.D. Cal. July 19, 2013)................................................ 24

*Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548 (9th Cir. 2003) ..................................................................................................... 20

*Hilderman v. Enea TekSci., Inc.*, 551 F. Supp. 2d 1183 (S.D. Cal. 2008) .............. 21

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979)..................................................... 28

*ITN Flix, LLC v. Hinojosa*, 686 Fed. App'x 441 (2017)......................................... 5

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991)............................ 26

*Korte v. Dollar Tree Stores, Inc.*, No. 12-cv-541, 2013 WL 2604472
(E.D. Cal. June 11, 2013).............................................................................. 13

*Lawrence Crane Enters., Inc. v. Abrams*, Case No. 11-cv-7797, 2013 WL
12123997 (C.D. Cal. Jan. 28, 2013) ............................................................ 8

*Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc.*, 557 F. Supp. 2d
1134 (S.D. Cal. 2008) ................................................................................ 27

*Lion Enters., Inc. v. Gerhardt*, 907 F.2d 154 (9th Cir. 1990) .............................. 9

*Mintz v. Mark Bartelstein and Assocs., Inc.*, 906 F. Supp. 2d 1017 (C.D.
Cal. 2012)..................................................................................................... 5

*Pyro Spectaculars N., Inc. v. Souza*, Case No. 12-cv-299, Case No. 2012
U.S. Dist. LEXIS 31016 (E.D. Cal. Mar. 8, 2012)...................................... 13

*Quicken Loans, Inc. v. Nat'l Labor Relations Bd.*, 830 F.3d 542 (D.C.
Cir. 2016)................................................................................................ 13-15

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240 (9th Cir.
2012) .......................................................................................................... 24

*Rock River Communications, Inc. v. Universal Music Grp., Inc.*, 745 F.3d
343 (9th Cir. 2014) ..................................................................................... 23

*Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden, LLC*, No. 15-cv-
00797, 2015 U.S. Dist. LEXIS 82213 (N.D. Cal. June 23, 2015).................... 12

*Sosa v. DIRECTV, Inc.* 437 F.3d 923 (9th Cir. 2006).......................................... 22

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)......................... 27

*SriCom, Inc. v. eBisLogic, Inc.*, Case No. 12-cv-00904, 2012 U.S. Dist.
LEXIS 131082, 2012 WL 4051222 (N.D. Cal. Sept. 13, 2012)................... 2, 8

*Sutrisno v. WebMD Practice Servs., Inc.*, Case No. 04-cv-4516, 2005 WL
8154571 (C.D. Cal. June 30, 2005) ............................................................ 24

*Theme Productions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991 (9th
Cir. 2008) ............................................................................................... 22-23

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014) ............................................................ 7

*United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010)......................................... 27

DEFENDANTS' OPPOSITION TO PLAINTIFF'S ISO MOTION FOR SUMMARY JUDGMENT

*Westlaw Air Charter, Inc. v. Schembari*, Case No. 2:17-cv-00420, 2017 WL 7240775 (C.D. Cal. Dec. 14, 2017)............................................ 11

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005)..................... 24

*Yeti by Molly, Ltd. v. Deckers Outdoors Corp.*, 259 F.3d 1101 (9th Cir. 2001) ............................................................................. 24

*Youngevity Int'l Corp. v. Smith*, Case No. 16-cv-704, 2017 WL 6389776 (S.D. Cal. Dec. 13, 2017)........................................................ 27

*Zajicek v. KoolVent Metal Awning Corp. of America*, 283 F.2d 127 (9th Cir. 1960).................................................................. 2-3

**State Cases**

*Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013)......................... 5

*Bettelheim v. Hagstrom Food Stores, Inc.*, 113 Cal. App. 2d 873 (1952)................. 9

*Blanchard v. DIRECTTV, Inc.*, 123 Cal. App. 4th 903 (2004)......................... 22-23

*Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711 (1989)................................. 28

*D'sa v. Playhut, Inc.*, 85 Cal. App. 4th 927 (2000)............................................ 8

*Dowell*, 179 Cal. App. 4th at 575.......................................................... 21

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008)..............................2, 15

*Edwards v. Arthur Andersen LLP*, 47 Cal. Rptr. 3d 788 (Cal. Ct. App. 2006)............................................................................... 15

*Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170 (2012)............................... 2, 8

*Haley v. Casa Del Rey Homeowners Ass'n*, 153 Cal. App. 4th 863 (2007)............. 19

*Kelton v. Stravinski*, 138. Cal. App. 4th 941, 946–49 (2006)........................... 5

*Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686 (2008)...................... 5

*Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853 (1994)................................................................... 8

*Nelson v. Anderson*, 72 Cal. App. 4th 111 (1999) ..................................... 21

DEFENDANTS' OPPOSITION TO PLAINTIFF'S ISO MOTION FOR SUMMARY JUDGMENT

*Robinson v. U-Haul Co. of California*, 4 Cal. App. 5th 304, 318 (2016) ........... 29-30

*Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434 (1993) ......................... 27-28

*Snukal v. Flightways Manufacturing, Inc.*, 23 Cal. 4th 754 (2000) ........................ 27

*St. Paul Fire and Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
    101 Cal. App. 4th 1038................................................................................. 19

*Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525 (1946)............................. 20-21, 30

**Other Authorities**

Cal. Bus. & Prof. Code § 16600 ......................................................... 2-5, 7, 14

Cal. Bus. & Prof. Code § 17200 .................................................................... 21

## I.   INTRODUCTION

Plaintiff Western Air Charter d/b/a Jet Edge International's ("Jet Edge") motion for partial summary judgment ("Motion") on its breach of contract cause of action and on Defendants' counterclaims (ECF No. 170) should be denied in entirety.

The Court should not grant summary judgment on Jet Edge's breach of contract claim for at least five reasons.  First, the breach of contract claim is based on an illegal and void contract.  Second, Schembari did not violate Section 3 because he did not receive compensation during his employment with Jet Edge for services rendered to others.  Third, Schembari did not violate Section 6.2 and 6.4 because he did not improperly use or retain any "Confidential Information."  Fourth, there is a material factual dispute on whether Schembari violated Section 7.3's non-disparagement provision, as the statements have a non-disparaging interpretation.  Fifth, there is a material factual dispute on whether Schembari violated Section 7.4's prohibition on planning.

The Court should not grant summary judgment in Jet Edge's favor on Defendant Paul Schembari's ("Schembari") counterclaims for at least five reasons. First, Schembari has standing (and Jet Edge committed an illegal act) because (i) Schembari was a party to Jet Edge's illegal employment agreement and (ii) Jet Edge CEO Bill Papariella defamed Schembari.  Second, the counterclaims are not barred by the *Noerr-Pennington* doctrine because they are founded on acts unrelated to litigation: Jet Edge's illegal employment agreement and Papariella's defamation of Schembari.  Third, Schembari disclosed his damages theory based on Papariella's defamation the day after Schembari learned of it.  Fourth, there is evidence that Jet Edge knew of Schembari's relationships with certain entities, as Papariella testified that he spoke with those entities about their working with Schembari.  Fifth, Jet Edge's conduct harmed Schembari by forcing him to incur legal fees and by hindering his business relationships.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## II.    JET EDGE'S BREACH OF CONTRACT CLAIM

### A.    The entire employment agreement is void.

Jet Edge bases its breach of contract cause of action on its employment agreement with Schembari.  Defendants have already explained in their own Motion for Summary Judgment why the employment agreement is void.  *See* Defendants' Motion for Summary Judgment, ECF No. 167-1 at 16–23 (CMECF numbering).  Defendants incorporate these arguments by reference.  Because the employment agreement is illegal and void, judgment should be entered in Schembari's favor on the breach of contract claim.

