1  SANFORD L. MICHELMAN, ESQ. (SBN 179702)
   smichelman@mrllp.com
2  ROBERT ESTRIN, ESQ. (SBN 260402)
   restrin@mrllp.com
3  **MICHELMAN & ROBINSON, LLP**
   10880 Wilshire Blvd., 19th Floor
4  Los Angeles, CA 90024
   Telephone:   (310) 564-2670
5  Facsimile:   (310) 564-2671

6  MONA Z.  HANNA, ESQ. (SBN 131439)
   mhanna@mllp.com
7  TODD H. STITT, ESQ. (SBN 179694)
   tstitt@mrllp.com
8  **MICHELMAN & ROBINSON, LLP**
   17901 Von Karman Avenue, 10th Floor
9  Irvine, California 92614
   Telephone: (714) 557-7990
10 Facsimile: (714) 557-7991

11 Attorneys for Plaintiff
   WESTERN AIR CHARTER, INC. dba JET EDGE
12

13           **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15

16 WESTERN AIR CHARTER, INC.,          Case No.: 2:17-cv-00420-JGB (KSx)
   doing business as JET EDGE          Hon. Jesus G. Bernal
17 INTERNATIONAL, a California
   corporation,                        **OPPOSITION TO DEFENDANTS'**
18                                      **MOTION FOR A NEW TRIAL**
                Plaintiff,
19                                      [Declaration of Robert Estrin in
        v.                             support filed concurrently herewith]
20
   PAUL SCHEMBARI, an individual;       Hearing Date:  June 17, 2019
21 ACP JET CHARTERS, INC., doing        Time:          9:00 a.m.
   business as PHENIX JET, a Florida    Judge:         Hon. Jesus G. Bernal
22 corporation; PHENIX JET              Ctrm.:         1 (Riverside)
   INTERNATIONAL, LLC, a Guam
23 Limited Liability Company, COSA DI
   FAMIGLIA HOLDINGS, LLC, a
24 Guam Limited Liability Company, and
   DOES 1-10, inclusive,
25
                Defendants.
26

27

28
─────────────────────────────────────────────────────
         **OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    LEGAL STANDARD .................................................................................. 2

III.   ARGUMENT .............................................................................................. 2

    A.   The Court Properly Instructed the Jury as to the Elements for
        Intentional Interference with Contractual Relations. ............................ 2

    B.   The Court Should Reject Defendants' New Argument that There Is
        No Claim for Intention Interference of an At-Will Contract. ............... 6

        1.   Defendants Cannot Raise a New Legal Theory in a Rule 59
             Motion that They Could Have but Failed to Raise Earlier. ......... 6

        2.   Relevant Authority Holds that Plaintiff May Maintain a Claim
             for Intentional Interference with an At-Will Contract............... 6

        3.   Plaintiff Did Not Need To Prove an Independent Wrongful Act,
             but Since It Introduced Substantial Evidence of Independent
             Wrongful Acts Defendants Suffered No Prejudice. ................... 8

    C.   The Court Should Uphold the Jury's Verdict that Defendants Were
        Liable for Intentional Interference with Contractual Relations Because
        the Weight of the Evidence Supported the Jury's Verdict. ............... 11

    D.   The Court Should Uphold the Jury's Verdict that Defendants Acted
        with Malice, Oppression, or Fraud Because the Weight of the
        Evidence Supported the Jury's Finding. ............................................. 14

    E.   The Court Should Uphold the Jury's Award of Punitive Damages
        Because it Is Appropriate Given the Amount of Compensatory
        Damages Awarded and the Reprehensibility of Defendants' Actions.18

        1.   The Jury's Award of Punitive Damages Is Appropriate Given
             the Amount of Compensatory Damages Awarded................19

        2.   The Jury's Punitive Damages Award Is Not Excessive When
             Factoring in Defendants' Financial Condition. .............……… 19

i

3. Defendants' Argument that Jet Edge Cannot Recover Punitive Damages Since It Received Compensatory Damages Defies Logic. ........................................................................................ 22

4. The Jury's Award Does Not Violate Due Process. .................. 23

IV. CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allstate Ins. Co. v. Herron*,
   634 F.3d 1101 (9th Cir. 2011) .................................................................. 2

*In re Arko*,
   2008 WL 2035143 (Bankr. N.D. Cal. May 9, 2008)............................. 25

*Brownfield v. Jaguar Land Rover North America, LLC*,
   584 Fed. Appx. 874 (9th Cir. 2014) ................................................... 4, 5

*Carelli v. Matthew Scott, Gelsco, Inc.*,
   2010 WL 11597288 (C.D. Cal. June 24, 2010).................................... 23

*Commercial Union Ins. Companies v. Greene*,
   1998 WL 1661425 (C.D. Cal. Sept. 25, 1998)............................... 22, 23

*E.E.O.C. v. Boeing Co.*,
   577 F.3d 1044 (9th Cir. 2009) ............................................................ 12

*Flores v. City of Westminster*,
   2014 WL 12783201 (C.D. Cal. Oct. 23, 2014) ................................... 19

*Freeman Expositions, Inc. v. Global Experience Specialists, Inc.*,
   2017 WL 1488269 (C.D. Cal. Apr. 24, 2017)........................................ 8

*Gartner, Inc. v. Parikh*,
   2008 WL 4601025 (C.D. Cal. Oct. 14, 2008) ....................................... 8

*Hammer v. Gross*,
   932 F.2d 842 (9th Cir. 1991) ............................................................... 9

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
   2016 WL 7479402 (C.D. Cal. July 7, 2016) ......................................... 7

*Hung You Hong v. United States*,
   68 F.2d 67 (9th Cir. 1933.) ................................................................. 13

*Image Technical Services, Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ............................................................. 9

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

*Ixchel Pharma, LLC v. Biogen Inc.*,
   2017 WL 4012337 (E.D. Cal. Sept. 12, 2017) ........................................................ 7

*Lenhoff Enterprises v. United Talent Agency, Inc.*,
   2015 WL 7008185 (C.D. Cal. Sept. 18, 2015)......................................................... 7

*Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.*,
   2017 WL 901083 (C.D. Cal. Mar. 7, 2017) ............................................................ 2

*Mobile Mini, Inc. v. Khordt*,
   2007 WL 2109224 (E.D. Cal. July 23, 2007)........................................................ 24

*Noyes v. Kelly Servs., Inc.*,
   2008 WL 2915113 (E.D. Cal. July 25, 2008) ........................................................ 11

*Ostad v. Oregon Health Sciences University*,
   327 F.3d 876 (9th Cir. 2003). ............................................................................... 18

*Patriot Rail Corp. v. Sierra R. Co.*,
   2015 WL 4662720 (E.D. Cal. Aug. 5, 2015) ................................... 17, 18, 24, 25

*Quinn v. Fresno County Sheriff*,
   2012 WL 6561562 (E.D. Cal. Dec. 14, 2012) ........................................................ 5

*Robi v. Five Platters, Inc.*,
   918 F.2d 1439 (9th Cir. 1990) ............................................................................... 15

*Roy v. Volkswagen of Am., Inc.*,
   896 F.2d 1174 (9th Cir. 1990) ............................................................................... 11

*Santos v. Gates*,
   287 F.3d 846 (9th Cir. 2002) ................................................................................. 12

*State Farm Mut. Auto Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ................................................................................ 23, 24, 25

*Steffens v. Regus Group, PLC*,
   2013 WL 4499112 (S.D. Cal. Aug. 19, 2013)......................................................... 5

*Teague v. Biotelemetry*,
   2018 WL 5310793 (N.D. Cal. Oct. 25, 2018) ......................................................... 8

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   2015 WL 12746208 (C.D. Cal. Oct. 30, 2015) .................................................... 10

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

*United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*,
   766 F.3d 1002 (9th Cir. 2014) ................................................................. 3

*Young v. Wolfe*,
   2017 WL 2798497 (C.D. Cal. June 27, 2017) ...................................... 2, 6

*Zhang v. American Gem Seafoods, Inc.*,
   339 F.3d 1020 (9th Cir. 2003) ......................................................... 19, 23

**California Cases**

*Adams v. Murakami*,
   54 Cal. 3d 105 (1991) ............................................................................ 20

*In re Angelica P.*,
   28 Cal. 3d 908 (1981) ............................................................................ 15