Jet Edge argues that the employment agreement is valid and enforceable based on two cases.  Jet Edge's Motion, ECF No. 170 at 19–20 (CMECF numbering).  These cases do not apply here.

*Zajicek v. KoolVent Metal Awning Corp. of America*, 283 F.2d 127 (9th Cir. 1960) does not apply for two reasons.  First, the case was decided in 1960, well before the 2008 California Supreme Court decision in *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 955 (2008), which held section 16600 of the California Business & Professions Code means what it says – that non-competition provisions in agreements between employers and employees are illegal under California law.  *Id.*; *see also SriCom, Inc. v. eBisLogic, Inc.*, Case No. 12-cv-00904, 2012 U.S. Dist. LEXIS 131082, 2012 WL 4051222 at *5 (N.D. Cal. Sept. 13, 2012) ("Section 16600, read in light of *Edwards*, is a clear prohibition on any noncompetition clause that does not fit into one of the statutory exceptions.").[1]  Second, *Zajicek* is factually inapposite.  There, the parties had previously negotiated the removal of the illegal restraint of trade from the contract.  *Zajicek,* 283 F.2d at 132.  So the issue effectively was whether the original contract with the illegal provision voided the second contract without the illegal provision.  *See*

---

[1] *Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170, 1182 (2012); *Contech Constr. Prods. v. Blumenstein*, Case No. 1:11-cv-878, 2012 U.S. Dist. LEXIS 97050, 2012 WL 2871425 at *15 (S.D. Ohio July 12, 2012).

1   *id.* That is not the question here; Jet Edge never sought to remove the illegal provisions
2   from its contract with Schembari and, in fact, sued him based on those illegal provi-
3   sions.

4         In *Fields v. QSP, Inc.*, Case No. 12-cv-1238, 2012 WL 2049528 at *9–10 (C.D.
5   Cal. June 4, 2012), the other case relied on by Jet Edge, the Court began its analysis by
6   noting that under California law, "a court has discretion to either sever an unconscion-
7   able provision from an agreement, or refuse to enforce the agreement in its entirety."
8   *Id.* (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1005 (9th Cir. 2010)). Critical to
9   the court's decision in *Fields* was the court's finding that the confidentiality provisions
10  of the contract in question were legal. "However, § 16600 does not invalidate an agree-
11  ment between an employer and employee that seeks to maintain the confidentiality of
12  an employer's trade secret or other proprietary information." *Fields*, 2012 WL
13  2049528 at *9. Here, by contrast, the Court (per Judge Birotte) has already held that
14  the confidentiality provisions of Schembari's employment agreement with Jet Edge
15  violate section 16600 of the California Business & Professions Code. ECF No. 96 at
16  6–8. Thus, unlike the situation in *Fields*, where the dividing line between the legal and
17  illegal provisions of the contract was clear, here there is no such dividing line on the
18  key provisions of Schembari's employment agreement.

19        **B.     To the extent certain sections of the employment agreement survive,
20               there are individual legal issues and/or genuine issues of material fact
21               which preclude summary judgment on Jet Edge's claim for breach of
                 contract.**

22        Even if certain sections of the employment agreement are enforceable, there are
23  material factual disputes that prevent entry of summary judgment on the sections of the
24  employment agreement on which Jet Edge moves.

25
26
27
28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1.   **If section 3 of the employment agreement (exclusivity provision) is enforceable, there are genuine issues of material fact which preclude summary judgment.[2]**

    a.   **Section 3 is void because it violates Business & Professions Code § 16600.**

Separate and apart from the issue of whether the entire employment agreement is void as a result of the provisions this Court (per Judge Birotte) has already found to be illegal, section 3 of the employment agreement should be found void because it violates Business & Professions Code section 16600. This Section provides that:

> Employee shall not, directly or indirectly, during the term of this Agreement: (a) render services to any other person or entity for compensation, or (b) engage in any activity competitive with or adverse to the Company's business, whether alone, as a partner, or as an officer, director, employee, consultant or investor.

Jet Edge's Statement of Undisputed Fact ("Jet Edge SUF"), No. 7.

Section 3 is effectively an in-term non-compete provision. It prohibits Schembari from engaging in any activity adverse to Jet Edge during employment. Literally construed, it prohibits Schembari from even interviewing for another position because that interview could be an activity that is adverse to Jet Edge's business.

As argued in Defendants' own Motion for Summary Judgment (ECF No. 167-1 at 22 (CMECF numbering)), at least some California courts have held that in-term non-

---

[2] Jet Edge argues in its Motion that Schembari should not be permitted to seek damages on his counterclaims because of an alleged "last minute shift" in Schembari's damages theory. For the reasons set forth, *infra*, section III.A.3, Schembari's shift in damages theory was substantially justified by evidence discovered after discovery had closed. It is worth noting, however, that while Jet Edge complains about Schembari's shift in damages theory, nowhere in Jet Edge's Amended Complaint does Jet Edge cite section 3 (or, for that matter, sections 6.2, 6.4 or 7.3) of Schembari's employment agreement as a section it is suing on. The only sections of the employment agreement referenced in the Amended Complaint – the operative complaint in this case until August 17, 2018, when Jet Edge filed its Second Amended Complaint – are sections 6.1, 7.1 and 7.4. Defendants submit that it would be patently unfair for the Court to preclude Schembari from presenting his damages claim based on a late shift in theories while at the same time permitting Jet Edge to proceed with its claims on sections of Schembari's employment agreement it never (until last week) cited in the operative complaint or vice versa.

4

competes are void because they violate section 16600 of the Business & Professions Code. *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290–93 (9th Cir. 2009); *ITN Flix, LLC v. Hinojosa*, 686 Fed. App'x 441, 444 (2017) (mem.) ("[Plaintiff] argues that § 16600 does not apply to 'in term' non-compete clauses that last only for the term of employment set by the contract. Both California courts and the Ninth Circuit have rejected this argument."); *Kelton v. Stravinski*, 138. Cal. App. 4th 941, 946–49 (2006).

Section 3 is also void to the extent Jet Edge is trying to punish Schembari for engaging in preparations to compete. *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 509 (2013) ("California law . . . permit[s] an employee to seek other employment and even to make some 'preparations to compete' before resigning . . . ."); *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 719 (2008); *Mintz v. Mark Bartelstein and Assocs., Inc.*, 906 F. Supp. 2d 1017, 1037–38 (C.D. Cal. 2012).

### b. If section 3 is enforceable, there are genuine issues of material fact which preclude summary judgment.

Even if section 3 of the employment agreement is enforceable, there are genuine issues of material fact regarding whether Schembari breached this provision.

First, there is a genuine question of whether Schembari actually "render[ed] services to any other person or entity for compensation" during the term of the Employment Agreement. Defendants' Statement of Genuine Disputes of Material Facts ("Schembari SDF"), Nos. D1–D3. The evidence is undisputed that Schembari did not actually receive any compensation for any services (even assuming he provided such services) *during* his employment with Jet Edge. Jet Edge cites the broker agreement between Cosa di Famiglia and Tropical Sky Investments, but the evidence demonstrates that Cosa di Famiglia was paid the $300,000 *after* Schembari's employment with Jet Edge ceased, upon the closing of the ACI purchase. Schembari SDF, Nos. D1–D3; Jet Edge SUF, No. 38.