*Bankhead v. ArvinMeritor, Inc.*,
   205 Cal. App. 4th 68 (2012) ...................................................... 18, 19, 20

*Bardis v. Oates*,
   119 Cal. App. 4th 1 (2004) .................................................................... 24

*Cummings v. Medical Corp. v. Occupational Medical Corp.*,
   10 Cal. App. 4th 1291 (1992) ................................................................ 22

*Gober v. Ralphs Grocery Co.*,
   137 Cal. App. 4th 204 (2006) ................................................................ 19

*Green v. Laibco, LLC*,
   192 Cal. App. 4th 441 (2011) ................................................................ 21

*I-CA Enterprises, Inc. v. Palram Americas, Inc.*,
   235 Cal. App. 4th 257 (2015) .................................................................. 3

*Jackson v. AEG Live, LLC*,
   233 Cal. App. 4th 1156 (2015) ................................................................ 4

*Little v. Amber Hotel Co.*,
   202 Cal. App. 4th 280 (2011) .................................................................. 4

*Mintz v. Blue Cross of California*,
   172 Cal. App. 4th 1594 (2009) ................................................................ 3

v

*Nevarrez v. San Marino Skilled Nursing & Wellness Ctr., LLC,*
 221 Cal. App. 4th 102 (2013) ................................................................ 15

*Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
 50 Cal. 3d 1118 (1990) .................................................................. 2, 3, 4, 5

*Pfeifer v. John Crane, Inc.,*
 220 Cal. App. 4th 1270 (2013) .............................................................. 15

*Popescu v. Apple Inc.,*
 1 Cal. App. 5th 39 (2016) ...................................................................... 7

*Redfearn v. Trader Joe's Co.,*
 20 Cal. App. 5th 989 (2018) ................................................................... 8

*Reeves v. Hanlon,*
 33 Cal. 4th 1140 (2004) ..................................................... 7, 8, 9, 10, 11

*Rufo v. Simpson,*
 86 Cal. App. 4th 573 (2001) ............................................................ 20, 21

*San Francisco Design Center Associates v. Portman Companies,*
 41 Cal. App. 4th 29 (1995) ................................................................... 11

*Seimon v. S. Pac. Transportation Co.,*
 67 Cal. App. 3d 600 (1977) .................................................................. 15

*Southern California Disinfecting Co. v. Lomkin,*
 183 Cal. App. 2d 431 (1960) ................................................................ 17

*Toscano v. Greene Music,*
 124 Cal. App. 4th 685 (2004) ................................................................ 7

*Vacco Industries, Inc. v. Van Den Berg,*
 5 Cal. App. 4th 34 (1992) ..................................................................... 17

*Walker v. Farmers Inc. Exchange,*
 153 Cal. App. 4th 965 (2007) ............................................................... 25

*Zaxis Wireless Communications, Inc. v. Motor Sound Corp.,*
 89 Cal. App. 4th 577 (2001) ................................................................. 20

**Federal Statutes**

Federal Rules of Civil Procedure (FRCP)

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

Rule 50(b) ................................................................... 1, 9, 11, 12, 16, 17, 18, 22
Rule 59 ...................................................................................................... 6, 17
Rule 59(e) .................................................................................................... 2, 6

**Other Authorities**

Fourteenth Amendment (Due Process Clause)...................................................... 18, 23

CACI
201 ........................................................................................................ 15
426 .......................................................................................................... 4
2201 ................................................................................................... 3, 4, 5
2507 .......................................................................................................... 5
3202 .......................................................................................................... 4

Restatement (Second) of Torts
§ 766 ....................................................................................................... 4
§ 766A ...................................................................................................... 4
§ 766A (d) ................................................................................................. 4
§766 (f) and (g) ........................................................................................... 4
§ 768 ...................................................................................................... 10
§ 768(1)(b) ............................................................................................... 10

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

# I.   **INTRODUCTION**

Defendants Paul Schembari ("Schembari"), Phenix Jet International, Inc. ("Phenix Jet"), ACP Jet Charters, Inc. ("ACP"), and Cosa di Famiglia Holdings, LLC ("CDF") (collectively "Defendants") repeat several of the same failed arguments they make in their Rule 50(b) motion.  For example, Defendants once again argue that (1) the Court improperly instructed the jury on the elements for intentional interference with contractual relations by including the word disruption; and (2) the evidence does not support the jury's verdict in favor of Plaintiff Western Air Charter, Inc. ("Plaintiff" or "Jet Edge") on its claim for intentional interference with contractual relations and punitive damages.  For the same reasons as discussed in Plaintiff's Opposition to Defendants' Rule 50(b) motion (as well as the additional reasons discussed below) Defendants' arguments contradict California and Ninth Circuit law and ignore the mountains of evidence Plaintiff presented at trial.  Thus, the Court should reject Defendants' arguments both in their Rule 50(b) motion and this motion.

Defendants' new arguments also fail.  For the first time in this case, despite having ample opportunity to raise the argument earlier, Defendants argue that a plaintiff cannot maintain a claim for intentional interference with contractual relations with an at-will contract.  Defendants' argument fails for multiple reasons, including that (i) case law does not prevent this type of claim, (ii) an additional element of an independently wrongful act only applies to at-will employment agreements, and (iii) even if Plaintiff needed to prove an independently wrongful act (which it did not), Plaintiff presented sufficient evidence at trial of Defendants' multiple wrongful acts.

Defendants also attack the amount of punitive damages awarded.  However, the jury's punitive damages award was less than twice the compensatory damages awarded.  While courts will look very closely at punitive damages that exceed a single-digit ratio, the award in this case is proper on its face as it amounts to less than a 2:1 ratio.  Furthermore, Defendants' year-long scheme to steal Jet Edge's customers by disparaging Jet Edge to its customers, copying Jet Edge's confidential information,

using a Jet Edge employee to effectuate their plan, and misrepresenting their intentions severely injured Jet Edge, including the need to close its Asian operations.  Simply awarding Jet Edge a portion of the profits it lost from the stolen customers would not deter Defendants from acting in this wrongful manner again.  Thus, a punitive damages award stripping Defendants of the millions of dollars they have made and will continue to make from these stolen jets, and other revenue streams, is appropriate.

## II.   LEGAL STANDARD

A Rule 59(e) motion is an "extraordinary remedy which should be used sparingly." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quotation omitted.)  "[T]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.*, 2017 WL 901083 at *2 (C.D. Cal. Mar. 7, 2017) (denying motion for a new trial) (quotation omitted.)  "Notably, a 'district court may not grant a new trial simply because it would have arrived at a different verdict.'"  *Ibid.* (quoting *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001)).

## III.   ARGUMENT

### A.   The Court Properly Instructed the Jury as to the Elements for Intentional Interference with Contractual Relations.

For a district court to find an error in law, such as a jury instruction, it needs find clear error which occurs only if the "reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed."  *Young v. Wolfe*, 2017 WL 2798497 at *2 (C.D. Cal. June 27, 2017) (denying motion for a new trial) (quotation omitted).  The Court did not commit any error in this case.

California case law refutes Defendants' contention that the Court improperly instructed the jury regarding instruction number 29 ("Instruction 29").  (Dkt. No. 296.) The California Supreme Court in *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) ("*Pacific Gas*") established that a party may maintain an

2

intentional interference with contractual relations claim based on disruption of a contract (including an at-will contract).  The defendant in that case argued that there is no claim if the party terminated the contract according to its terms.  *Id.* at 1127.  The California Supreme Court explicitly rejected this argument, holding that it runs "afoul of the rule, established in this and the majority of other jurisdictions, giving rise to a cause of action for inducing termination, as the Court of Appeal perceived." *Ibid.*  The California Supreme Court drove this point home, stating "[w]e have affirmed that ***interference with an at-will contract is actionable interference with the contractual relationship***," reasoning that "[t]he result seems obvious; if we protect an economic relationship that is wholly prospective from outside interference, we must also protect contractual relationships that are subject to termination." *Id.* at 1127–1128. (emphasis added.)