Moreover, there are genuine issues of material fact concerning whether Schembari actually "engage[d] in any activity competitive with or adverse to [Jet Edge's] business" during the term of the Employment Agreement.  Schembari SDF, Nos. D6–D12.  Jet Edge bases its claim for breach of section 3(b) on four theories: (1) Schembari entered into a contract with a Sojitz subsidiary for identifying an air carrier certificate for purchasing; (2) Schembari performed under that contract by meeting with Bob Seidel (of ACP Jet) regarding purchasing ACP Jet's air carrier certificate; (3) Schembari prepared a business plan for a future business venture, and this business plan identified jets that were then under Jet Edge management; and (4) Schembari diverted the aircraft with the tail number N2020 away from Jet Edge.

There are genuine issues of material fact whether these activities were indeed "competitive with or adverse to the Company's business" at the time the activities were taken.  Prior to the time Schembari engaged in these activities, Sojitz had decided to part ways with Jet Edge, and Sojitz approached Schembari about starting a new company.  Schembari SDF, Nos. D6–D8.  Thus, there is a genuine question whether these activities were "competitive" with or "adverse to" Jet Edge's business under circumstances where Jet Edge has admitted that the clients in question were much closer to Sojitz, and that Jet Edge knew the clients would cancel their management agreements with Jet Edge if Sojitz ended its partnership with Jet Edge.  Schembari SDF, Nos. D45–46.

In addition, other evidence demonstrates that these acts were not competitive with or adverse to Jet Edge.  Jet Edge operates primarily in the continental United States, but Defendants operate primarily in the Asian market.  Schembari SDF, Nos. D10–D11.  Partly because of this, Schembari testified that he does not consider Jet Edge to be a competitor of Phenix Jet.  Schembari SDF, Nos. D9, D12.

As for the N2020 aircraft, Jet Edge contends that Schembari violated Section 3(b) of the employment agreement by ensuring that Jet Edge did not manage the N2020 jet.  Jet Edge's Motion, ECF No. 170 at 23 (CMECF).  There is a material factual

dispute on this issue.  Jet Edge's sole evidence on this point is an email from Schembari to Sojitz asking, "Have we decided to not assign 2020 management to Jet Edge?"  Jet Edge SUF, No. 39; Schembari SDF, No. D13.  The summary judgment standard requires that "all justifiable inferences" be drawn in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).  Here, that means interpreting this statement as solely an inquiry of what Sojitz will be doing with the N2020 aircraft: will it assign it to Jet Edge, or will it assign it elsewhere?  This neutral inquiry is not "competitive with" or "adverse to" Jet Edge.

**2.     Even if enforceable, there are genuine issues of material fact regarding whether section 6.2 of the employment agreement (restrictions on Confidential Information) was breached.[3]**

Section 6.2 of the employment agreement states that both during and after Schembari's employment with Jet Edge, he is "not to acquire, disclose, or utilize any Confidential Information for purposes other than those purposes approved by [Jet Edge] during the course and scope of [Schembari's] employment with Company."  Jet Edge SUF, No. 46.

**a.     Section 6.2 is void under section 16600 of the Business & Professions Code**

Section 6.2 of the employment agreement should be found void (if the entire employment agreement is not already found to be void) because it violates Business & Professions Code section 16600, as it relies on a definition of "Confidential Information" that this Court (per Judge Birotte) has already found contravenes California law.

In its Order denying Jet Edge's Motion to Dismiss Schembari's counterclaims, the Court found:

---

[3] Section 6.2 is another section of the employment agreement not cited by Jet Edge in its Amended Complaint.  *See supra* footnote 2.

The Employment Agreement's restrictions are not narrowly tailored to the protection of trade secrets. Section 7.1 prohibits Schembari from ever using "Confidential Information" to compete with Plaintiff, "in perpetuity." SACC, ¶ 143. *Id*. Section 6.1 "broadly define[s]" "Confidential Information" as "all information that has or could have commercial value or other utility in the business of [Plaintiff]." SACC, ¶ 144. It then provides exceptions to the broad definition for information "generally known to the public" and information that Schembari independently develops. *Id*. In essence, the Employment Agreement prevents Schembari from using any helpful information not generally known to the public. Thus, like in *Dowell*, Plaintiff's attempt to tether section 7.1 to "Confidential Information" fails because the Employment Agreement defines "Confidential Information" so broadly.

ECF No. 96 at 7–8.[4]

Section 6.2 of the employment agreement is an illegal restraint for the same reason that this Court previously found sections 6.1 and 7.1 to be illegal. This section prohibits Schembari from *ever* (both before and after his employment) using any information that is not generally available to the public.

> **b.      Even if section 6.2 is not void in its entirety, Jet Edge is still not entitled to summary judgment.**
>
> > **i.      Jet Edge has waived any claim relating to Schembari's use of allegedly "Confidential Information" through Jet Edge's own conduct.**

Before even considering the evidence relating to whether Schembari actually acquired, disclosed or utilized any "Confidential Information" belonging to Jet Edge (he did not), this Court should find that Jet Edge has waived any right to enforce section 6.2 of the employment agreement for at least the following reasons:

- Jet Edge did not deactivate Schembari's Jet Edge email account following the end of his employment, thus allowing Schembari to maintain access to

---

[4] *See also Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170, 1182 (2012); *D'sa v. Playhut, Inc.*, 85 Cal. App. 4th 927, 935 (2000); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 861 (1994); *SriCom, Inc. v. eBisLogic, Inc.*, Case No. 12-cv-00904, 2012 WL 4051222 at *5 (N.D. Cal. Sept. 13, 2012); *Lawrence Crane Enters., Inc. v. Abrams*, Case No. 11-cv-7797, 2013 WL 12123997 at *4 (C.D. Cal. Jan. 28, 2013); *Contech Constr. Prods. v. Blumenstein*, Case No. 1:11-cv-878, 2012 WL 2871425 at *15 (S.D. Ohio July 12, 2012).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

it. Schembari SDF, Nos. D31–D33. As a result, Jet Edge effectively granted Schembari the right to continue to access anything – including any alleged "Confidential Information" – in his Jet Edge email account.

- Even though Jet Edge knew Schembari had the employment agreement and employee handbook, there is no evidence that Jet Edge insisted or demanded the return of these specific documents. Schembari SDF, No. D34. If Jet Edge truly believed these documents needed to be returned, Jet Edge would have insisted on the return of these specific documents.

The fact that the employment agreement has an anti-waiver provision is irrelevant. "Even a waiver clause may be waived by conduct." *Bettelheim v. Hagstrom Food Stores, Inc.*, 113 Cal. App. 2d 873, 878 (1952); *Lion Enters., Inc. v. Gerhardt*, 907 F.2d 154 at *4 (9th Cir. 1990) (mem.). The existence of a waiver is usually a fact question, *CBS, Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir. 1983), so summary judgment is inappropriate on this basis alone.

> **ii.    During his employment with Jet Edge, there is (1) no evidence that Schembari improperly used the aircraft management agreements or IOE forms and (2) a material factual dispute on whether Schembari improperly used the employment agreement.**

Even if the Court construes section 6.2 as only prohibiting the acquisition, utilization or disclosure of "Confidential Information" *during* Schembari's employment, summary judgment is still improper. With respect to the aircraft management agreements and initial operating experience form, there is no evidence that Schembari violated those provisions during his employment with Jet Edge. The evidence cited by Jet Edge all relates to acts occurring months after Schembari's employment with Jet Edge ended. Schembari SDF, No. D48; *see also* Jet Edge SUF Nos. 83, 85, 87, 89, 91.