California and Ninth Circuit courts continue to apply the law set forth in *Pacific Gas* that a disruption of a contract constitutes intentional interference with contractual relations.  *See, e.g.*, *I-CA Enterprises, Inc. v. Palram Americas, Inc.*, 235 Cal. App. 4th 257, 289 (2015) (stating that elements three and four require either a "breach or disruption" of the contractual relationship); *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1603 (2009) (same); and *United Nat. Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (same).  Therefore, there is no question that the Court properly instructed the jury regarding Instruction 29.[1]

CACI 2201, on which Defendants' entire argument is based, supports the Court's Instruction 29.  Element four to CACI 2201 states that the defendant "intended to ***disrupt*** the performance of this contract/ [or] knew that ***disruption*** of performance was certain or substantially certain to occur."  (emphasis added.)  Thus, CACI 2201

---

[1] The Court should ignore Defendants' nonsensical argument in footnote 4 of their Motion which fails to address if a disruption of a contract constitutes interference.  Defendants' footnote 4 makes the same argument as Section III(B)(2) of their Motion about the relationship between intentional interference with contract and prospective economic advantage.  (Mot. at 6.)  Plaintiff rebuts this argument in the next section.

3

itself uses the word "disruption" for intentional interference with contractual relations. Further, the sources and authority section of CACI 2201 relies heavily on *Pacific Gas*. Bullet-point three of this section quotes the elements described in *Pacific Gas*, which include elements (3) "defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; [and] (4) actual breach or disruption of the contractual relationship." *Pacific Gas* at 1126.  Even the case cited in the section "Directions for Use," *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 291 (2011), states that the elements for intentional interference with contract are "(3) defendant committed intentional and unjustified acts designed to interfere with or disrupt the contract; [and] (4) actual interference with or disruption of the relationship . . ."[2]

Defendants also fail to realize that the Court could properly modify CACI 2201 so that it conformed with California law and the facts of this case.  In *Jackson v. AEG Live, LLC*, 233 Cal. App. 4th 1156, 1187-1188 (2015), plaintiff argued that the court erred by adding an extra requirement to CACI 426.  The appellate court rejected plaintiff's argument reasoning that the modification did not distort the elements of the claim or confuse the jury.  *Id.* at 1188.  As discussed above, the Court's inclusion of "disruption" in Instruction 29 did not distort the elements of an intentional interference with contractual relations claim, but correctly stated them.

In *Brownfield v. Jaguar Land Rover North America, LLC*, 584 Fed. Appx. 874, 875 (9th Cir. 2014), plaintiff claimed the court erred by modifying CACI 3202.  The Ninth Circuit affirmed the use of the instruction because it "fairly and adequately

---

[2] Defendants rely heavily on the Restatement (Second) of Torts Section 766A from 1979 – far before *Pacific Gas*.  However, Defendants are looking at the wrong Section of the Restatement.  Section 766 applies to this case because it relates to an interference by a defendant with third parties (Jet Edge's customers) disrupting the continued performance of a contract.  Section 766A only applies in situations where the defendant interferes with the plaintiff's (Jet Edge's) ability to perform the contract.  That is not the facts of this case.  Furthermore, Comments (f) and (g) to Section 766 and Comment (d) to Section 766A state that the tort of intentional interference with contractual relations applies to voidable contracts and contracts terminable at will.

4

cover[ed] the issues presented, correctly state[d] the law, and [was] not . . . misleading." *Brownfield* at 875 (quotation omitted.)  *See also Steffens v. Regus Group, PLC*, 2013 WL 4499112 at *5 (S.D. Cal. Aug. 19, 2013) (holding the court properly instructed the jury with a modified version of CACI 2507); and *Quinn v. Fresno County Sheriff*, 2012 WL 6561562 at *4 (E.D. Cal. Dec. 14, 2012) (holding the court properly modified "the CACI instruction to better harmonize the facts in this case to the elements of the claim").  Here, the Court's modification to CACI 2201 appropriately harmonized the issues and facts of this case to the elements of an intentional interference with contract claim, correctly stated the law under *Pacific Gas*, and did not mislead the jury.

The Court has already considered the argument raised by Defendants.  In the disputed jury instructions, the parties set forth their proposed language for the claim of intentional interference with contractual relations.  (Dkt. No. 272 at pgs. 19 and 65.) Defendants argued against Plaintiff's inclusion of the word "disruption."  The Court's jury instructions provided to the parties on January 22, 2019 showed that it had considered and disagreed with Defendants' position.  After seeing the Court's jury instructions, Defendants objected and asked for the removal of the "disruptive language."  (Declaration of Robert Estrin ("Estrin Decl."), Exh. III at 10:2-7.)  The Court responded: "I understand what the objection is.  And there seems to be a distinction between what the Ninth Circuit says California law is and what California says California law is, but I think the Ninth Circuit has adopted that disruptive language in breach of contract cases in California, so I will overrule the objection, but I will double-check that."  (*Id*. at pg. 10:8-13.)  The next day, the Court informed the parties that it was sticking with this same instruction.  (Dkt. No. 296 at Instruction 29.)  Thus, the Court carefully considered Defendants' argument to remove the word "disruption" and properly rejected it based on California and Ninth Circuit law.  In sum, the Court's use of Instruction 29 was proper.

//

//

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

**B.**      **The Court Should Reject Defendants' New Argument that There Is No Claim for Intention Interference of an At-Will Contract.**

**1.**      **Defendants Cannot Raise a New Legal Theory in a Rule 59 Motion that They Could Have but Failed to Raise Earlier.**

For the first time, Defendants argue Plaintiff never had a valid claim for intentional interference with contractual relation because the contracts at issue were at-will.  Defendants likely read and lifted this argument from Sojitz Corporation's motion to dismiss in *Western Air Charter, Inc. v. Sojitz Corporation, et al*., Case No. 2:18-cv-07361-JBG-KSx.  (Dk. No. 27 at pgs. 11-12.)  As discussed in Plaintiff's Opposition to that motion to dismiss, and below, this is not the law.  (Dkt. No. 30 at pgs. 16-17.)

Defendants have improperly raised this argument for the first time in this motion.  "Rule 59(e) motions *are not vehicles for bringing before the court theories or arguments not advanced earlier* . . ."  *Young v. Wolfe*, 2017 WL 2798497 at * 2 (C.D. Cal. June 27, 2017) (emphasis added).  Defendants could have raised this argument two years ago in their motion to dismiss or at the summary judgment stage.  They cannot sit on their hands and then raise the argument now after a jury has already ruled against them.  Indeed, the cases Defendants cite for the basis of a Rule 59 motion recognize that Defendants' new argument does not fit under any of the historically recognized grounds for a Rule 59 motion, which include: (1) verdicts that are contrary to the clear weight of the evidence; (2) excessive damages; and (3) erroneous jury instructions.  (Mot. at 1:17-21 (citing *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007).)  Arguing a new legal theory for the first time, as Defendants do here, does not fit under any historically recognized grounds for a Rule 59 motion.  For this reason alone, Defendants' argument in Section III(B)(2) of their Motion fails.

**2.**      **Relevant Authority Holds that Plaintiff May Maintain a Claim for Intentional Interference with an At-Will Contract.**

Not only have Defendants made an impermissible argument but a meritless one.  California case law holds that a plaintiff may bring a claim for intentional interference

6

with contractual relations based on an at-will contract.  The correct statement of law is that if the intentional interference with contractual relations claim is based on an at-will employment agreement, the plaintiff must also allege that the defendant's actions were independently wrongful.  The Court of Appeals in *Popescu v. Apple Inc*., 1 Cal. App. 5th 39 (2016) thoroughly explained this rule.  "***Our high court clearly held that a contract interference claim involving an at-will contract is viable under California law.***"  *Id*. at 61 (emphasis added).  "In other words, our high court did not negate the contract interference claim involving an at-will employment agreement entirely; it merely subjected it to an additional 'independent wrongful act' requirement."  *Ibid*. The Court of Appeals in *Popescu* also reasoned that the added requirement to plead an independently wrongful act should only apply to at-will employment agreements.  *Id*. at 61-62.  The Court of Appeals held that it was error for the trial court to sustain the demurrer to plaintiff's intentional interference with contract claim.  *Ibid*.

Defendants' citation to *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) ("*Reeves*") (the case *Popescu* analyzed) cuts against their argument.  In *Reeves*, the California Supreme Court answered the question of whether "the tort of interference with contractual relations [can] be predicated upon the interference with an at-will contract" with a resounding "yes."  *Reeves*, 33 Cal. 4th at 1148.  *See also Toscano v. Greene Music*, 124 Cal. App. 4th 685, 694 (2004) ("It is well settled that at-will contractual relations can be the subject of claims for intentional interference with contract").