With respect to the Jet Edge employment agreement, the only evidence is a Phenix Jet employment agreement that was signed by Schembari on March 16, 2016. Schembari SDF, No. D47. But Schembari's last day of employment with Jet Edge was March 14, 2016. Drawing all reasonable inferences in favor of Schembari requires concluding that any use of the Jet Edge employment agreement (even assuming use of

9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

a generic employment agreement form could be improper) occurred after Schembari resigned from Jet Edge.

### iii. There is no evidence that Schembari improperly used or disclosed the aircraft management agreements.

There is no evidence that Schembari used, disclosed, or failed to safeguard Jet Edge's aircraft management agreements.  A Phenix Jet employee (Elsie Quenga) testified that she received Jet Edge's aircraft management agreement from Pocket Corporation and Private Wings (a customer), not from Schembari.  Schembari SDF, No. D14.  Pocket Corporation and Private Wings sent her the document because Quenga asked for it.  Schembari SDF, No. D15.

### iv. The employment agreement, employee handbook, aircraft management agreements, and IOE forms are not confidential information.

In addition, there are genuine issues of material fact concerning whether Schembari violated section 6.2 because, at a bare minimum, there are serious questions as to whether the employment agreement, employee handbook, aircraft management agreements, and IOE forms even qualify as "Confidential Information."

Section 6.1 defines "Confidential Information" as (1) "confidential, trade secret, and/or proprietary information of Company . . . . that [(2)] has or could have commercial value or other utility in the business of Company . . . ."  Schembari SDF, No. D17.  "Confidential Information does not include information that . . . was known to the public prior to its disclosure to Employee . . . ."  Schembari SDF No., D17.

Here, at a minimum, there is a disputed material factual issue on whether the information in Jet Edge's claim meets this definition.

v.    **The aircraft management agreements are filed with the government, contain provisions "typical within the industry," and are shared with others outside Jet Edge.**

Jet Edge's aircraft management agreements are not "Confidential Information" for at least the following reasons:

- Jet Edge's aircraft management agreements are filed with the FAA and are public records.  Schembari SDF, No. D18.

- Jet Edge's aircraft management agreements have been filed on the public docket in court cases where Jet Edge was a defendant, and Jet Edge did not move to seal them.  Schembari SDF, No. D19.

- Jet Edge shares its aircraft management agreements with potential (not current) customers.  Schembari SDF, No. D20.

- Jet Edge's aircraft management agreements contain provisions that are "typical within the industry."  Schembari SDF, No. D21.

- The deal points in Jet Edge's aircraft management agreements are equivalent to the deal points in ACI's aircraft management agreements.  Schembari SDF, No. D49.

- Jet Edge wouldn't "go crazy" if its aircraft management agreements were published because they're not representative of what Jet Edge does as a company.  Schembari SDF, No. D58.

vi.    **The employment agreement is quoted in Jet Edge's public complaint, and competitors get no commercial value out of it.**

The employment agreement is not "Confidential Information" for at least the following reasons:

- Jet Edge quoted Sections 3, 6.1, 7.1, 7.2, and 7.4 of the employment agreement in its public filings in this action.  Schembari SDF No. D22; ECF No. 26 at ¶¶ 34–37; Jet Edge SUF, No. 7; Jet Edge's Motion, ECF No. 170 at 21 (CMECF numbering).

- This Court entered an order denying Jet Edge's motion to dismiss, and that order quoted Sections 6.1 and 7.1 of the employment agreement.  Order Denying Plaintiff's Motion to Dismiss Counterclaims, ECF No. 96 at 2–4, 6–8.  This order is published on Westlaw.  *Westlaw Air Charter, Inc. v. Schembari*, Case No. 2:17-cv-00420, 2017 WL 7240775 at *1–2, at *3–4 (C.D. Cal. Dec. 14, 2017).

- Jet Edge's employment agreement is very standard material. Schembari SDF, No. D23.

- Jet Edge provides its employment agreement to prospective employees. Schembari SDF, No. D24. There is no evidence that those prospective employees are covered by NDAs when they view the agreement.

- Jet Edge expects that its employees' future employers honor Jet Edge's employment agreement. Schembari SDF, No. D25. This necessarily requires that those employers know the terms of Jet Edge's employment agreement. This also requires that employees retain (and not return to Jet Edge) the employment agreement.

- Many companies' employment agreements are reported to the SEC and are publicly available on the SEC's website. Schembari SDF, No. D57. There is no basis for finding unique commercial value in this employment agreement.

- The employment agreement has no commercial value because it contains several illegal provisions. Defendants' Motion for Summary Judgment, ECF No. 167-1 at 16–23 (CMECF numbering); Schembari SDF, No. D58. Therefore, it is not a document companies would want to use because it subjects them to liability.

In addition to these factual bases, at least one court has held that employment agreements do not meet the standard for sealing. *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden, LLC*, No. 15-cv-00797, 2015 U.S. Dist. LEXIS 82213 at *4 (N.D. Cal. June 23, 2015) (denying sealing of employment agreement generally, but allowing the sealing of the employee's salary).

### vii.    Employee Handbook

The employee handbook is not Confidential Information for at least the following reasons:

- Jet Edge's employee handbook is not confidential. Schembari SDF, No. D26.

- Jet Edge provides its employee handbook to every employee. Schembari SDF, No. D27. Yet there is no evidence that Jet Edge seeks the return of these handbooks when employees leave Jet Edge. Schembari SDF, No. D34.

- Jet Edge's employee handbook is not novel or substantively different from employee handbooks used by other operators. Schembari SDF, No. D28.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In addition to these factual reasons, at least one court has held that employee handbooks should be filed on public court dockets, not sealed. *Pyro Spectaculars N., Inc. v. Souza*, Case No. 12-cv-299, Case No. 2012 U.S. Dist. LEXIS 31016 at *5 (E.D. Cal. Mar. 8, 2012) (denying sealing of the employee handbook because it "contain[ed] generic information regarding vacation, overtime, harassment in the workplace, etc., and [wa]s distributed to all employees upon hire"); *see also Korte v. Dollar Tree Stores, Inc.*, No. 12-cv-541, 2013 WL 2604472 at *16 (E.D. Cal. June 11, 2013) (denying sealing of documents regarding "human resources policies," "human resources practices," "operational policies," "operational procedures," and "pay practices").

Additionally, federal labor law dictates that employee handbooks cannot be confidential. *Quicken Loans, Inc. v. Nat'l Labor Relations Bd.*, 830 F.3d 542, 546–48 (D.C. Cir. 2016) (holding that the employment agreement's attempt to declare "handbooks" as proprietary and confidential information directly interfered with employee's rights under Section 7 of the National Labor Relations Act).

### viii.   The Initial Operations Experience form is very standard and is not proprietary or confidential.

Jet Edge's Initial Operations Experience form is not Confidential Information for at least the following reasons.

- Jet Edge's Initial Operations Experience form is very standard.  Schembari SDF, No. D29.

- Jet Edge's Initial Operations Experience form is not proprietary or confidential.  Schembari SDF, No. D30.

### 3.   If section 6.4 (return of Confidential Information) of the employment agreement is enforceable, there are genuine issues of material fact which preclude summary judgment.[5]

Section 6.4 of the employment agreement should be found void for the same reason that section 6.2 should be found void (*see supra* Part II.B.2.a (beginning on page 7)) – it relies on an overbroad definition of "Confidential Information" that has the

---

[5] Section 6.4 is another section of the employment agreement not cited by Jet Edge in its Amended Complaint.  *See supra* footnote 2.

effect of preventing Schembari from using any helpful information not generally known to the public.