The cases Defendants cite on page 8 of their Motion support Plaintiff's position that a plaintiff may maintain a claim for intentional interference with contractual relations based on an at-will contract.  *See, e.g.*, *Ixchel Pharma, LLC v. Biogen Inc*., 2017 WL 4012337 at *4-5 (E.D. Cal. Sept. 12, 2017) (dismissing intentional interference claim because plaintiff did not allege an independently wrongful act, ***not because*** plaintiff could not bring a claim for intentional interference with contractual relations based on an at-will contract) (emphasis added); *Hip Hop Beverage Corp. v. Monster Energy Co*., 2016 WL 7479402 at *4 (C.D. Cal. July 7, 2016) (same); *Lenhoff*

7

*Enterprises v. United Talent Agency, Inc.*, 2015 WL 7008185 at *5-6 (C.D. Cal. Sept. 18, 2015) (permitting plaintiff leave to amend to allege a wrongful act to plead a claim for intentional interference with contractual relations based on an at-will contract); *Gartner, Inc. v. Parikh*, 2008 WL 4601025 at *6 (C.D. Cal. Oct. 14, 2008) (recognizing that tortious interference with contractual relations applies to at-will contracts).

Defendants cite these cases to attempt to establish that the additional element of showing an independently wrongful act applies to non-employment agreements. However, more recent cases hold that *Reeves* only applies to at-will employment contracts.  In *Redfearn v. Trader Joe's Co.,* 20 Cal. App. 5th 989, 1004-05 (2018), the Court of Appeals held that a plaintiff did not need to plead and prove an independently wrongful act outside the context of an at-will employment agreement.  *See also Teague v. Biotelemetry*, 2018 WL 5310793 at *10 (N.D. Cal. Oct. 25, 2018) (denying summary judgment on intentional interference with contractual relations claim because the additional requirement of an independently wrongful act only applies to employment contracts); *Freeman Expositions, Inc. v. Global Experience Specialists, Inc.,* 2017 WL 1488269 at *8 (C.D. Cal. Apr. 24, 2017) (denying motion to dismiss intentional interference with an at-will contract).  Thus, California law holds that Plaintiff did not need to prove an independently wrongful act because this case does not involve interference with an at-will employment agreement.

California law holds that a plaintiff may bring a claim for intentional interference with contractual relations based on an at-will contract.  Recent case law also holds that a plaintiff only needs to prove an independently wrongful act if the contract at issue is an at-will employment agreement.  For both of these reasons (and only one reason is needed for Plaintiff to prevail), the Court should reject Defendants' new argument.

**3.     Plaintiff Did Not Need To Prove an Independent Wrongful Act, but Since It Introduced Substantial Evidence of Independent Wrongful Acts Defendants Suffered No Prejudice.**

As discussed above, Plaintiff did not need to prove that Defendants committed

8

1  an independently wrongful act to prevail on its intentional interference with contractual

2  relations claim.  Even if the law required Plaintiff to prove an independently wrongful

3  act, Plaintiff would still prevail since it presented substantial evidence at trial showing

4  Defendants committed independently wrongful acts.  As a result, Defendants cannot

5  claim they suffered prejudice.

6      Defendants include several cases concerning instructional error.  (Mot. at 9-10.)

7  However, Defendants' belief that an independently wrongful act is required for

8  interference with an at-will contract has nothing to do with their argument that

9  Instruction 29 should not have included the word "disrupted."   (Dkt. No. 296.)

10  Confusingly, Defendants repeat that failed argument in this section of their Motion.

11  (Mot. at 11:1-7.)  Defendants fail to draw a connection between their instructional error

12  argument and their argument on the addition of an independently wrongful act element.

13  In any event, as discussed above, Defendants are wrong on both arguments.[3]

14      Even if Plaintiff had to prove an independently wrongful act, the jury had

15  substantial evidence, both before and after Schembari resigned, to conclude that

16  Defendants committed independently wrongful acts.[4]

17      In *Reeves*, the California Supreme Court stated that an independently wrongful

18  act for interference with an at-will employment contract includes "an act proscribed by

---

[3] Defendants never raised an argument that the instruction for intentional interference
should have included an additional element of an independently wrongful act during
the jury instruction process.  "Failure to object to an instruction waives review." *Image
Technical Services, Inc. v. Eastman Kodak Co*., 125 F.3d 1195, 1206 (9th Cir. 1997).
*See also Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir. 1991) ("[D]efendants are in no
position to complain about the instruction, however, because they did not object to it.")

[4] As they did in their Rule 50(b) motion, Defendants latch on to a single statement
during closing argument.  (Mot. at 11:16-12:1.)  As explained in Plaintiff's Opposition
to Defendants' Rule 50(b) motion, a statement by counsel during closing argument is
not evidence, and the statement cannot usurp the role of the jury to consider all the
evidence and apply it to the Court's instructions.  (*See* Opp. to Rule 50(b) motion at
Section III(A)(2)(b).)  Thus, the jury could properly consider evidence of Defendants'
wrongful interference both before and after Schembari's resignation.

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Reeves* at 1145.  The jury had evidence of several independently wrongful acts to choose from based on *Reeves*, including the Court's and jury's determinations that Schembari breached his employment contract and his duty of loyalty to Plaintiff. (Dkt. No. 293.)  Further, while at Jet Edge, Schembari secretly defamed Jet Edge to its customers, diverted a potential customer to his competing company Phenix Jet, and created financial projections, with the help of Phenix Jet's COO, based on the theft of Plaintiff's jets.  (Estrin Decl., Exhs. A; B; C; D at 72:5-6, 72:12-21, 73:25-74:2; E at 58:22-25, 85:4-86:1, 86:6-13, 86:20-23, 87:6-17, 102:14-22, 104:2-10; O; Q; W; CCC.)  After Schembari resigned from Jet Edge, Defendants continued their wrongful acts, including, but not limited to, copying and using Jet Edge's confidential information (*e.g.*, Initial Operating Experience training documents and employee handbook), purchasing ACP so Phenix Jet could steal Jet Edge's customers, and lying to Jet Edge's CEO about why Pocket Corporation terminated its contract with Jet Edge. (Estrin Decl. E at 106:16-22, 120:25-121:3; F; X; Y; CC; DD; EE; FF; GG; II; JJ; KK; and MM.)  The above actions constitute several independently wrongful acts, including breach of contract, defamation, fraud, and misappropriation of confidential materials.

Defendants cannot rely on the competition privilege to escape liability.  In *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.,* 2015 WL 12746208 at *21 (C.D. Cal. Oct. 30, 2015), the court held that the competition privilege only applies to "interference with prospective economic advantage, not intentional interference with contractual relations claims."  Assuming *arguendo*, the competition privilege did apply to intentional interference with contractual relations, the language of the Restatement (Second) of Torts, Section 768 rebuts Defendants' position.  Section 768(1)(b) states that the competition privilege only applies if the "actor does not employ wrongful means."  As described above, Plaintiff showed that Defendants acted wrongfully in interfering with Plaintiff's contracts.  Furthermore, Defendants fail to cite a single case supporting their novel argument that the competition privilege can insulate them from

10

liability.  In fact, the lone case they cite, *San Francisco Design Center Associates v. Portman Companies,* 41 Cal. App. 4th 29, 42-43 (1995) (which predates *Reeves*), reasons that the competition privilege does not apply when "the competitor's conduct violated a statute or constituted a tort such as fraud or unfair competition."

Based on Defendants' interference, including the above-described independently wrongful acts, the jury found that Defendants acted with malice, oppression, or fraud.  (Dkt. No. 293.)  Because Plaintiff produced substantial evidence that Defendants committed independently wrongful acts, any error in the instructions the Court gave to the jury (there was no error) did not prejudice Defendants.[5]

### C.   The Court Should Uphold the Jury's Verdict that Defendants Were Liable for Intentional Interference with Contractual Relations Because the Weight of the Evidence Supported the Jury's Verdict.