Even if section 6.4 of the employment agreement is enforceable, however, there are genuine issues of material fact which preclude summary judgment.

First, there is a disputed factual issue on whether Jet Edge waived any right to enforce this section of the employment agreement. *See supra* Part II.B.2.b.i (beginning on page 8).

Second, there is a genuine issue of material fact regarding whether Schembari actually breached section 6.4, because none of the retained information constituted Confidential Information. *See* Parts II.B.2.b.iv–II.B.2.b.viii (beginning on page 10) (explaining why the retained information is not Confidential Information).

Third, to the extent section 6.4 is a prohibition on post-termination activities (e.g., use, acquisition, or copying of confidential information), this provision is void because it violates California Business & Professions Code § 16600.  ECF No. 96 at 6–8; *supra* footnote 4 (beginning on page 8**Error!  Bookmark not defined.**).

### 4.   If section 7.3 (non-disparagement) of the employment agreement is enforceable, there are genuine issues of material fact which preclude summary judgment.[6]

Even assuming the entire employment agreement is not void, summary judgment is inappropriate regarding section 7.3 for at least the following reasons.

#### a.   Section 7.3 is illegal and void under federal law.

Section 7.3 provides that "Employee will not make any representation or statement . . . that may defame, disparage, harm, or otherwise reflect negatively on Company . . . ."  Jet Edge SUF, No. 70.

This provision is illegal.  The D.C. Circuit held that a similar non-disparagement provision was void under federal law.  *Quicken Loans, Inc.*, 830 F.3d at 546, 550–51.

---

[6] Section 7.3 is another section of the employment agreement not cited by Jet Edge in its Amended Complaint.  *See supra* footnote 2.

Section 7 of the National Labor Relations Act "protects employees' rights . . . to criti-cize or complain about their employer or their conditions of employment . . . ." *Id.* at 545. The *Quicken Loans* employment agreement provided that the "[employee] agrees that [she] will not (nor will [employee] cause or cooperate with others to) publicly criticize, ridicule, disparage or defame the Company . . . ." *Id.* at 546.

The D.C. Circuit recognized "such a sweeping gag order would significantly impede mortgage bankers' exercise of their Section 7 rights because it directly forbids them to express negative opinions about the company, its policies, and its leadership in almost any public forum." *Id.* at 550. Even though there was no evidence that the employer in *Quicken Loans* used the non-disparagement provision to violate Section 7, the provision still violated Section 7 because "employees would reasonably read the rule to prohibit the exercise of Section 7 rights . . . ." *Id.* at 548, 551 (internal brackets omitted). Ultimately, the D.C. Circuit affirmed an order requiring that the employer rescind this illegal language. *Id.* at 547, 549, 552.

None of the authority cited by Jet Edge addresses the enforceability of the pro-vision under the National Labor Relations Act. Motion, ECF No. 170 at 26–27 (CMECF numbering). The *Edwards* case regards solely whether the non-disparage-ment provision violated a California Labor Code provision protecting whistleblowers. *Edwards v. Arthur Andersen LLP*, 47 Cal. Rptr. 3d 788, 810 (Cal. Ct. App. 2006). The California Supreme Court reversed that decision on other grounds and remanded for further proceedings. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 955 (2008).

*Bakst* did not analyze whether any federal or state laws voided the contract. *Bakst*, 2011 WL 13214315 at *40. *Bakst* also did not involve an employment agree-ment; it involved a settlement agreement. *Id.* at *1. Moreover, *Bakst* recognized that the illegality of the non-disparagement issue was a live question that remained to be litigated at trial. *See id.* ("The court will instruct the jury that if it finds the contract invalid or unenforceable, it should find that [the party] did not waive its right to free speech or the protection of the litigation privilege.").

### b. There are genuine issues of material fact regarding whether Schembari violated section 7.3.

Jet Edge cites two statements by Schembari that it alleges violate the non-disparagement provision of the employment agreement:

- An email dated January 28, 2015, in which Schembari told Hideto Shimooka, who was the contact for Jet Edge customer Private Wings, as well as Sojitz representative, Yohei Sakurai, that "working with JEI [Jet Edge] ops is continually challenging due to time zone differences and their workload with US domestic fleet. If this is the case you will become frustrated in only a short time."; and

- An email Schembari sent the next day where he told Shimooka and Sakurai that "[f]lights dispatched by JEI [Jet Edge] never go smoothly as there are always mistakes, oversights, and lack of communication."

Motion at 18–19.

Some context is required in order to understand why – at a bare minimum – there is a genuine issue of material fact regarding whether the statements made in these emails violated section 7.3 of the employment agreement. The email exchanges relate to dispatch services – the go-between for the pilot and ground service personnel. At the time, Jet Edge used Asia Jet to dispatch some flights in Asia, whereas other flights were dispatched directly by Jet Edge. The portions of the January 28, 2015 email string not highlighted by Jet Edge confirm that Schembari's sole goal was ensuring that the clients – clients of both Jet Edge and Sojitz – received the best possible service:

Schembari: "I have come to understand that dispatch of N810TS will be handled exclusively by Jet Edge VNY, is this true?"

Sakurai: "I heard from Hide so, but AJ should be better for this aircraft."

Schembari: "I respectfully trust Asia Jet to provide the quality that we are accustomed to. . . ."

Shimooka: "I do not know the JEI politics behind, but I will request JEI to use AJ."

Schembari SDF, No. D35. Thus, at most, Schembari was advocating for Jet Edge using its vendor (Asia Jet) for dispatch instead of using its "in-house" dispatch services in

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

order to provide Jet Edge's client with the best possible service. As Schembari succinctly testified, his intent "was to highlight that there was a better way for [the] customer to get the service that I know that they wanted to have." Schembari SDF, No. 50.

Moreover, the notion that an employer is entitled to summary judgment that its employee violated a broad non-disparagement provision in an employment agreement by virtue of two cherry-picked emails from the entirety of an employee's employment and post-employment conduct flies in the face of common sense and fairness (even assuming that the non-disparagement provision is enforceable as written). Significantly, the emails in question were sent by Schembari in January 2015 – more than a year prior to his resignation of employment from Jet Edge, and 10 months before Schembari first discussed the concept that ultimately became Phenix Jet. Jet Edge SUF, Nos. 71, 72. There is no evidence that in any way ties Schembari's two January 2015 emails to a decision by Pocket Corporation to cease doing business with Jet Edge. If anything, Defendants are entitled to summary judgment on any claim that Schembari violated section 7.3 of the employment agreement because Jet Edge has adduced no evidence that these statements harmed or could have possibly harmed Jet Edge.

### 5. If section 7.4 (prohibition on planning) of the employment agreement is enforceable, there are genuine issues of material fact which preclude summary judgment.

Section 7.4 of the employment agreement prohibits the "plan[ning] for or organiz[ing] any business . . . . competitive with the Company." Jet Edge SUF, No. 137. Jet Edge asserts that Schembari breached this provision. Jet Edge's Motion, ECF No. 170 at 27–29 (CMECF numbering). This argument fails for several reasons.

First, Defendants explained in their own Motion for Summary Judgment why California law voids contractual provisions barring preparations to compete. Defendants' Motion, ECF No. 167-1 at 22–23 (CMECF numbering).

Second, applying this law, this Court has recognized that (i) "[e]ven setting up a competing organization is not necessarily a breach of the duty of loyalty" and (ii) "[m]ost of Plaintiff's new allegations also fall within the category of preparation to compete . . . ." ECF No. 166 at 6.