"[W]hen a motion for a new trial is based on insufficiency of the evidence, a stringent standard applies . . . [and] a motion for a new trial may be granted on this ground ***only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result.***"  *Noyes v. Kelly Servs., Inc.*, 2008 WL 2915113, at *7 (E.D. Cal. July 25, 2008), (emphasis added.)  "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury."  *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (citations omitted).  "[I]f the jury's verdict is not clearly against the weight of the evidence, the trial court abuses its discretion in ordering a new trial."  *Ibid.*

The weight of the evidence, indeed the great weight of the evidence, supported the jury's verdict.[6]  Defendants make the same mistake they did in their Rule 50(b)

---

[5] Defendants' footnote 7 is irrelevant.  Plaintiff does not seek to add an intentional interference with prospective economic advantage claim since it had existing contracts.

[6] As set forth in footnote 4 above, Defendants' argument concerning a statement by counsel in closing argument is meritless.

motion in arguing that the jury could only rely on direct evidence.  In sum, Defendants argue that Plaintiff needed to put Jet Edge's customers on the stand to testify that Defendants were a substantial factor in causing them to leave Jet Edge for Phenix Jet. This is not the law.  *See, e.g.*, *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009) (holding circumstantial evidence can support a jury verdict); *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002) (a verdict "may unquestionably rest on inferences drawn from circumstantial evidence.")   Also, jury instruction number 8 stated "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence."   (Dkt. No. 296.)   Jet Edge presented an overwhelming amount of circumstantial evidence for the jury rely on to hold Defendants liable.

A more detailed description of the evidence introduced at trial is set forth in Section III(A)(2) of Plaintiff's Opposition to Defendants' Rule 50(b) motion.  But even the subset of evidence set forth below strongly supports the jury's verdict that the Defendants intentionally induced the jet owners to move from Jet Edge to Phenix Jet. For example, during Schembari's employment at Jet Edge, he disparaged Jet Edge's operations to its customers, including telling Jet Edge's customers that "[f]lights dispatched by JEI never go smoothly . . ."  (Estrin Decl., Exhs. A and B.)[7]  Schembari then formed a partnership with Sojitz, and in particular the eventual COO of Phenix Jet, Yohei Sakurai, to take Jet Edge's customers to Phenix Jet.  (Estrin Decl., Exhs. D at 66:13-21, M, and N.)  As part of Defendants' plan, Sojitz entered into an agreement with CDF, for Schembari/CDF to acquire a Part 135 AOC for Phenix Jet to manage Jet

---

[7] Schembari's e-mails were to Hideto Shimooka and Yohei Sakurai.  Shimooka was the representative for Jet Edge client Hideyuki Busujima.  (Estrin Decl., Exh. D at 80:7-15, 81:2-5, 81:22-24.)  Yohei Sakurai is a Sojitz employee and, in that capacity, a representative of each of the jet owners.  (Estrin Decl., Exhs. D at 77:20-23, 79:5-10, 79:19-24; E at 10:25-11:6, 53:19-21, 74:8-11; F; G; H at 49:5-20, 68:24-70:2; and J at 23:23-25.)  Schembari admitted at trial that "I was communicating those words to a client representative, yes."  (Estrin Decl., Exh. D at 82:4-5.)  Thus, the easy inference to draw is that Schembari was communicating with the jet owners' representatives with the intent that they would tell the jet owners to leave Jet Edge.

12

1 | Edge's customers.  (Estrin Decl., Exhs. E at 99:13-18, 100:4-14; and P.)

2 |      Perhaps the most convincing piece of evidence presented to the jury which

3 | showed that Defendants interference caused Jet Edge to lose the five customers at issue

4 | was that each of the customers terminated their Jet Edge contracts and signed ACMAs

5 | with ACP dba Phenix Jet.  (Estrin Decl., Exhs. DD, GG, HH, II, JJ, KK, LL, MM, and

6 | NN.)  Schembari testified at trial that this occurred, and that the planes Defendants

7 | stole from Jet Edge were the same planes that he and Sakurai used to develop financial

8 | projections for Phenix Jet.  (Estrin Decl., Exhs. D at 68:2-17, M, N, O, P, and Z.)  It is

9 | not a coincidence that the five Asian jet owners moved from Jet Edge to Defendants.

10 | There must have been communications between Defendants and the customers before

11 | they decided to do so.  Based on the evidence, the jury reasonably drew this inference.

12 |      Jet Edge also introduced evidence at trial, that if not for Defendants' interference

13 | with Jet Edge's contracts, Jet Edge would have kept these customers for many years.

14 | Jet Edge executives testified that Jet Edge hardly ever lose customers to a competitor.

15 | (Estrin Decl., Exh. H at 62:24-63:7; Exh. I at 16:18-17:17; and Exh. S at 20:21-25,

16 | 22:3-23:3, 26:8-17.)  Further, Jet Edge's industry expert Matthew Winer also testified

17 | that there are several factors that make it very difficult for jet owners to change

18 | management companies, including cost.  (Estrin Decl., Exh. S at 53:2-55:3, 55:13-16.)

19 |      Meanwhile, Defendants failed to offer any alternative explanation for Jet Edge's

20 | customers' sudden exodus to Phenix Jet.  Unlike Plaintiff, Defendants had access to

21 | these customers but failed to produce them as witnesses or submit their declarations.

22 | "[T]he production of weaker evidence, when stronger might have been produced, lays

23 | the producer open to the suspicion that the stronger evidence would have been to his

24 | prejudice."  *Hung You Hong v. United States*, 68 F.2d 67, 69 (9th Cir. 1933.)

25 |      Attempting to rebut the overwhelming evidence of Defendants' interference,

26 | Defendants offer only the self-serving testimony of Schembari who, in response to his

27 | counsel's questions, stated that he did not take any action to disrupt Jet Edge's

28 | contracts.  (Estrin Decl., Exh. D at 6:25-12:21.)  The jury rightfully did not buy

Schembari's biased testimony.  Indeed, Schembari was caught on the stand being less than truthful multiple times.  For example, Schembari testified that he did not know about tail number N2020 while employed by Jet Edge, even though he had written several e-mails during that time about diverting N2020 away from Jet Edge's management.  (Estrin Decl., Exhs. E at 89:22-90:24, 93:10-14, 93:25-94:8, 94:21-24; W; CCC.)  Schembari also contradicted his deposition testimony about when he signed Phenix Jet's Articles of Incorporation.  (Estrin Decl., Exh. D at 86:20-22, 87:5-7, 87:21-88:11.)  Schembari's testimony matched his clandestine behavior while at Jet Edge, including his disparaging e-mails to Jet Edge's customers, in which he asked the customers to "keep my comments between us, as I don't want David to feel like I am undermining him."  (Estrin Decl., Exhs. A; E at 58:22-25.)

Defendants cannot show that the jury's verdict was against the weight of the evidence or that the jury reached a seriously erroneous result."[8]  Instead, the evidence at trial weighed heavily in Plaintiff's favor.  Thus, a new trial is unwarranted.

### D. <u>The Court Should Uphold the Jury's Verdict that Defendants Acted with Malice, Oppression, or Fraud Because the Weight of the Evidence Supported the Jury's Finding.</u>

The weight of the evidence at trial showed Defendants not only interfered with Jet Edge's contracts but did so with malice, oppression, or fraud.  Thus, Defendants' argument that the jury's verdict was against the clear weight of the evidence fails. Defendants misstate the "clear and convincing" evidence standard to require "no

---

[8] In passing, and without support, Defendants argue in footnote 10 that the jury should have accepted their expert's damages theory.  However, the jury computed damages in accordance with the strong evidence Jet Edge presented explaining that jet owners rarely move to competitors and thus would have stayed Jet Edge customers for several years but for Defendant's interference.   Jet Edge's expert Matthew Winer testified that it is difficult and expensive for jet owners to change management companies.  (Estrin Decl., Exh. S at 53:2-55:3, 55:13-16, 56:17-57:8.)  Bill Papariella, David Erich, and Ed Frank testified that Jet Edge rarely loses customers to competitors.  (Estrin Decl., Exhs. H at 62:24-63:7; I at 16:18-17:17; S at 20:21-25, 22:3-23:3, 26:8-17.)