Nevertheless, this Court found that Jet Edge may be able to base claims on the following acts: (i) diverting N2020 from Jet Edge and (ii) seeking to buy ACP Jet's air carrier certificate for the purpose of managing the aircraft of Sojitz's clients. *Id.*

There is a material factual dispute whether these sets of activities were "competitive with or adverse to the Company's business." For the reasons already explained, Schembari's organizing Defendants was not "competitive with" Jet Edge because (i) Sojitz had already decided to part ways with Jet Edge and (ii) Defendants and Jet Edge operate in different markets. *See* Part II.B.1.b (beginning on page 5). For other reasons already explained, it is not clear whether Schembari's activities were "competitive with the Company" because (i) Jet Edge knew Schembari had a closer relationship with Sojitz that predated his Jet Edge employment and (ii) Jet Edge expected that Sojitz and Sojitz's clients would leave with Schembari when Jet Edge declined Sojitz's formal business offer. Schembari SDF, Nos. D51–D55.

Additionally, construing the evidence in the light most favorable to Schembari shows that he did not divert N2020 from Jet Edge. Instead, he merely asked whether Sojitz would be placing the aircraft with Jet Edge or with someone else. Schembari SDF, No. D13. Jet Edge has not cited any evidence beyond this mere question asked by Schembari in support of its claim for summary judgment.

### C. Even if Schembari breached the employment agreement, the breach did not cause harm to Jet Edge.

Jet Edge contends that it has been harmed by Schembari's alleged breaches of contract and that "[l]osing the customers has cost Jet Edge millions of dollars in lost profits . . . ." Motion, ECF No. 170 at 29–30.

This claim fails because there is no evidence that the alleged breaches caused this harm. If a contract is breached, "the non-breaching party is entitled to recover only those damages, including lost future profits, which are 'proximately caused' by the specific breach." *St. Paul Fire and Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1061. In turn, "[t]he test for causation in a breach of contract action is whether the breach was a substantial factor in causing the damages." *Haley v. Casa Del Rey Homeowners Ass'n*, 153 Cal. App. 4th 863, 871 (2007) (internal quotation mark and ellipsis omitted).

Here, the breaches alleged by Jet Edge are unrelated to the claimed damages. For instance, if Jet Edge is correct that Schembari breached the employment agreement by copying public aircraft management agreements or by copying a form, there is no evidence to reach the conclusion that this breach was a substantial factor in the loss of the customers.

Jet Edge's statement of facts does not cite any evidence establishing causation. Jet Edge merely asserts that Sojitz's customers terminated their contracts with Jet Edge and went to Phenix Jet. Jet Edge SUF, Nos. 82–91. This does not show that Schembari's breach (*e.g.*, copying an employment agreement) caused the Sojitz customers to terminate their contracts.

In fact, the loss of the Sojitz customers was not due to Schembari's alleged copying of documents or entering a brokerage agreement. Before any of that happened, Sojitz concluded that it would part ways with Jet Edge because Jet Edge's performance was subpar and did not meet Sojitz's standards. Schembari SDF, Nos. D6–D8. Sojitz then approached Schembari and asked whether he would be willing to form Phenix Jet. Schembari SDF, No. D8. And Sojitz's clients decided to terminate their aircraft management agreements with Jet Edge – well after Schembari resigned from Jet Edge. Schembari SDF, Nos. D52–D53, D60–D62; Jet Edge SUF, Nos. 84, 86, 88, 90.

Because these facts demonstrate that Schembari's alleged breach of the employment agreement was not a cause of the harm to Jet Edge, Schembari cross-moves for

summary judgment that Jet Edge is not entitled to compensatory damages in the form of lost profits or revenues from the customers. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party . . . ."); *see also Albino v. Baca*, 747 F.3d 1162, 1176–77 (9th Cir. 2014) (en banc). Alternatively, it is an issue for the trier of fact. *Benefiel v. Exxon Corp.*, 959 F.2d 805, 808 (9th Cir. 1992) (recognizing that "proximate or legal causation normally presents an issue for the trier of fact" but nevertheless affirming dismissal of the complaint for failure to prove causation).

## III.   SCHEMBARI'S SECOND AMENDED COUNTERCLAIMS

### A.   Jet Edge's procedural arguments fail.

#### 1.   Schembari has standing because the claims are based on harms unique to him and not typical of shareholders generally.

Jet Edge asserts that Schembari does not have standing for his counterclaims because the damages were suffered by Phenix Jet Hong Kong. Jet Edge's Motion, ECF No. 170 at 30 (CMECF numbering). Jet Edge appears to be targeting the tortious interference counterclaims, but it does not expressly differentiate between the tortious interference counterclaims and the Section 17200 counterclaims.

In any event, Schembari has standing. A stockholder has standing to sue over harms to a corporation when "the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action." *Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530 (1946). So, if the plaintiff-stockholder's claim is based on a "circumstances independent of the plaintiff's status as a shareholder," the plaintiff-stockholder's damages properly include the loss to corporate assets. *Id.* at 530–31 ("While ordinarily a

1   stockholder may not sue individually for impairment of a corporation's assets render-

2   ing the stock worthless, yet here that result is merely one method of ascertaining the

3   amount of damages suffered by Sutter. . . .   The damages all flowed from the tort of

4   defendants."); *Nelson v. Anderson*, 72 Cal. App. 4th 111, 124 (1999).   One such inde-

5   pendent circumstance is where "the gravamen of the wrong" is founded on defamation.

6   *Id.* at 124–25.

7          Such is the case here.   The tortious interference claims are premised on Jet Edge

8   CEO Bill Papariella defaming Schembari.   Papariella testified that he had discussions

9   with Sino Jet representatives about "Paul . . . stealing business . . . ."   Schembari SDF,

10  Nos. D37–38.   Papariella also testified that he spoke with representatives at Sino Jet

11  and Metrojet about Schembari, with Papariella telling them that "Paul is a thief."

12  Schembari SDF, No. D38.   Papariella further testified that (i) he discussed this with

13  others in Asia and (ii) he tells "everybody" and "[a]nybody that will listen" that "Paul

14  is a thief."   Schembari SDF, No. D38.

15         With respect to the Section 17200 claim, Schembari was individually affected

16  because he was a party to the employment agreement.   Jet Edge SUF, No. 1; *Sutter*, 28

17  Cal. 2d at 530–31; *Hilderman v. Enea TekSci., Inc.*, 551 F. Supp. 2d 1183, 1197 (S.D.

18  Cal. 2008) (holding that the plaintiff did not have standing for his tortious-interference

19  claim, but allowing the plaintiff's Section 17200 claim based on an illegal non-compete

20  to proceed).[7]

21

22

23

24

---

25  [7] *See also Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009); *Couch
    v. Morgan Stanley & Co., Inc.*, Case No. 14-cv-10, 2015 WL 4716297 at *21 (E.D.

26  Cal. Aug. 7, 2015) ("[S]imply placing the non-compete clauses in the subject contracts
    was unfair competition that violated section 17200."); *see also Applied Materials, Inc.*

27  *v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1092
    (N.D. Cal. May 20, 2009); Order Denying Plaintiff's Motion to Dismiss Counter-

28  claims, ECF No. 96 at 8.

2.   The *Noerr-Pennington* doctrine and litigation privilege do not apply here because the counterclaims are not based on litigation activity.

Jet Edge asserts that the *Noerr-Pennington* doctrine and litigation privilege bar Schembari's counterclaims. Jet Edge's Motion, ECF No. 170 at 31–33 (CMECF numbering). Jet Edge appears to be targeting the tortious interference counterclaims, but it does not expressly differentiate between the tortious interference counterclaims and the Section 17200 counterclaims.