14

substantial doubt" and be "sufficiently strong to command the unhesitating assent of every reasonable mind" based on a quote from *In re Angelica P.*, 28 Cal. 3d 908, 919 (1981) which has been heavily criticized in more recent cases.  (Mot. at 21:3-13.)  "Neither *In re Angelia P., supra,* 28 Cal.3d 908 . . .  nor any more recent authority mandates that augmentation [to CACI No. 201], and ***the proposed additional language is dangerously similar to that describing the burden of proof in criminal cases.***" *Nevarrez v. San Marino Skilled Nursing & Wellness Ctr., LLC*, 221 Cal. App. 4th 102, 114 (2013) (emphasis added).  The Court properly instructed the jury on the standard for punitive damages without any objection by Defendants.  (*See* Dkt. No 265 at Instruction No. 3; and Dkt. No. 296 at Jury Instruction No. 4.)[9]

Just as the jury could rely on the overwhelming circumstantial evidence to find Defendants liable for intentional interference, the jury could rely on this same evidence to find that Defendants acted with malice, oppression, or fraud.  It is well established that "[m]alice may be proved either expressly through direct evidence or by implication through indirect evidence from which the jury draws inferences."  *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1299 (2013) (affirming finding of malice based on circumstantial evidence).   In fact, malice is "[m]ost often . . . proven by circumstantial evidence alone."  *Seimon v. S. Pac. Transportation Co.*, 67 Cal. App. 3d 600, 607 (1977) (reversing a directed nonsuit on punitive damages because circumstantial evidence was sufficient for a jury to find malice).

The weight of the evidence supports the jury's finding that Defendants acted with malice, oppression, or fraud.  Plaintiff sets forth detailed evidence of Defendants' wrongful conduct in Sections III(A)(2) and III(B)(3) of Plaintiff's Opposition to

---

[9] Defendants emphasize that the jury found them liable for only one tort.  The number of torts committed does not matter for punitive damages only "the conduct that harmed the plaintiff."  (*See* Dkt. No. 296, Jury Instruction No. 36.)  *See, e.g.*, *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441–43 (9th Cir. 1990) (affirming $1,510,000 in compensatory damages and $2,000,000 in punitive damages based only on an interference with contract claim).

Defendants' Rule 50(b) motion.  In sum, the jury considered voluminous documents and testimony showing that Defendants engaged in a year-long scheme to steal Jet Edge's Asian clients.  Defendants used Schembari's leadership position at Jet Edge to execute their scheme.  While employed at Jet Edge, Schembari secretly disparaged Jet Edge's operations to its Asian customers to induce them into cancelling their contracts with Jet Edge.  (Estrin Decl., Exhs. A, B, C, and E at 58:22-25.)  Further, Defendants copied and utilized Jet Edge's confidential information, including ACMAs, employee handbooks, and IOE training documents for their own operations.  (Estrin Decl., Exhs. E at 106:16-18, 106:21-22, 120:25-121:3; X; Y; CC; DD; EE; and FF.)  Schembari breached his contract and duty of loyalty to Jet Edge by having his wholly owned company CDF enter into a contract for Schembari to find a Part 135 certificate for Phenix Jet so it could steal Jet Edge's customers.  (Estrin Decl., Exh. P.)

Worse yet, Defendants executed their plan in secret to inflict maximum harm to Jet Edge.[10]  After the first Jet Edge customer terminated its contract, Sakurai lied to Jet Edge's CEO Bill Papariella, telling him the Asian jet owners were happy, despite knowing they would all terminate their contracts with Jet Edge.  (Estrin Decl., Exhs. F, GG, II, JJ, KK, and MM.)  Consequently, Jet Edge had no opportunity to cure or mitigate its sudden loss of these customers and had to shut down its entire Asian operation and layoff five percent of its work-force.   (Estrin Decl., Exhs. H at 68:24-73:20, 73:24-74:2, 75:12-76:20; and I at 16:7-17, 36:23-37:1.)  Defendants contend that Sakurai's e-mail was not made on Defendants' behalf but ignore that Sakurai (the COO of Phenix Jet/ACP) helped Schembari form Phenix Jet and was working for Phenix Jet when he sent the e-mail.  Thus, the jury reasonably inferred that Sakurai lied to Papariella about the jet owners' intentions so Jet Edge could not take any steps

---

[10] *See, e.g.*, Estrin Decl., Exhs. A; F; J at 148:10-17, 165:24-166:4; O; P; T at 80:15-81:25, 143:25-144:24; W; Z; and CCC.

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

to retain its customers.[11]  As a result of Defendants' malicious and fraudulent conduct, Jet Edge was forced to "go into crisis mode," which meant laying off employees who had moved with their families to Hong Kong and shutting down its Asian operations. (Estrin Decl., Exh. H at 75:12-76:20.)  Therefore, the weight of the evidence supported the jury's finding that Defendants acted with malice, oppression, or fraud.

Defendants' actions in this case are very similar to other cases where courts have found malice, oppression, or fraud.  In *Southern California Disinfecting Co. v. Lomkin*, 183 Cal. App. 2d 431, 451 (1960), the court affirmed an award of punitive damages because the defendant executed a scheme to use confidential documents to steal plaintiff's customers.  Similarly, in *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 55 (1992), the court upheld an award of punitive damages against a wrongfully terminated defendant who breached his non-competition agreement by using confidential information to compete with plaintiff.  Also, in *Patriot Rail Corp. v. Sierra R. Co.*, 2015 WL 4662720 (E.D. Cal. Aug. 5, 2015) ("*Patriot*"), the court denied Rule 50(b) and Rule 59 motions to overturn a jury's award of $16,200,000 in punitive damages for intentional interference where the defendant told plaintiff he would not bid on a client, but then went ahead and did so.  *Id.* at *4–5.  The court held the facts were "sufficient to show trickery or deceit," to support the punitive damages award.  *Id.* at *17.  As in these cases, Defendants acted with malice, oppression, or fraud.

As they did in their Rule 50(b) motion, Defendants take an out-of-context statement by Plaintiff's counsel in closing argument and attempt to turn it into

---

[11] Defendants' argument that four of the jet owners did not terminate their contracts until seven months after Sakurai's fraudulent March 2016 e-mail underscores Defendants' malice.  The evidence shows that Defendants knew the other customers were going to leave Jet Edge (*e.g.*, Estrin Decl., Exh. O), but they had to wait until the official acquisition of ACP in October 2016 to officially sign contracts with the customers.  (Estrin Decl., Exh. D at 52:2-7, 52:19-21.)  When that occurred, three of the customers terminated their contracts within weeks, and the fourth terminated shortly thereafter.  (Estrin Decl., Exhs. II, JJ, KK, MM.)

17

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

evidence.[12]   This time, Defendants point to Plaintiff's counsel's statement that if Defendants "had been up front about it" they may not have been liable for punitive damages.  (Estrin Decl., Exh. OO at 106:6-10.)  Defendants spin this language to mean Plaintiff based its punitive claims purely on a failure to warn Jet Edge.  That could not be further from the truth.  Defendants' entire deceitful scheme involved secretly using a Jet Edge employee to steal Jet Edge's clients.  In other words, if Defendants had waited until Schembari resigned, then started the competing business and acquired Jet Edge's customers through proper means (*e.g.*, not by disparagement and copying Jet Edge confidential materials) then maybe Defendants could escape punitive damages. Defendants decided to do just the opposite.  Thus, the jury could base punitive damages on Defendants' actions to effectuate its plan, not just their failure to warn Jet Edge.[13]

> ### E.   The Court Should Uphold the Jury's Award of Punitive Damages Because it Is Appropriate Given the Amount of Compensatory Damages Awarded and the Reprehensibility of Defendants' Actions.

"Only when an award can fairly be categorized as grossly excessive . . . does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment."  *Patriot*, 2015 WL 4662720, at *16 (citation omitted).  *See also Bankhead v. ArvinMeritor, Inc.*, 205 Cal. App. 4th 68, 77 (2012) ("An appellate court will not reverse the jury's determination unless the award as matter of law is excessive or appears so grossly disproportionate to the relevant factors that it raises a presumption that it was the result of passion or prejudice.") (quotation omitted).  The jury's award

---

[12] Counsel's statement during closing argument is not evidence, and a Rule 50(b) motion challenges the sufficiency of the evidence.  *Ostad v. Oregon Health Sciences University*, 327 F.3d 876, 881 (9th Cir. 2003).  The Court properly instructed the jury that "[a]rguments and statements by lawyers are not evidence."  (Dkt. No. 296, Jury Instruction No. 7.)