The *Noerr-Pennington* doctrine bars claims founded on "litigation-related activities preliminary to the formal filing of the litigation . . . ." *Sosa v. DIRECTV, Inc.* 437 F.3d 923, 937 (9th Cir. 2006); *Theme Productions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). Similarly, the California litigation privilege protects "communications that bear 'some relation' to an anticipated lawsuit," such as "demand letters and other prelitigation communications by attorneys." *Blanchard v. DIRECTTV, Inc.*, 123 Cal. App. 4th 903, 919 (2004).

These doctrines do not apply here. The Section 17200 claim is based on Jet Edge's act of inserting illegal provisions into the employment agreement. Jet Edge SUF, No. 111. This is not connected with any litigation, and several cases have allowed these same types of claims. *See supra* footnote 7 (beginning on page 21).

Similarly, the tortious interference claims are founded on Jet Edge CEO Bill Papariella's defamatory statements about Schembari. *See* Part III.A.1 (beginning on page 20). This claim of defamation is meritorious. There is at least a genuine factual issue as to whether these statements were intentionally untrue because (i) Jet Edge has voluntarily dismissed its claim for misappropriation of trade secret against Schembari (ECF No. 89) and (ii) this Opposition has shown that Jet Edge's breach of contract claim is meritless. In addition, Papariella's defamation of Schembari's character has no relation to litigation-related activity.

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**a.** **Even if the counterclaims are based on litigation activity, the *Noerr-Pennington* doctrine and litigation privilege do not apply because Jet Edge's litigation activity is baseless.**

Even if this conduct could be construed as litigation-related activity, the two doctrines still do not apply. The *Noerr-Pennington* doctrine does not apply when the litigation-related activity is "so baseless that the threatened litigation would fall into the 'sham litigation' exception." *Id.* To fall within that exception, "the lawsuit must [(1)] be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits" and (2) have a subjective intent to interfere with the business relationship. *Theme Productions, Inc.*, 546 F.3d at 1007. The California litigation privilege does not apply when the statement is not "made with a good faith belief in a legally viable claim . . . ." *Blanchard*, 123 Cal. App. 4th at 919.

For the reasons already explained, there is a disputed factual issue as to whether these exceptions were met based on (i) Papariella's telling Sino Jet and Metrojet that Schembari is a thief, (ii) Jet Edge's dismissal of its trade secret claim, and (iii) the lack of validity of Jet Edge's contract claim. Thus, summary judgment is not appropriate. *Rock River Communications, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 352 (9th Cir. 2014) ("[W]hether the sham exception to the *Noerr–Pennington* doctrine applies is a question of fact and summary judgment on the defense is not appropriate where the facts are disputed.").

**3.** **Schembari's shift in his theory was substantially justified because it was not learned until the deposition of Bill Papariella, and it was disclosed immediately thereafter.**

Jet Edge contends that Schembari should not be allowed to claim damages from Phenix Jet Hong Kong's losses on the theory that Schembari did not disclose the information in response to interrogatories or in its initial disclosure. Jet Edge's Motion, ECF No. 170 at 33–34. This argument should be rejected.

"[I]nformation may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoors Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Sutrisno v. WebMD Practice Servs., Inc.*, Case No. 04-cv-4516, 2005 WL 8154571 at \*8 (C.D. Cal. June 30, 2005). Additionally, when preclusion of the evidence will "amount[] to dismissal of a claim, the district court [i]s required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith . . . ." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Substantial justification exists when the litigant could not have "reasonably anticipated" the relevance on the information. *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060, 1062 (9th Cir. 2005). In the cases cited in Jet Edge's Motion, this standard was not met because the "Plaintiffs were clearly aware that they had sustained such damages at the time they served their responses." *Sutrisno*, 2005 WL 8154571 at \*8; *see Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-cv-00845-SKO, 2013 WL 3803911 at \*9–10 (E.D. Cal. July 19, 2013).

Here, substantial justification exists because Papariella's defamatory statements and link to the loss of Sino Jet and Metrojet business only became known on May 15, 2018. On this day, Defendants took the 30(b)(6) deposition of Jet Edge CEO Bill Papariella. Schembari SDF, No. D56. Papariella testified he "absolutely tell[s] everybody that Paul's a thief. . . . Anybody that will listen," "whether they ask [him] or not." Schembari SDF, Nos. D37–D38. Papariella told this to people in Asia, including Sino Jet and Metrojet. Schembari SDF, Nos. D37–D38.

The day after Papariella's deposition, Schembari disclosed this theory in his 30(b)(6) deposition. Schembari SDF, No. D63. Schembari testified that ███████████ ████████████████████████████████████████ Schembari SDF, No. D64. He testified ███████████ ████████████████ Schembari SDF, No. D65. Schembari then testified that "there is some proximity to certain occurrences relative to this

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

lawsuit relative to certain actions by Jet Edge . . . . by Bill Papariella." Schembari SDF, No. D66. Schembari specifically referenced Papariella's actions as being Papariella's "threats." Schembari SDF, No. D66. Schembari also identified the witness, Andrew Svoboda. Schembari SDF, No. D67.

### a. Schembari seeks leave to add counterclaims for defamation and breach of contract against Jet Edge and to bring a third-party claim against Jet Edge CEO Bill Papariella for defamation.

Schembari seeks leave to add a claim for defamation to his counterclaims. This should be granted because Schembari did not learn of this possible claim until May 15, 2018. *See* Part III.A.3 (beginning on page 23). Schembari also seeks leave to amend to add a counterclaim for breach of contract: Jet Edge breached Section 7.3's non-disparagement provision, in which "Company agree[d] not to make any such [non-disparaging] representations or statements regarding Employee." Schembari SDF, No. D39. Schembari additionally seeks leave to bring a third-party claim against Papariella for defamation.

Given that Defendants just learned of this information on May 15, 2018, they should be permitted to add it. By comparison, the Court permitted Jet Edge to amend its complaint on August 3, 2018, when Jet Edge had learned the information on March 5, 2018. ECF No. 166 at 6–7.

### B. Jet Edge's substantive arguments fail.

#### 1. There is a material factual dispute as to whether Jet Edge knew of the relationships with the potential customers.

Jet Edge contends that the tortious interference claims should fail on the theory that there is no evidence that Jet Edge knew of the relationships with the potential customers (Sino Jet, Metrojet, HK Bellawings, and Hong Kong Jet). Jet Edge's Motion, ECF No. 170 at 35–36.

This argument should be rejected because there is a material factual dispute on this issue.  The facts show that Papariella knew of Schembari's (or Schembari's entities') business relationships with these customers.  Papariella testified that he had discussions with Sino Jet representatives about "Paul . . . stealing business . . . ."  Schembari SDF, Nos. D37–D38.  Papariella also testified that he spoke with representatives at Sino Jet and Metrojet about Schembari, with Papariella telling them that "Paul is a thief."  Schembari SDF, Nos. D37–D38.  Papariella further testified that he discussed this with others in Asia that he tells "everybody" and "[a]nybody that will listen" that "Paul is a thief."  Schembari SDF, Nos. D37–D38.