[13] Defendants argue a new trial is needed to determine the amount of punitive damages the jury awarded based on Schembari's actions.  (Mot. at 24.)  Because the weight of the evidence showed that all Defendants acted with malice, oppression, or fraud in interfering with Jet Edge's contracts, there is no reason for a new trial or a remittitur.

18

of punitive damages in this case, which was less than a 2:1 ratio to the compensatory damages awarded, was not the result of passion or prejudice, but instead based on the evidence of Defendants' malice, oppression, or fraud presented at trial.

### 1. The Jury's Award of Punitive Damages Is Appropriate Given the Amount of Compensatory Damages Awarded.

The jury's award of $7.3 million in punitive damages did not exceed a 2 to 1 ratio of the compensatory damages award of $4.273 million.  Both California and federal law hold that a single digit ratio between punitive damages and compensatory damages is appropriate.  *See, e.g.*, *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) (affirming a 7 to 1 ratio reasoning that "[w]e are aware of no Supreme Court or Ninth Circuit case disapproving of a single-digit ratio between punitive damages and compensatory, and we decline to extend the law in this case"); *Bankhead v. ArvinMeritor, Inc.*, 205 Cal. App. 4th 68, 90 (2012) (affirming a 2.4 to 1 ratio reasoning that "[t]his single-digit ratio is well within the range for comparable cases, and is not extraordinarily high"); *Gober v. Ralphs Grocery Co.,* 137 Cal. App. 4th 204, 223 (2006) (affirming a 6 to 1 ratio even though defendant acted only with "a modest degree of reprehensibility"); *Flores v. City of Westminster*, 2014 WL 12783201 at *5 (C.D. Cal. Oct. 23, 2014) (affirming punitive damages above a 4 to 1 ratio).

Since the case law strongly supports Plaintiff's position that a ratio for a punitive damages award of less than 2 to 1 is appropriate, Defendants manufacture three arguments to try to convince the Court to reverse the jury's punitive damages award. All three arguments fail.

### 2. The Jury's Punitive Damages Award Is Not Excessive When Factoring in Defendants' Financial Condition.

First, Defendants argue that the punitive damages award is excessive in light of Defendants' financial condition.[14]  Defendants' header for Section V(A) states that the

---

[14] Sections V(A) and V(B) of Defendants' Motion are difficult to distinguish.  Plaintiff addresses these two arguments as best as it can understand them.

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

"financial condition of each defendant is the key factor in whether punitive damages
are excessive." (Mot. at 15:8-9.) However, the cases cited by Defendants state
otherwise, discussing three factors to determine the amount of punitive damages: (1)
the nature of misconduct; (2) the amount of compensatory damages; and (3) the
defendant's ability to pay. *Adams v. Murakami*, 54 Cal. 3d 105, 111 (1991).

Indeed, relevant authority holds that an award of punitive damages may exceed
the net worth of a defendant. In *Bankhead v. ArvinMeritor, Inc*., 205 Cal. App. 4th 68
(2012), the defendant attempted to overturn the jury's punitive damages award by
arguing it exceeded its net worth, which was negative. *Bankhead* at 78-79. The Court
of Appeals rejected defendant's argument reasoning that "[c]ontrary to ArvinMeritor's
contention, however, net worth is not the only measure of a defendant's wealth for
punitive damages purposes that is recognized by California courts." *Id*. at 79. The
Court of Appeals held that "we reject the argument that 10 percent of net worth
constitutes a ceiling above which juries may not go in setting the amount of punitive
damages." *Id*. at 83. Accordingly, the Court of Appeals affirmed the jury's award of
$4.5 million in punitive damages despite the defendant having a negative net worth.
*Id*. at 90. *See also Zaxis Wireless Communications, Inc. v. Motor Sound Corp.*, 89 Cal.
App. 4th 577, 581-83 (2001) (affirming punitive damages award despite defendant's
negative net worth reasoning that the "issue before us does not turn on defendant's net
worth, but on whether the amount of damages exceeds the level necessary to properly
punish and deter").

*Rufo v. Simpson*, 86 Cal. App. 4th 573 (2001) also undermines Defendants'
argument. In *Rufo*, the jury awarded $8.5 million in compensatory damages and $25
million in punitive damages. *Id*. at 581. Defendant argued the punitive damages award
was improper because it exceeded his $7 million net worth. *Id*. at 618-19. The Court
of Appeals rejected his argument reasoning defendant's future income was relevant to
"whether the damages will ruin him or be absorbed by him." *Id*. at 622, 625.

Although case law holds that a punitive damages award may exceed a

20

defendant's net worth, Defendants cry poverty with outdated and incomplete financial figures to complain the punitive damages award exceeds their net worth.  Defendants argue that the $7.3 million punitive damages award is three times Phenix Jet's net worth.   This ignores the fact that the punitive damages award is against *four* Defendants.  Importantly, Defendants' Motion includes no financial information about Schembari continuing Defendants' path of hiding Schembari's financial information. For ACP, Defendants cite to an old 2017 balance sheet for evidence of its net worth. Thus, all Plaintiff knew at trial (and to this day) is that Phenix Jet and CDF's combined net worth at the end of 2018 was $3,678,905.07.  Even if a punitive damages award could not exceed Defendants' net worth (and it can), the jury could not determine Defendants' net worth without knowing Schembari's and ACP's current net worth.

Additionally, as discussed above, net worth is not the only measure of a defendant's ability to pay.  *Rufo v. Simpson* permitted punitive damages of three times the defendant's net worth because of future income streams the defendant would likely obtain.  *Rufo,* 86 Cal. App. 4th at 622, 625.  As in *Rufo*, Phenix Jet, a company that started from the theft of Jet Edge's planes, will have future income streams the Court should take into consideration.  Phenix Jet's 2017 financial statement shows a gross profit of $2,675,490.[15]  (Estrin Decl., Exh. ZZ at 297-8.)  While Phenix Jet failed to produce a 2018 financial statement, it stands to reason that since 2017 was its first full year in existence, Phenix Jet became more profitable in 2018.  Phenix Jet's financial projections suggest this is the case.  (Estrin Decl., Exh. O.)  Indeed, public press releases show that Phenix Jet is thriving.  (Estrin Decl., Exhs. FFF and GGG).  Also, Phenix Jet's net worth increased from $321,000 in March 2017 to $2.6 million in

---

[15] Courts have held punitive damages award of double a defendant's annual profits appropriate.  *See, e.g., Green v. Laibco, LLC*, 192 Cal. App. 4th 441, 453 (2011) (affirming punitive damages award that nearly doubled the defendant's total profits for the most recent year).

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

1   September 2018.  (Estrin Decl., Exhs. AAA and DDD.)[16]  Moreover, Phenix Jet's profit

2   is only part of the picture.  Defendants' ability to pay needs to also take into account

3   the financial condition (*e.g.*, annual profits/income) of ACP, CDF, and Schembari.

     **3.**     **Defendants' Argument that Jet Edge Cannot Recover Punitive**

              **Damages Since It Received Compensatory Damages Defies**

              **Logic.**

7        As in their Rule 50(b) motion, Defendants argue that since Jet Edge recovered

8   compensatory damages it cannot recover punitive damages.  Defendants' argument is

9   based on a misguided reading of *Cummings v. Medical Corp. v. Occupational Medical*

10  *Corp.*, 10 Cal. App. 4th 1291 (1992) ("*Cummings*").  *Cummings* did not hold that the

11  profit a defendant takes from a plaintiff is a cap on the amount of compensatory ***and***

12  punitive damages the plaintiff may recover.  Instead, *Cummings* reasoned that "[o]f

13  course a gain-based measure of punitive damages may not always adequately serve the

14  deterrent function." *Cummings* at 1300.  The court explained, "[b]ut even taking away

15  the defendant's ill-gotten gains may sometimes not be enough to deter similar conduct,

16  it is never too much." *Ibid.*  Clearly, the court in *Cummings* did not view ill-gotten

17  gains as a cap on punitive damages and compensatory damages combined.  Instead, it

18  reasoned it was a floor.  This must be the law because if a plaintiff could not recover

19  more than the defendant's ill-gotten gains then the defendant would not be deterred

20  from wrongful behavior since it could only lose what it improperly gained.