Papariella now attempts to contradict his deposition testimony.  Papariella's declaration submitted with Jet Edge's Motion testifies that Papariella never had any conversations with Sino Jet or Metrojet regarding "Mr. Schembari, ACP Jet Charters, . . . Phenix Jet Hong Kong, or Andrew Svoboda."  Declaration of Bill Papariella, ECF No. 174 at ¶ 18.  This directly contradicts Papariella's deposition testimony.  So, it should be disregarded.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

One day after the motion for summary judgment deadline, Jet Edge submitted an amended Papariella declaration.  In this declaration, Papariella again contradicted his prior testimony.  Papariella no longer denies having any communications with Sino Jet or Metrojet regarding Schembari, ACP Jet, Phenix Jet Hong Kong, or Andrew Svoboda.  Amended Declaration of Bill Papariella, ECF No. 180 at ¶ 7.  Instead, he denies only having a conversation with them regarding Schembari, ACP Jet, or Andrew Svoboda "with respect to Phenix Jet Hong Kong."  *Id.*  The Court should disregard this declaration because Papariella's repeated flip-flopping on his testimony shows a lack of any credibility.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (Courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own

previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").

Even if the amended declaration is allowed, Papariella now creates an inference of admission (by refusing to deny) that he had conversations with Sino Jet, Metrojet, HK Bellawings, and Hong Kong Jet regarding Schembari, ACP Jet, and Svoboda. *See id.* Additionally, Papariella's deposition testimony shows that he knew Schembari was attempting to "steal[] business" and enter relationships with at least Sino Jet and Metrojet. Schembari SDF, Nos. D37–38.

It does not matter that the there is no evidence showing that Papariella's discussions expressly referenced Phenix Jet Hong Kong. Jet Edge does not dispute Schembari's ownership of Phenix Jet Hong Kong, and corporations act only through people. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *Snukal v. Flightways Manufacturing, Inc.*, 23 Cal. 4th 754, 782 (2000).

### 2.   Jet Edge committed an independently wrongful act.

The Motion asserts that Jet Edge cannot be liable for interference with prospective economic advantage on the theory that Jet Edge did not commit an independently wrongful act. Jet Edge's Motion, ECF No. 170 at 36–37.

This contention is incorrect. Jet Edge did commit an independently wrongful act: defamation. Independently wrongful acts "encompass[] 'unethical business practices' such as defamation." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 991 (9th Cir. 2001); *Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc.*, 557 F. Supp. 2d 1134, 1140 (S.D. Cal. 2008) ("The element of independently wrongful conduct is satisfied because the claim is based on defamation, a tort independent of the alleged interference."); *Youngevity Int'l Corp. v. Smith*, Case No. 16-cv-704, 2017 WL 6389776 at *8 (S.D. Cal. Dec. 13, 2017) ("Defamation is an independently wrongful act."); *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 450 (1993) ("Unlawful means include defamation and other forms of tortious conduct.").

There is a disputed material factual issue on whether Jet Edge committed an independently wrongful act in the form of defamation. "[A] private person need prove only negligence (rather than malice) to recover for defamation." *Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711, 742 (1989).

As set forth above, (1) Jet Edge's CEO told anybody who would listen that Schembari is a thief, (2) Jet Edge has dropped its trade secret claim, and (3) there is a substantial question on the validity of Jet Edge's contract claim. This is enough to show a material factual issue on whether Jet Edge negligently defamed Schembari. *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 449 (1993) (denying summary judgment on a claim for interference with prospective economic advantage based on a wrongful act of defamation because it was possible for a jury to "infer culpable intent" for defamation); *see Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("The proof of 'actual' malice [for a defamation claim] calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition.").[8]

### 3. The Section 17200 claim is based on Jet Edge's unlawful act of using an illegal employment agreement.

The Motion seeks entry of judgment on the Section 17200 claim on the theory that (i) Schembari is no longer basing it on the inclusion of the illegal provisions in Schembari's Jet Edge employment agreement and (ii) the counterclaim is actually based on the filing of this lawsuit. Motion, ECF No. 170 at 37–38 (CMECF numbering). The Motion cites no evidence in support of this.

Nor is there any. The operative section 17200 counterclaim is based on illegal provisions in the employment agreement. Second Amended Counterclaims, ECF No. 91 ¶¶ 167–72, 178–81. Defendants reiterated this basis in response to an interrogatory. Jet Edge SUF, No. 111. Additionally, Defendants' Motion for Summary Judgment

---

[8] *See also Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807 (907) ("Summary judgment is rarely granted in negligence cases because the issue of 'whether the defendant acted reasonably is ordinarily a question for the trier of fact.'" (internal brackets omitted)).

shows that Schembari is basing the counterclaim on the illegal employment agreement. Defendants' Motion for Summary Judgment, ECF No. 167-1 24 (CMECF numbering). A practice of using illegal employment agreements is a permissible foundation of a Section 17200 claim. *See supra* footnote 7 (beginning on page 21). Indeed, this Court (per Judge Birotte) has already found that Schembari has stated a claim for violation of section 17200 based on Jet Edge's act of including illegal non-competition provisions in its employment agreement with Schembari. ECF No. 96 at 6–8.

### 4.   Jet Edge's conduct harmed Schembari.

Jet Edge contends that Schembari does not have any evidence of harm. Jet Edge's Motion, ECF No. 170 at 34–35 (CMECF numbering).

Jet Edge's assertion is incorrect. With respect to the interference with economic advantage claims, Phenix Jet Hong Kong ███████████████████████████████████ ████████████████████████████ Schembari SDF, No. D68. Ultimately, ████ ██████████████████████████████████████████████ Schembari SDF, No. D69. These ████████████████████████████████████████████ ██████████████████████████████████ Schembari SDF, No. D70.

With respect to the Section 17200 claim, this Court has already recognized that Schembari has standing to bring this claim and has suffered an actual economic injury from Jet Edge's conduct. Order Denying Plaintiff's Motion to Dismiss Counterclaims, ECF No. 96 at 8–9. The evidence demonstrates this conclusively. The 17200 claim is founded on the illegal provisions in Jet Edge's employment agreement. *See* Part III.B.3 (beginning on page 28).

Jet Edge's attempt to enforce these illegal provisions has harmed Schembari in several ways. Among other harms, Schembari has incurred legal fees in defending against Jet Edge's attempted enforcement of the illegal provisions. Schembari SDF, Nos. D40–D41; *Robinson v. U-Haul Co. of California*, 4 Cal. App. 5th 304, 318

(2016).[9]  Schembari had to fly to Los Angeles (twice) and sit for three separate days of depositions noticed by Jet Edge.  Schembari SDF, No. D44.  Jet Edge's attempt to enforce these illegal provisions has also hindered employee morale and hindered Defendants' ability to recruit pilots.  Schembari SDF, Nos. D42–D43.  Additionally, Jet Edge's "strategic use of litigation and threatened litigation to achieve [Jet Edge's] anticompetitive purpose" provides Schembari with standing.  *Robinson*, 4 Cal. App. 5th at 318.

Thus, Schembari's harm is directly related to Jet Edge's illegal conduct.  Several courts have recognized that employees have standing to challenge the former employer's illegal contracts.  *See supra* footnote 7 (beginning on page 21).

## IV.   CONCLUSION

For the foregoing reasons, Jet Edge's Motion for Partial Summary Judgment should be denied.  In addition, Defendants should be granted summary judgment in their favor on Jet Edge's cause of action for breach of contract.  Defendants also should be granted leave to amend their counterclaim to assert claims for defamation and breach of contract against Jet Edge and to assert a third-party claim against Jet Edge CEO Bill Papariella for defamation.


Dated: August 20, 2018                     **DUANE MORRIS LLP**

                                           s/ Dan Terzian
                                           Dan Terzian

---

[9] Schembari can rely on payments by the companies owned by him because the claim "is based on a contract to which [Schembari] is a party," so it is based on a "circumstances independent of the plaintiff's status as a shareholder."  *Sutter*, 28 Cal. 2d at 530–31.