21       The court's award of punitive damages in *Commercial Union Ins. Companies v.*

22  *Greene*, 1998 WL 1661425 at *6 (C.D. Cal. Sept. 25, 1998) confirms this is the law.

---

[16] Other facts support that Defendants' would have no problem paying the $7.3 million
punitive damages award.  Sojitz Corporation, the 24.9% owner of ACP has a market
cap of over $478 billion.  (Estrin Decl., Exh. HHH.)  Sojitz Corporation's wholly
owned subsidiary, Sojitz Jet Corporation, owns 75% of Phenix Jet.  (Dkt. No. 264 at
pg. 3.)  Thus, the Sojitz entities have an incredible amount of wealth to keep Phenix
Jet and ACP afloat after payment of the jury's verdict.  Additionally, Defendants have
shown they have money to pay the judgment by paying millions of dollars in legal fees
to defend themselves and posting a $12.5 million bond.  (Dkt. No. 312-1.)

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

The court reasoned that the ill-gotten gains amounted to approximately $200,000 and awarded over $247,000 and punitive damages in the amount $250,000.  *Id*. at *1, 6.  The combined award of over $447,000 far exceeded the ill-gotten gains of $200,000.  *Ibid*.  Similarly, in *Carelli v. Matthew Scott, Gelsco, Inc.*, 2010 WL 11597288 at *9 (C.D. Cal. June 24, 2010), the court held that the defendant's fraudulent scheme cost the plaintiffs approximately $2.5 million.  The court awarded plaintiffs $2.5 million in compensatory damages and an additional $2 million in punitive damages.  Again, the combined award of $4.5 million far exceeded the ill-gotten gains of $2.5 million.  Thus, the Court should reject Defendants' argument that Plaintiff cannot receive more than $4.2 million in compensatory *and* punitive damages combined.[17]

### 4.  The Jury's Award Does Not Violate Due Process.

Defendants frivolously argue that an award of punitive damages amounting to less than twice the award of compensatory damages violates the Fourteenth Amendment.  Indeed, the lead case they cite to, *State Farm Mut. Auto Ins. Co. v. Campbell* ("*State Farm*"), 538 U.S. 408, 425 (2003), reasoned that "[s]ingle-digit multiples are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with rations in range of 500 to 1 . . . or, in this case, of 145 to 1."  *See also Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th 2003) (affirming a 7 to 1 ratio reasoning that "[w]e are aware of no Supreme Court or Ninth Circuit case disapproving of a single-digit ratio between punitive damages and compensatory, and we decline to extend the law in this case").

The jury's punitive damages award of less than a 2:1 ratio to the compensatory damages award is on the low end of the permitted single-digit multiplier, making

---

[17] Also, Plaintiff did not receive the damages it sought at trial.  Plaintiff asked the jury for $8,409,204 in compensatory damages and $24 million in punitive damages.  (Estrin Decl., Exh. OO at 107:7-15.)  The jury awarded Plaintiff $4,603,000 in compensatory damages and $7,300,000 in punitive damages, about 38% of Plaintiff's request.  (Dkt. No. 293.)  The Court should reject Defendants' argument that the $4,603,000 in compensatory damages is all Plaintiff should receive for this reason as well.

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**

Defendants' due process argument especially weak.  Furthermore, the three guideposts set forth in *State Farm* support the jury's award.  *State Farm*, 538 U.S. at 418.  As described above in Sections III(B)(3) and (D), Defendants' acted with total disregard of Plaintiff's rights.  Defendants intentionally interfered with Plaintiff's contracts with its customers by: (1) using Schembari's inside position at Jet Edge to disparage Jet Edge to its customers; (2) copying and using Jet Edge's confidential materials; and (3) secretly engaging in a year-long scheme to steal Jet Edge's clients in which Schembari breached his contract with Jet Edge and duty of loyalty to Jet Edge in the process.[18]

One of the key factors a court considers when determining reprehensibility is whether a plaintiff's harm "was the result of intentional malice trickery, deceit, or mere accident." *State Farm*, 538 U.S. at 419.  The evidence at trial showed that Plaintiff's harm was solely based on Defendants' intentional malice, trickery, and deceit. Defendants planned to steal Jet Edge's Asian clients and executed their plan by bringing those clients to Phenix Jet.  Jet Edge did not lose these clients by mere accident but due to Defendants' calculated efforts.  Defendants' conduct represents a high degree of reprehensibility.  *See, e.g., Patriot,* 2015 WL 4662720 at *5-6 (upholding a $16,200,000 punitive damages award for intentional interference because plaintiff suffered harm due to defendant's trickery and deceit); *Bardis v. Oates*, 119 Cal. App. 4th 1, 22, 27 (2004) (awarding a 9 to 1 ratio because plaintiff's harm was caused by malice and deceit); *Mobile Mini, Inc. v. Khordt*, 2007 WL 2109224 at *5 (E.D. Cal. July 23, 2007) (recommending a 3.5 to 1 ratio due to defendant's trickery and deceit).

The second guidepost for courts to consider is the "disparity between the plaintiff's actual or potential harm suffered by the plaintiff and the punitive damages award." *State Farm*, 538 U.S. at 418.  Defendants' baldly state, without any analysis, that the $4.2 million compensatory damages award was "substantial" in light of

---

[18] *See, e.g.*, Estrin Decl., Exhs. A; B; C; D at 72:5-6, 72:12-21, 73:25-74:2; E at 58:22-25, 85:4-86:1, 86:6-13, 86:20-23, 87:6-17, 102:14-22, 104:2-10, 106:16-18, 106:21-22, 120:25-121:3; F; O; Q; W; X; Y; DD; EE; FF; GG; II; JJ; KK; MM; and CCC.

24

Defendants' conduct and Plaintiff's harm.  (Mot. at 20:9-11.)  Defendants cite to inapposite cases.  For example, in *State Farm*, the Supreme Court found a $1 million compensatory damages award for emotional distress substantial.  *State Farm*, 538 U.S. at 426.  However, *State Farm* did not involve economic damages like here.  The Court of Appeals in *Walker v. Farmers Inc. Exchange*, 153 Cal. App. 4th 965, 974, (2007) found a compensatory damages award substantial because it provided plaintiff with all their economic damages, all their attorneys' fees, and $750,000 for emotional distress for each respondent.  By contrast, Plaintiff did not receive all its lost profits in compensatory damages, did not receive any of its millions of dollars in attorneys' fees, and did not receive any emotional distress damages.  Thus, this case is a far cry from *Walker*.  Plaintiff lost approximately $8 million in profits from the stolen jets due to Defendants' intentional and malicious interference.  (Estrin Decl., Exh. S at 83:5-16.)  Further, Plaintiff had to shutter its entire Asian operation due to Defendants' interference, which cost Plaintiff a valuable opportunity to increase its profits.  (Estrin Decl., Exh. H at 75:12-76:20.)  Thus, it is incorrect for Defendants to classify Plaintiff's compensatory damages award as "substantial" since Plaintiff has not been made whole.

Finally, Defendants completely ignore the third guidepost from *State Farm*, how the punitive damages award compares to punitive damages in comparable cases.  *State Farm*, 538 U.S. at 418.  Punitive damages awards based on liability for intentional interference with contractual relations are often very high.  *See, e.g.*, *Patriot,* 2015 WL 4662720 at *6 (upholding a $16,200,000 punitive damages award for intentional interference); *In re Arko*, 2008 WL 2035143 at *2 (Bankr. N.D. Cal. May 9, 2008) (denying a motion to set aside the jury's $45,000,000 punitive damages award which was 4.5 times the compensatory damages awarded for an intentional interference claim).  Thus, all three guideposts in *State Farm* cut against Defendants' argument that the jury's punitive damages award violated due process.

## IV.   **CONCLUSION**

Based on the foregoing, the Court should deny Defendants' motion in its entirety.

25

1

Dated: May 2, 2019

**MICHELMAN & ROBINSON LLP**

2

3

By  */s/Mona Z. Hanna*

4

Sanford L. Michelman

Mona Z. Hanna

5

Todd H. Stitt

Robert D. Estrin

6

Attorneys for Plaintiff

Western Air Charter, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL**